UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| L-3 COMMUNICATIONS SECURITY AND DETECTION SYSTEMS CORPORATION DELAWARE )<br><br>Plaintiff, )<br><br>v. )<br><br>AMERICAN SCIENCE & ENGINEERING, INC. )<br><br>Defendant ) | Civil Action No. 04-10339-GAO<br>(Magistrate Judge Cohen) |

### DEFENDANT AS&E'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF ACTUAL CONTROVERSY

Having just dismissed one case between these two parties (Civil Action No. 98-11939-GAO), this Court knows that the defendant/patentee, American Science & Engineering, Inc. ("AS&E"), has settled its previous allegations of infringement against L-3 Communications Security and Detection Systems Corporation ("L-3 Security") and has not threatened another suit. Given AS&E's good faith in seeking to end that litigation, and its disavowal of an imminent intent to sue, L-3 Security can have no reasonable apprehension of suit sufficient to show an actual case or controversy supporting declaratory judgment jurisdiction.

L-3 Security really filed this declaratory judgment action not to relieve threats of suit but rather to force a quiescent patent owner, AS&E, into signing a so-called *Super Sack* statement (*i.e.*, a covenant not to sue) or granting a free license to practice the two patents-in-suit. That goal however, does not demonstrate an actual case or controversy. Indeed, filing a declaratory judgment action to improve its negotiating position with AS&E, as L-3 Security has done, is an abuse of the declaratory judgment procedure and should be sanctioned.

## BACKGROUND FACTS

L-3 Security's complaint seeks declarations that it does not infringe two of AS&E's patents and that those patents are invalid or unenforceable. The two AS&E patents at issue here are U.S. Pat. No. 6,292,533 ("the '533 patent") and U.S. Pat. No. 5,903,623 ("the '623 patent").

According to L-3 Security's complaint, there is a long history of litigiousness between the parties that contributes to L-3 Security's alleged cause for alarm. But AS&E has never before sued L-3 Security. The suits referenced in the complaint were against <u>other</u> parties, EG&G Astrophysics Research Corporation ("EG&G") and Vivid Technologies. In any event, AS&E sought to settle those cases after L-3 Security's parent company, L-3 Communications Corporation, purchased EG&G and Vivid, showing that AS&E had no real dispute with L-3.

Far from threatening L-3 Security, AS&E has sought to quell all fears of suit. Any alleged "threats," as L-3 Security improperly characterizes AS&E's comments, must be seen in the context of settlement talks between the parties, not in the context of battle preparations. Even L-3 Security admits that AS&E made its alleged accusations of infringement "during settlement negotiations relating to" the recently concluded *EG&G* litigation. Complaint at ¶ 13. As will be argued later in this brief, the Federal Circuit characterizes such alleged threats made during settlement talks as typical "jawboning" that does not trigger declaratory judgment jurisdiction.

Thus, to better understand why there is no actual controversy here, one must view the present case in the context of AS&E's recently concluded disputes with EG&G and Vivid. That context shows that (1) AS&E has already redressed its concerns and (2) L-3 Security is not presently engaging in infringing activity. L-3 Security simply wants a free pass to use AS&E's highly coveted patented technology and has filed this declaratory judgment action to force AS&E to choose between costly litigation and granting a free license.

Cynthia Caruso was Corporate Counsel and then Acting General Counsel at AS&E during the relevant history between AS&E and L-3 Security. Ms. Caruso dealt directly with her counterpart at L-3 Security concerning the issues raised in the complaint and otherwise participated directly in the interactions between the parties. Ms. Caruso recounts in her accompanying declaration (attached as Exhibit 1) the history leading to L-3 Security's filing the present case and why there is no actual controversy now.

### A.   The Recently Concluded *EG&G* Litigation

As L-3 Security's complaint alleges, AS&E filed a patent infringement case in this Court in September 1998, accusing EG&G of infringing two AS&E patents (U.S. Pat. Nos. 5,313,511 and 5,764,683). Those two patents are not at issue in the current declaratory judgment action and, indeed, AS&E has recently covenanted not to sue L-3 Security on those two patents. That previous case between AS&E and EG&G ("the *EG&G* litigation"), however, concerned patents and accused products--namely, mobile x-ray detection systems--similar to those involved in the present alleged dispute. That is, in the *EG&G* litigation, AS&E accused EG&G of infringing the '511 and '683 patents by making and selling the so-called MOBIX system, which was an x-ray inspection system mounted on a truck. *See* Declaration of Cynthia W. Caruso ("Caruso Decl.") at ¶¶ 3, 5. In this present case, according to L-3 Security's complaint, the same or a similar product (MOBIX, also known by the model numbers CX-450M and CX-2500M) is allegedly being accused of infringing AS&E's '533 and '623 patents. *See* Complaint at ¶ 14.

For most of that previous *EG&G* litigation, EG&G was wholly owned by PerkinElmer, Inc. On or about June 14, 2002, however, PerkinElmer closed on its sale of EG&G to L-3 Communications Corporation ("L-3 Communications"), a large defense conglomerate. As a

result of that sale, the EG&G named as the defendant in that case ceased to exist and was replaced as a corporate entity by its successor-in-interest, L-3 Security. *See* Caruso Decl. at ¶ 5.

In April 2003, PerkinElmer and AS&E agreed to settle all claims in that *EG&G* litigation to the extent that they arose from EG&G's pre-sale conduct (*i.e.*, before June 14, 2002, during the time that the previous owner, PerkinElmer, was liable for that conduct). That pre-sale conduct turned out to be the only alleged infringement because, as AS&E later discovered, the new, post-sale entity, L-3 Security, did not continue to make or sell the accused MOBIX system. That settlement released EG&G for all liability under the two patents-in-suit in that case. Significantly, that agreement also released any liability under the '533 patent, which is now the subject of the current complaint. Caruso Decl. at ¶¶ 6, 14-15 and Exh. A.

Moreover, that settlement agreement also made L-3 Communications and its affiliates (which by definition includes L-3 Security) third party beneficiaries of the settlement agreement. As such, AS&E also released L-3 Security from any liability under AS&E's patents--including the '533 patent--through June 2002, when L-3 Communications acquired EG&G. *Id.*

After concluding the settlement with PerkinElmer and EG&G in or about May 2003, AS&E initiated an investigation of L-3 Security's post-settlement conduct. Based on the results of that investigation, AS&E determined that there had been no further patent infringement by L-3 Security since the settlement agreement and, indeed, since L-3's acquisition of EG&G in June 2002. Indeed, L-3 Security's general counsel, Mr. Syrnick, confirmed to AS&E that L-3 was no longer making the accused MOBIX system or similar mobile x-ray inspection systems. Believing there was no reason to continue the litigation against L-3 Security, AS&E thus initiated settlement discussions with L-3 in an attempt to end the matter. Caruso Decl. at ¶ 18-20. When those settlement efforts failed, and because L-3 Security was no longer producing the

4

accused products, AS&E did the only thing that it could, which was to seek dismissal of the moot *EG&G* litigation. Caruso Decl. at ¶¶ 21-22.

In an order dated February 19, 2004, this Court dismissed AS&E's claims with prejudice and EG&G's counterclaims without prejudice. That order came after (i) two hearings (on February 4th and 11th) in which AS&E's counsel stipulated on the record that it would not sue L-3 Security for any infringement through the date of the stipulation and (ii) AS&E signed and filed in this Court a covenant not to sue (dated February 13, 2004). Caruso Decl. at ¶¶ 22-23.

### B. The *Vivid* Litigation

The settlement agreement with EG&G also resolved the so-called *Vivid* litigation referenced in L-3 Security's complaint. AS&E released both EG&--and L-3 Security--for any liability through June 2002 under the patent involved in the *Vivid* case. Moreoever, AS&E and L-3 Security have agreed to file a stipulation of dismissal as to any remaining claims in the *Vivid* litigation. AS&E has directed its counsel in that case to contact L-3 Security's counsel to prepare the appropriate stipulation. Caruso Decl. at ¶ 22.[1]

### C. Negotiations Between AS&E and L-3 Security

Ms. Caruso testifies that AS&E has never threatened to file a lawsuit against L-3 Security for infringement of either the '533 or '623 patents. Caruso Decl. at ¶¶ 13, 16-17. But even taking as true L-3 Security's allegations that AS&E has threatened suit, such alleged threat must be seen in the context of settlement negotiations between the parties and not as a threat of imminent litigation.

---

[1] AS&E also filed related cases against a former employee and the U.S. Customs Service alleging that goods imported by EG&G relied on trade secrets stolen by that employee. The settlement agreement between AS&E and EG&G resolved those trade secret claims, however.

Specifically, while negotiating the above-discussed settlement with EG&G (and its then-parent, PerkinElmer), AS&E tried to engage L-3 Communications and its subsidiary, L-3 Security, in the settlement. L-3 Communications ignored or was slow to respond to AS&E's entreaties, however, frustrating AS&E's attempts to resolve the *EG&G* litigation. But, as an intended third-party beneficiary, L-3 did insist on approving the settlement agreement, thus dragging out the settlement process by almost two months. Caruso Decl. at ¶¶ 7-11.

In an effort to bring L-3 Security to the bargaining table and to end the *EG&G* litigation, AS&E did mention the '533 patent (but never the '623 patent) to L-3 Security. Specifically, in a letter dated October 18, 2002 (to which L-3 Security alludes in its complaint), one of AS&E's outside trial attorneys, Robert Daut, wrote that AS&E was contemplating a motion to amend its complaint to add the '533 patent to the *EG&G* litigation. Caruso Decl. at ¶ 9 and Exh. B.

But in the same letter, Mr. Daut also invited settlement:

> As you certainly are aware, EG&G and AS&E previously have met about to discuss whether there might be an alternate resolution to the infringement asserted by AS&E. AS&E remains willing to resolve the litigation on reasonable terms, and is willing to talk about it on an expedited basis, but, short of a serious manifestation of interest in settlement from L-3, intends to proceed along the lines indicated above.

*Id.*

Mr. Daut sent that letter <u>before</u> AS&E settled with EG&G (and, incidentally, with L-3 Security). AS&E may have mentioned the '533 patent to L-3 Security one more time before the settlement was completed. Caruso Decl. at ¶¶ 11-12. But AS&E never did seek to amend its complaint to add the '533 patent to the *EG&G* litigation and has never filed a separate action against L-3 since then. Indeed, during the year-and-a-half since that letter was sent, AS&E has sought only to resolve the disputes with L-3, through a negotiated business resolution. Thus, that

letter must be viewed in the context of negotiation and an attempt to resolve the *EG&G* litigation. Indeed, the letter specifically invites L-3 to discuss a business resolution. Moreover, the resulting settlement agreement (Exh. A to Caruso Decl.) released L-3 Security from any liability under the '533 patent through June 2002, in effect negating any threats allegedly made before that settlement was completed. Caruso Decl. at ¶¶ 9-14.

After settling the *EG&G* litigation (or so it thought), AS&E continued to press L-3 for an end to the litigation. AS&E asked both L-3 Communications and its subsidiary, L-3 Security, to "call off the dogs," meaning to halt further litigation activity to allow the lawyers to work out a graceful exit. Caruso Decl. at ¶¶ 18-20. Also, on several occasions during the summer and fall of 2003, the parties discussed a potential resolution. Indeed, L-3 Security even sent A&E a draft settlement and license agreement. Caruso Decl. at ¶¶ 19-21

As shown above, AS&E determined through its own investigation that, since assuming EG&G's business in June 2002, L-3 Security did not continue EG&G's infringing conduct, namely, the manufacture and sale of the MOBIX system or a similar mobile x-ray inspection system. Indeed, L-3 Security's general counsel, Mark Syrnick, admitted as much in an October 2003 letter to Ms. Caruso. Caruso Decl. at ¶¶ 18-21. Thus, as far as AS&E knows, L-3 Security is not engaging in the conduct that originally concerned AS&E when is sued EG&G in 1998.

### D. L-3 Security Filed Suit to Get a Free Pass, not to Resolve a Controversy

At the two hearings on AS&E's motion to dismiss the *EG&G* litigation, L-3 Security insisted on including the '533 patent and other AS&E patents not asserted in that litigation in the so-called *Super Sack* statement. At the February 11th hearing on the motion to dismiss, the Court rejected L-3 Security's request and limited the statement to the patents actually in dispute-- namely, the '511 and '683 patents. Clearly, L-3 Security had designs on getting a free pass to

the '533 and '623 patents and attempted to sneak them into the <u>actual</u> controversy (*i.e.*, the *EG&G* litigation), which involved only the '511 and '683 patents.

Less than a week after AS&E filed the covenant not to sue, L-3 Security filed its present complaint for a declaratory judgment concerning the '533 and '623 patents. At the same time it filed the complaint, L-3 Security's general counsel, Mr. Syrnick, contacted AS&E's Ms. Caruso to discuss the case L-3 Security had just filed and simultaneously e-mailed Ms. Caruso a draft of what he and L-3 Security could not get in the EG&G litigation--namely, a *Super Sack* statement in which AS&E would covenant not to sue for infringement of the '533 and '623 patents. Caruso Decl. at ¶¶ 22-24 and Exh. C.

According to Ms. Caruso, AS&E has no reason to threaten suit against L-3 Security for infringement of the '533 or '623 patents because, as even L-3 Security admitted as recently as October 2003, it has not made or sold a mobile x-ray inspection system (e.g., MOBIX) since it assumed EG&G's business in June 2002. AS&E redressed its concerns about infringing mobile x-ray systems when it settled with EG&G last year. Caruso Decl. at ¶ 25.

Nevertheless, AS&E does not want to give up its rights under the '533 and '623 patents so easily or so cheaply, as is its prerogative. Thus, AS&E is unwilling to give a *Super Sack* statement or covenant not to sue, even though it is not threatening suit against L-3 Security. At the same time, AS&E would entertain reasonable, arms-length licensing negotiations with L-3 Security, but not with an expensive and time consuming litigation improperly forced upon it. Caruso Decl. at ¶¶ 25-26.

## ARGUMENT

A declaratory judgment action requires an "actual controversy." 28 U.S.C. § 2201. Absent an actual controversy, a district court lacks subject matter jurisdiction to declare the rights of the parties and must therefore dismiss the case under Fed. R. Civ. P. 12(b)(1). *Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318, 1325, 1326 (Fed. Cir. 1998). The actual controversy must be sufficiently immediate and real to warrant jurisdiction. *Cygnus Therapeutics Systems v. ALZA Corp.*, 92 F.3d 1153, 1158 (Fed. Cir. 1996). Even if an actual controversy exists, a court still has the discretion to decline jurisdiction. *Id. See also EMC Corp. v. Norand Corp.*, 89 F.3d 807, 814-15 (Fed. Cir. 1996) (no abuse of discretion in declining jurisdiction even though plaintiff proved an actual controversy).

In patent cases, the Court of Appeals for the Federal Circuit uses a two-prong test for determining whether there is an actual controversy:

> (1) an explicit threat or other action by the patentee, which creates a reasonable apprehension on the part of the declaratory judgment plaintiff that it will face an infringement suit, and (2) present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity.

*BP Chems., Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 978 (Fed. Cir. 1993). The declaratory judgment plaintiff--in this case, L-3 Security--has the burden of proving, by a preponderance of the evidence, each prong of this test. *Cygnus Therapuetics*, 92 F.3d at 1159.

To prove the first prong, a reasonable apprehension of suit, the declaratory judgment plaintiff must show more than a "nervous state of mind" and must instead show that the "objective circumstances support such an apprehension." *Id.* at 1160. To prove the second prong, present activity, the plaintiff must show more than just "an interest in practicing the invention of another." *BP Chems.*, 4 F.3d at 980. Rather, the plaintiff must show that it has

"actually produced or prepared to produce an allegedly infringing product." *Spectronics Corp. v. H.B. Fuller Co.*, 940 F.2d 631, 634 (Fed. Cir. 1991).

As argued below, L-3 Security can prove neither prong of this test. AS&E has given L-3 Security no cause for alarm, especially in light of AS&E's settlement with EG&G and covenant not to sue L-3 Security on two other patents. Moreover, L-3 Security has not alleged that it is currently producing or is prepared to produce the MOBIX system or any other product that may infringe the '533 and '623 patents.[2]

### A.   L-3 Security Has No Reasonable Apprehension of Suit

L-3 Security has no objectively reasonable apprehension of suit based on the '533 and '623 patents. AS&E has not threatened to file a suit against L-3 Security on either patent. Caruso Decl. at ¶¶ 10, 13, 17. While AS&E has mentioned the '533 patent during settlement talks, it has never mentioned the '623 patent to L-3 Security. *Id.*

#### 1.   On-going Settlement Negotiations Negate Any Alleged Threats

To the extent that AS&E has raised the '533 patent, any mention of it was made during settlement negotiations, in an attempt to end the *EG&G* litigation. Such alleged threats, made during settlement discussions, do not cause a reasonable apprehension of suit. *See, e.g., Cygnus Therapeutics*, 92 F.3d at 1160 (no reasonable apprehension because any threats were made "in the setting of licensing discussions"); *Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha*, 57 F.3d 1051, 1053 (Fed. Cir. 1995) (litigation controversy normally does not arise during

---

[2] AS&E has moved under Rule 12(b)(1) to dismiss this suit for lack of subject matter jurisdiction (*i.e.*, no jurisdiction to issue a declaratory judgment). In deciding a motion to dismiss under Rule 12(b)(1), this Court may consider evidence beyond the allegations of the complaint, such as Ms. Caruso's declaration and attached exhibits. *See Indium Corp. of America v. Semi-Alloys, Inc.*, 781 F.2d 879, 884 (Fed. Cir. 1985).

proposed or ongoing license negotiations); *Shell Oil Co. v. Amoco Corp.*, 970 F.2d 885, 889 (Fed. Cir. 1992) (alleged threats to enforce patent "were merely 'jawboning' which typically occurs in licensing negotiations" and thus did not justify "dragg[ing] a non-threatening patentee into court"); *Ryobi America Corp. v. Peters*, 815 F. Supp. 172, 174 (D. S.C. 1993) (letter charging that the plaintiff's product was covered by the defendant's patent had to be understood in context of license negotiations and thus did not create reasonable apprehension of suit).

At most, therefore, any alleged threats must be viewed as the normal "jawboning" that goes on during negotiations, not as imminent threats to sue. As AS&E's Ms. Caruso testifies, AS&E raised the '533 patent as a way to prompt L-3 Security and its parent, L-3 Communications, to participate in the settlement it was crafting with EG&G's former parent, PerkinElmer, and as a way to end the *EG&G* dispute once and for all. Caruso Decl. at ¶¶ 9-17. AS&E made this desire clear. For example, in the same letter in which AS&E's attorney, Mr. Daut, raised the '533 patent, he also invited settlement discussions. Caruso Decl. at ¶ 9 and Exh. B. L-3 Security even admits that the alleged threats were made during settlement negotiations. *See* Complaint at ¶ 13 ("allegations of infringement [were made] during settlement negotiations relating to [the EG&G litigation] in 2003 and 2004").

### 2. Any Alleged Threats Were Too Remote to Show Imminent Suit Now

Moreover, any such alleged threats, such as the one made in Mr. Daut's October 2002 letter, are too remote in time to be seen as threats of "imminent" suit now. The eventual settlement with EG&G, in which L-3 Security is a third-party beneficiary, effectively erased any threats because that settlement also released L-3 from any liability for infringement of the '533 patent through June 2002. *Cf. Cygnus Therapeutics*, 92 F.3d at 1159 (alleged threats made five years before declaratory judgment suit filed had no "significant continuing effect"). AS&E

11

never sought to amend its complaint in the *EG&G* litigation to add the '533 patent, thus showing that L-3 Security cannot possibly now regard the threat of suit as imminent.

There has been a lot of proverbial water under the bridge since any alleged threats were made. The events of the last year--during which (a) AS&E settled its infringement claims against EG&G (and L-3 Security) and (b) voluntarily dismissed the EG&G litigation by covenanting not to sue L-3 Security--certainly show that any reasonable apprehension that L-3 Security may have had in October 2002, or even later, must have receded by now. *See, e.g., Gen-Probe Inc. v. Vysis, Inc.*, Nos. 02-1617, 02-1618, 2004 WL 405737 at *4 (Fed. Cir., March 5, 2004) (express threats of infringement suit and previous history of litigation between the parties did not prove an actual controversy because those events occurred <u>before</u> consummation of license agreement between the parties); *Northern Telecom Inc. v. Wang Labs., Inc.*, 543 F. Supp. 1026, 1028 (D. Mass. 1982) (Even if DJ plaintiff had reasonable apprehension of suit at time alleged threat was made, a year before the plaintiff filed its complaint, such apprehension should have vanished given the patentee's conduct over the intervening year).

Even after the settlement with EG&G and PerkinElmer, AS&E and L-3 Security continued to discuss various proposals over the course of several months, during the summer and fall of 2003. Caruso Decl. at ¶¶ 19-21. Thus, any threats allegedly made during that time should be seen in the context of the continuing negotiations.

### 3.     AS&E's History of Settlement Dispels any Reasonable Apprehension

Finally, over the last year, AS&E has sought only to settle its disputes and to end the pending litigations, further showing that suit is not imminent. *See, e.g., Carrot Components Corp. v. Thomas & Betts Corp.*, 229 U.S.P.Q. 61, 63 (D. N.J. 1986) (patentee's past willingness to settle disputes showed present lack of intent to sue and thus no reasonable apprehension). As

in the present situation between AS&E and L-3, the *Carrot Components* case involved prior infringement proceedings against a predecessor-in-interest of, or party related to, the declaratory judgment plaintiff. Those earlier proceedings ended in a settlement. The declaratory judgment plaintiff filed its suit to gain "bargaining leverage" against the patentee in ongoing negotiations. On that basis, the court dismissed for lack of jurisdiction. *Id.* at 63-64.

Likewise, L-3 Security cannot co-opt the history of litigation between AS&E and L-3's predecessors to contrive an actual controversy now, as the *Carrot Components* plaintiff attempted to do. As argued in Section C below, L-3 Security has filed this suit merely to gain bargaining leverage with AS&E. And that motivation negates an actual controversy.[3]

### B.   L-3 Security Cannot Point to Presently Infringing Activity

As argued above, the second prong of the Federal Circuit's actual controversy test requires the declaratory judgment plaintiff to show that it is producing or preparing to produce a product that could be infringing. *Spectronics*, 940 F.2d at 634. *BP Chems.*, 4 F.3d at 978 (DJ plaintiff must allege and show "concrete steps taken with the intent to conduct such [potentially infringing] activity").

Here, L-3 Security has admitted that, at least as of October 2003, it has not made or sold the mobile x-ray inspection systems at issue (the MOBIX system or similar products). Certainly L-3 Security never said anything to the contrary at the recent *EG&G* hearings in February 2004.

---

[3] L-3 Security also cites AS&E's refusal to sign a covenant not to sue on the '533 and '623 patents as further evidence suppoting a reasonable apprehension of suit. But L-3 Security cannot rely on AS&E's refusal. *See, e.g., BP Chem*, 975 F.3d at 980 (patentee's refusal to give assurances that it would not sue is not dispositive); *Teva Pharmaceuticals USA, Inc. v. Pfizer Inc.*, No. 03-CV-10167-RGS, 2003 WL 22888848 at *4 (D. Mass., Dec. 8, 2003) (no reasonable apprehension, even though patentee refused to sign covenant not to sue); *Viking Injector Co. v. Chemtron Inc.*, 29 U.S.P.Q.2d 1547, 1548 (M.D. Pa. 1993) (same).

Thus, any speculation that L-3 Security may make one of these truck-mounted x-ray inspection systems in the future cannot support an actual controversy now. See *Amana Refrigeration, Inc. v. Quadlux, Inc.*, 172 F.3d 852, 855 (Fed. Cir. 1999) (no actual controversy concerning products "in the pipeline" that were not actually manufactured, marketed, or sold at the time complaint was filed. Federal Circuit reasoned that "an actual controversy cannot be based on fear of litigation over future products"); *Hewlett-Packard Co. v. Genrad, Inc.*, 882 F. Supp. 1141, 1156 (D. Mass. 1995 (Bowler, M.J.) (patent owner gave assurances that it would not sue based on past version of competitor's product but not as to current and future versions. But possibility of future infringement does not establish actual controversy now).[4]

### C. Even if It Finds an Actual Controversy, this Court Should Decline Jurisdiction to Discourage L-3 Security's Improper Tactics

Even if AS&E's alleged threats do shows a reasonable apprehension of suit, and thus an actual controversy, this Court should still decline jurisdiction, as it has the discretion to do. *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 810 (Fed. Cir. 1996) ("Even if there is an actual controversy, the district court is not required to exercise declaratory judgment jurisdiction, but has discretion to decline that jurisdiction"). L-3 Security has filed suit only to obtain a free *Super Sack* statement, and thus free reign to practice AS&E's valuable patents, by presenting AS&E with the Hobson's choice of (a) signing the *Super Sack* statement or (b) defending its

---

[4] L-3 Security cannot rely on its manufacture or sale of other products because, as L-3 Security admits in its complaint,"L-3 is not aware at the present time what other products that it makes or had made may fall within the scope of AS&E's infringement contentions or threat to sue." Complaint at ¶ 14. In other words, AS&E has not accused other products of infringement. Moreover, because the alleged threats are so vague that even L-3 Security cannot be sure of them, they cannot support a reasonable apprehension of suit.

patents in expensive litigation that it never threatened. Under these circumstances, this Court should decline jurisdiction to further the public policy favoring negotiated resolutions.

In *EMC Corp.*, *supra*, this Court (Judge Keeton) declined jurisdiction on just this ground, and the Federal Circuit affirmed. In that case, the parties were engaging in licensing discussions and had held three meetings to that end. Shortly before a fourth scheduled meeting, however, the potential infringer, EMC, filed is declaratory judgment action. The day after filing, however, EMC's attorney called the patent owner's attorney and left a telephone message that EMC had filed the suit as "merely a defensive step" to protect its interests but that it still wanted to continue the negotiations. 89 F.3d at 809, 815.

In dismissing the case, Judge Keeton reasoned that allowing the declaratory judgment action to proceed "would encourage parties who were negotiating with patentees to use the declaratory judgment procedure to improve their bargaining positions" and would force patent owners to give more favorable licenses to avoid litigation costs. *Id.* at 810. The Federal Circuit affirmed, even though it concluded that the patent owner's conduct did give EMC a reasonable apprehension of suit. The Federal Circuit likewise reasoned that a party should not be able to use the declaratory judgment procedure to improve its bargaining position. *Id.* at 814. The Federal Circuit viewed EMC's filing suit as a "tactical measure" to improve EMC's posture and held that such tactics are inconsistent with the purpose of the Declaratory Judgment Act. *Id.* at 815.

This Court came to similar conclusions in *Waters Corp. v. Hewlett-Packard Co.*, 999 F. Supp. 167 (D. Mass. 1998) (Gorton, J.) and in *Davox Corp. v. Digital Systems Int'l, Inc.*, 846 F. Supp. 144 (D. Mass. 1993) (Wolf, J.). In *Waters Corp.*, Judge Gorton dismissed a declaratory judgment action "rather than reward [declaratory judgment plaintiff's] use of a judicial remedy to obtain a more favorable bargaining position in its negotiations with [the patentee]." 999 F.

Supp. at 173-74. Likewise, in *Davox*, Judge Wolf found an actual controversy because the patentee had sent a letter alleging that the plaintiff's product fell within the patent. But at the same time, the patenee also invited a business resolution. Accordingly, Judge Wolf declined to exercise jurisdiction, concluding that the patent owner had sought to avoid litigation. *See* 846 F. Supp at 148.

Here, on the same day that L-3 Security filed its complaint, it also contacted AS&E and, a few days later, sent AS&E a draft *Super Sack* statement for AS&E to sign. Caruso Decl. at ¶ 24 and Exh. C. L-3 Security is simply trying to obtain what this Court denied at the February hearings on AS&E's motion to dismiss--namely, covenants not to sue on other AS&E patents. As in the *EMC*, *Waters Corp.*, and *Davox* cases, however, L-3 Security's conduct shows an improper tactic designed to force a quiescent patent owner, AS&E, to choose between a one-sided agreement (in which L-3 Security gets a license for free) and costly patent litigation. This Court should not tolerate that tactic.

## CONCLUSION

Because AS&E has not threatened imminent suit, and because L-3 Security is not even producing or preparing to produce the allegedly accused products, there is no actual controversy to support declaratory judgment jurisdiction. Even if there is such a controversy, the history between the parties shows on-going negotiations, and this Court should decline jurisdiction to encourage such negotiations.

Dated: March 10, 2004

AMERICAN SCIENCE AND
ENGINEERING, INC.

*By its attorneys*,

Erik Paul Belt, BBO # 558620
BROMBERG & SUNSTEIN LLP
125 Summer Street
Boston, Massachusetts 02110
Tel: (617) 443-9292
Facsimile: (617) 443-0004
ebelt@bronsum.com

## CERTIFICATE OF SERVICE

I certify that, on March 10, 2004, I served a true copy of this document by hand on counsel for each other party.

Erik Paul Belt

01945/00505  297440.2