*A ₁*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

L-3 COMMUNICATIONS SECURITY
AND DETECTION SYSTEMS
CORPORATION DELAWARE,

Plaintiff,

v.                                                            CIVIL ACTION NO. 04-10339-RWZ

AMERICAN SCIENCE &
ENGINEERING, INC.,

Defendant.

## PLAINTIFF'S OPPOSITION TO DEFENDANT AS&E'S MOTION TO DISMISS FOR LACK OF ACTUAL CONTROVERSY

Plaintiff, L-3 Communications Security and Detection Systems Corporation Delaware ("L-3") opposes the motion of defendant, American Science & Engineering, Inc. ("AS&E"), to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).

## INTRODUCTION

Defendant AS&E owns a family of closely-related patents directed to its so-called MobileSearch technology. Plaintiff L-3 makes and sells products that AS&E has repeatedly asserted infringes those patents. AS&E has sued L-3's predecessor on one of these patents, and repeatedly threatened, in writing and verbally, to litigate over the entire family of MobileSearch patents. Despite repeated threats and claims of infringement, AS&E now argues that L-3 has no basis for its concern, and no right to clear the air.



L-3 continues to sell and offer for sale products that AS&E has accused of infringement. AS&E has steadfastly refused to covenant not to sue L-3 over those products. AS&E has demanded that L-3 pay royalties on this family of patents, as well as acknowledge their validity and agree not to make product. Perhaps most significantly, AS&E has expressly threatened to sue on its "suite" or "family" of MobileSearch patents. AS&E's consistent course of conduct in threatening to litigate and actually litigating its patents against L-3 since 1995 leaves a cloud hanging over L-3 that entitles L-3 to obtain a resolution of this uncertainty by this declaratory judgment action.

Indeed, even if it were not for the direct threats, on-point case law establishes that litigation over some patents within a family creates a reasonable apprehension of suits over other patents in that same family. In the instant case, AS&E's patents all cover identical technology, contain identical patent disclosures, and extensively cross-reference each other. L-3 is plainly entitled to a resolution of its rights regarding these patents so that it may continue to invest and compete in this field of security technology without the looming threat of subsequent patent litigation.

## BACKGROUND

Throughout the last decade, AS&E has not only threatened litigation against L-3 and its predecessor companies,[1] it has actually followed through on its threats by repeatedly suing them. Indeed, since 1995, AS&E has either commenced or by its threats

---

[1] In October of 1996, EG&G, Inc. and its wholly owned subsidiary, EG&G Astrophysics Research Corporation (a California corporation), were renamed PerkinElmer, Inc. and PerkinElmer Detection Systems, Inc., respectively. (Syrnick Dec. ¶3). In June of 2000, PerkinElmer, Inc., acquired Vivid Technologies, Inc. (a Delaware corporation), and gave it the same name as its other subsidiary, i.e., PerkinElmer Detection Systems, Inc. (Syrnick Dec. ¶4). In June of 2002, L-3 Communications Corporation acquired all of the capital stock of PerkinElmer Detection Systems, Inc. (California) and PerkinElmer Detection Systems, Inc. (Delaware). The acquired companies were renamed L-3 Communications Security and Detection Systems Corporation California and L-3 Communications Security and Detection Systems Corporation Delaware, respectively. (Syrnick Dec. ¶5).

2

forced L-3 and its predecessors into four separate lawsuits, all but one of them (the Vivid Case) relating to technology used in truck-mounted mobile X-ray inspections systems. (Declaration of Mark Stephen Syrnick ("Syrnick Dec.") ¶¶9-13).

## A.    The Patents-in-Suit

The two patents involved in the instant litigation, U.S. Patent Nos. 5,903,623 ("the '623 patent") (Syrnick Dec. Ex. A)[2] and 6,292,533 ("the '533 patent") (Syrnick Dec., Ex. B), both issued from a series of continuation applications AS&E filed during the greater part of the last decade. In patent parlance, a "continuation" is an application that contains a disclosure identical to that of an earlier-filed application, and benefits from the earlier application's filing date for priority purposes. Two or more patents that benefit from the same filing date in this manner are commonly called a patent "family," and are said to be "related." One common reason for filing continuations is to keep an application "alive" or "pending" in the patent office so that new or different (typically broader) claims can be obtained after competitors' products hit the market.

The manner in which the '623 and '533 patents[3] fit into the family of continuations pursued by AS&E is illustrated in the table below.

---

[2] Accompanying this memorandum are the declarations of Mark Stephen Syrnick and Kirk Teska, each with attached exhibits that the declarations identify and authenticate.

[3] L-3 has thus far not included U.S. Patent No. 6,252,929 ("the '929 patent") (Syrnick Dec., Ex. C) in this lawsuit. An application to reissue that patent is presently pending in the United States Patent & Trademark Office, and AS&E will be required to surrender the '929 patent if and when that reissue application matures into a patent. It is, of course, possible that L-3 will later find it necessary to amend its complaint to include such a reissued patent in this litigation, or perhaps file a later lawsuit, if the reissued patent includes any claims that arguably cover the same line of products at issue here, so as to completely remove the cloud of threatened litigation.

| Application Scr. No. | Filing date | Relationship to other application(s) | Patent Number | Issue date | Current Status |
|---|---|---|---|---|---|
| 60/011,495 | 2/12/96 | Provisional application | N/A | N/A | Abandoned |
| 08/799,533 | 2/12/97 | Claims benefit of 60/011,495 | 5,764,683 | 6/9/98 | Issued patent |
| 90/005,268 | 2/19/99 | Reexamination of 5,764,683 | Reexamination certificate 4211 | 11/21/00 | Reexamination certificate issued |
| 09/072,212 | 5/4/98 | Continuation of 08/799,533 | 5,903,623 | 5/11/99 | Issued patent |
| 09/305,417 | 5/5/99 | Continuation of 09/072,212 | 6,252,929 | 6/26/01 | Issued patent |
| 10/229,993 | 8/28/02 | Reissue of 6,252,929 | N/A | N/A | Pending |
| 09/855,961 | 5/15/01 | Continuation of 09/305,417 | 6,292,533 | 9/18/01 | Issued patent |

This family of patents is referred to by AS&E as its "MobileSearch" patent "suite" or "family." (Syrnick Dec. ¶¶17, 25, 27; Ex. F). All the patents in the MobileSearch family claim the benefit of the filing date for a provisional application filed in February, 1996. The earliest-issued patent in the family is the '683 patent (Syrnick Dec., Ex. D), one of two patents AS&E asserted in drawn-out litigation between AS&E and L-3. American Science & Engineering, Inc. v. EG&G Astrophysics Research Corp., Civil Action No. 98-11939-GAO (D. Mass.) ("the 1998 Case"). (Syrnick Dec. ¶11). That case was just recently dismissed after AS&E reluctantly covenanted not to sue L-3 under the '683 patent with respect to any of L-3's past or present products. (Id.)

4

The common disclosure of this patent family is directed to a truck-mounted X-ray inspection system for inspecting large objects. An illustrative figure from the patent is reproduced below. (See Syrnick Dec., Ex. A)



FIG. 2A

In the system, an X-ray source and detector are both fixed to a bed of the truck, and the truck is moved past the object being scanned (which remains stationary) so as to generate an X-ray image of the object's contents. The claimed system differs from some prior art systems in which the object being scanned is moved through the scanning device using a conveyor belt or the like.

The specification describes that either "scatter" detectors or "transmission" detectors, or both, may be employed. A scatter detector would monitor radiation reflected or deflected by the object, so that an image could be generated based on the pattern of "scattered" X-rays. A transmission detector would be located on the opposite

5

side of the object as the X-ray source, so that an image is generated based on the pattern of X-rays that are "transmitted" all the way through the object.

All of the claims of the '683 patent require the use of at least one scatter detector. Many of the claims of the continuation patents include no such limitation, and could thus be argued to cover a "transmission-only" imaging system.

**B.    L-3's products**

L-3 sells truck-mounted, transmission-only imaging systems, resembling in some respects the system disclosed in the AS&E patents, and has been offering for sale and selling such systems for some time.  One such system currently marketed by L-3 is called the CX-450M.  (Syrnick Dec. ¶¶36, 37; Ex. M)  A photograph of the CX-450M is shown below.



**C.    AS&E's Allegations of Infringement**

As noted above, the oldest patent in the family, the '683 patent, was asserted against L-3's predecessor company, EG&G, in the 1998 Case.  During that suit, EG&G

6

consistently claimed that certain of its systems, including the CX-450M, did not infringe the '683 patent because it did not employ scatter detectors. (See Exs. E and G).

In August of 2001, when PerkinElmer, Inc. was actively looking to sell its subsidiary, PerkinElmer Detection Systems, Inc. (Delaware), outside counsel for PerkinElmer, Inc. (Kirk Teska) sent a letter (attached as Ex. A to the Declaration of Kirk Teska ("Teska Dec.") filed herewith) to AS&E's outside counsel Robert Daut proposing terms of a settlement. (Teska Dec. ¶8). As a part of the proposed settlement, PerkinElmer Detection Systems offered to "stay away from backscatter in the mobile system manufactured in the United States." (Id.)

On October 5, 2001, AS&E's General Counsel Edwin Lewis responded to that letter, and directed his response (Syrnick Dec., Ex. E) to PerkinElmer's General Counsel. (Teska Dec. ¶9; Syrnick Dec. ¶¶15-16). In that letter, AS&E made very clear that, if PerkinElmer did not sell PerkinElmer Detection Systems to AS&E, AS&E intended to enforce its intellectual property rights relating to transmission-only mobile X-ray inspection systems against PerkinElmer Detection Systems and against any successor entities. (Teska Dec. ¶9, Syrnick Dec. ¶16).

In another letter (Syrnick Dec., Ex. F) dated December 14, 2001, AS&E General Counsel Edwin Lewis wrote to PerkinElmer's General Counsel offering to settle both the 1998 Case and the Vivid litigation if PerkinElmer would agree to (1) covenant not to make, use, or sell any inspection system using scatter technology, and (2) agree to a royalty-bearing non-exclusive license to AS&E's "suite" of MobileSearch patents. (Syrnick Dec. ¶17). AS&E thus threatened to continue litigation against PerkinElmer if it

7

did not agree to a royalty-bearing license on the transmission-only "suite" or "family" of patents, or sell the company to AS&E. (Id.; Teska Dec. ¶7).

Despite these threats, PerkinElmer, Inc. did not sell PerkinElmer Detection Systems, Inc. to AS&E. Rather, in June of 2002, it sold that business to L-3 Communications Corporation. (Syrnick Dec. ¶18; Teska Dec. ¶9). The purchased company (now L-3), which had made, offered for sale, and sold a number of transmission-only mobile X-ray inspection systems like that described in AS&E's October 5 letter, and continues to do so through the present date, has been left with a threat hanging over its head that AS&E may sue it on the transmission-only patents. That threat has existed at least since the time that letter was received. (Syrnick Dec. ¶17, 18; Teska Dec. ¶9). As discussed below, the threat has never been lifted, and indeed it has been reiterated, and AS&E – despite covenanting not to sue L-3 on other patents – has expressly refused to covenant not to sue L-3 on the '623 and '533 patents now in suit.

Moreover, after new outside counsel (Robert Abrahamsen) entered an appearance in the 1998 Case following the acquisition by L-3 Communications Corporation, AS&E wasted no time in renewing its threat of litigation against L-3. In particular, in a letter dated October 18, 2002 (Syrnick Dec., Ex. G), AS&E's counsel suggested that a suit against L-3 with respect to its ongoing sales of transmission-only mobile X-ray inspection systems was imminent. (Syrnick Dec. ¶19).

After receiving this letter, L-3 served discovery requests on AS&E in the 1998 Case, asking it to identify any products accused of infringing the '683, '511, or '533 patents. (Syrnick Dec. ¶20). As the deadline for responding to those discovery requests approached, AS&E filed a motion to adopt a modified scheduling order (Syrnick Dec.,

8

Ex. J) and a proposed amended scheduling order (Syrnick Dec., Ex. K), each including

the following statement:

> [I]t is AS&E's present intention to amend the complaint to add an
> additional patent infringement count in connection with another
> MobileSearch$^{TM}$ patent, U.S. Patent number 6,292,533, that issued to
> AS&E in September of 2001.

(Syrnick Dec. ¶21).

On April 28, 2003, AS&E finally responded to L-3's discovery requests.

Significantly, in response to the request to identify the accused products, AS&E stated:

> AS&E contends that at least EG&G's Mobix system, which also has been
> known by other names, including CX-450M, infringes one or more claims
> of the Asserted patents.

(See Syrnick Dec., Ex. I, Response No. 15; Syrnick Dec. ¶20).

L-3 continues to manufacture and sell the CX-450M product, which is a truck-

mounted transmission-only mobile X-ray inspection system. (Syrnick Dec., ¶¶ 36, 37)

On April 9, 2003, the date of a status hearing in the 1998 Case, L-3's Vice

President and General Counsel, Mark Syrnick, had a discussion with AS&E's General

Counsel, Edwin Lewis, outside Judge O'Toole's courtroom. During that conversation,

Mr. Lewis told Mr. Syrnick that AS&E had **"a lot more patents"** it would assert against

the L-3 technology at issue, and that therefore L-3 should "come around soon" and pay

AS&E a sum of money. (Syrnick Dec. ¶24). These statements were intended to, and did,

communicate a threat that AS&E would assert additional patents, including those at issue

here, from its MobileSearch family. (Id.).

Later in the spring of 2003, Mr. Syrnick had several conversations with Cindy

Caruso, who was identified at that time as the Acting General Counsel of AS&E. During

those conversations, Ms. Caruso demanded that L-3 settle the claims of AS&E by

9

agreeing to (1) consent to not make, use or sell, any inspection systems using scatter technology, (2) **pay AS&E royalties for a non-exclusive license to what AS&E called its "suite" of MobileSearch patents**, and (3) acknowledge the validity of AS&E's patents. (Syrnick Dec. ¶25). This proposal was thus much like that communicated in the December 14, 2001 letter (Syrnick Dec., Ex. F) discussed above, and it left no doubt that AS&E was accusing L-3 of infringing the '623, '533, and other MobileSearch patents.

During the summer of 2003, AS&E and L-3 engaged in settlement discussions. (Syrnick Dec. ¶¶26-27). In those discussions, AS&E expressly demanded payment from L-3 for its alleged infringement of the "suite" or "family" of MobileSearch patents (which, again, includes the '533 and '623 patents at issue in this action). AS&E further demanded that L-3 acknowledge the validity of those patents and agree to stop making product. L-3 refused, and sought assurance that it would not be sued under any of the MobileSearch patents that were being held over its head. AS&E declined to provide any such assurance, and instead quite to the contrary continued to express its belief that L-3 was infringing the patents. (Id.)

In October, 2003, L-3 proposed to settle the 1998 Case with AS&E. (Syrnick Dec. ¶¶28-33). The proposal was that AS&E grant L-3 a license on all of the patents filed as continuations of the '683 patent. AS&E rejected the proposal, stating that it would only settle certain claims for **past** damages that arose under the '533 patent. (Syrnick Dec. ¶¶31-32). Notably, AS&E refused to grant **any** prospective license to, or give any other assurance that L-3 would not be sued on, any of the family of MobileSearch patents that are now at issue. (Id.) AS&E specifically noted that its settlement proposal would not preclude future litigation. (Syrnick Dec. ¶33).

10

Now, for purposes of this motion, AS&E suggests that it does not intend to bring

suit against L-3 under its MobileSearch patents for any of L-3's past or present products.

But it has consistently refused to make a legally binding promise not to do so. L-3 thus

continues to have a reasonable apprehension of suit by AS&E at a time of AS&E's

choosing, and a cloud remains over L-3's ability to invest in and make other decisions

regarding its operations in this important and competitive field of security technology.

(Symick Dec. ¶38).

## ANALYSIS

The Federal Circuit has established a two-part test for determining whether a

court can exercise declaratory judgment jurisdiction over patent claims:

> There must be both (1) an explicit threat or other action by the patentee,
> which creates a reasonable apprehension on the part of the declaratory
> plaintiff that it will face an infringement suit, and (2) present activity
> which could constitute infringement or concrete steps taken with the intent
> to conduct such activity.

Super Sack Mfg. Corp. v. Chase Packaging Corp., 57 F.3d 1054, 1059 (Fed. Cir. 1995)

(emphasis removed).

The first prong is met either when an express threat of suit has been made, or

when the totality of the circumstances would place a reasonable defendant in

apprehension of a lawsuit:

> If defendant has expressly charged a current activity of the plaintiff as an
> infringement, there is clearly an actual controversy, certainty has rendered
> apprehension irrelevant, and one need say not more. In light of subtleties
> in lawyer language, however, the courts have not required an express
> infringement charge.... When the defendant's conduct, including its
> statements, falls short of an express charge, one must consider the "totality
> of the circumstances" in determining whether that conduct meets the first
> prong of the test.... If the circumstances warrant, a reasonable
> apprehension may be found in the absence of *any* communication from
> defendant to plaintiff.

11

Arrowhead Industrial Water, Inc. v. Ecolochem, Inc., 846 F.2d 731, 736 (Fed. Cir. 1988) (internal citations omitted).

When performing the totality of the circumstances analysis, a history of litigation between the parties tends to weigh the balance in favor of exercising declaratory judgment jurisdiction, 8 D. Chisum, *Chisum On Patents*, § 21.02(1)(d)(iii) (2002), especially where the prior history of litigation "involves the same technology as the patent that is the subject of the declaratory judgment action before the Court." Kos Pharmaceuticals, Inc. v. Barr Labs., Inc., 242 F.Supp.2d 311, 315 (S.D.N.Y. 2003).

A patentee creates a reasonable apprehension not only when it expresses a willingness to sue for patent infringement, but also when it engages in any other conduct that shows the patentee's willingness to litigate to protect the technology that underlies its patent. Goodyear Tire & Rubber Co. v. Releasomers, Inc., 824 F.2d 953, 955-56 (Fed. Cir. 1987) (patentee's lawsuit in state court to protect a technology found to have created reasonable apprehension of suit on unasserted patents covering that technology); Vanguard Research, Inc. v. Peat, Inc., 304 F.3d 1249, 1255 (Fed. Cir. 2002) (same).

In particular, a patentee's filing suit on one patent directed to a particular technology establishes declaratory judgment jurisdiction over other "substantially similar" patents concerning that same technology. Clontech Labs., Inc. v. Life Technologies, Inc., 2000 WL 33124811, *2 (D.Md. 2000) (attached to this memorandum as Ex. 2) (patentee's bringing of lawsuit on two patents in patent family sufficient to give declaratory judgment plaintiff reasonable apprehension of being sued on third patent – a continuation – from the same family); Kos, 242 F.Supp.2d at 315-17 (S.D.N.Y. 2003) (finding declaratory judgment jurisdiction to exist over counterclaims concerning

12

unasserted patents that were "substantially similar" to those asserted in infringement complaint); SmithKline Beecham Corp. & Beecham Group, p.l.c. v. Zenith Goldline Pharmaceuticals, Inc., 2000 WL 963165 (E.D.Pa. 2000) (attached to this memorandum as Ex. 3) (prior suits on patents directed to a certain molecule created reasonable apprehension of suit on other patent directed to same molecule); Dr. Reddy's Labs., Ltd. v. aaiPharma Ind., 2002 WL 31059289, *8 (S.D.N.Y. 2002) (attached to this memorandum as Ex. 4) (patentee's general statements in Wall Street Journal expressing its intent to enforce patents covering technology against generic drug companies found sufficient to create declaratory judgment jurisdiction over all of patentee's patents directed to that technology – even those that issued after the article was published).

Once a reasonable apprehension of suit has been created, by an express threat or otherwise, nothing short of a covenant not to sue, like that made in Super Sack, 57 F.3d at 1059, or Spectronics Corp. v. H.B. Fuller Co., 940 F.3d 631, 636 (Fed. Cir. 1991), will suffice to remove that apprehension so as to divest the Court of declaratory judgment jurisdiction. Fina Research, S.A. v. Baroid Ltd., 141 F.3d 1479, 1483-84 (Fed. Cir. 1998). The mere declaration by the defendant that suit will not be brought against the plaintiff "on the facts presently known to him" is insufficient as a matter of law. C.R. Bard, Inc. v. Schwartz, 716 F.2d 874, 881 (Fed. Cir. 1983).

AS&E is well aware of this principle, having recently attempted, unsuccessfully, to obtain a dismissal without prejudice of the 1998 Case without making a Super Sack statement. Its attempt was rejected by Judge O'Toole, who required it to make a complete Super Sack statement, covering all of L-3's past and present product lines, if it was to avoid further litigation over the '683 and '511 patents that were in that suit.

13

Strikingly, AS&E agreed to do so, for the two patents at issue in that suit, but has refused
to do so for the other closely-related patents in the same MobileSearch family that are the
subject of this suit. The implication is obvious, as a matter of fact and law: A threat
remains. Absent a Super Sack statement – which AS&E expressly refuses to make –
regarding the patents in suit here, declaratory judgment jurisdiction continues.

**A.    AS&E Created a Reasonable Apprehension of Suit on the Part of L-3**

      **1.    The '533 Patent**

In its motion to dismiss, AS&E tacitly acknowledges that it threatened to sue L-3
for infringement of the '533 patent. Indeed, its repeated infringement accusations and
assertions that the patent would be added to the 1998 Case can be construed as nothing
less. AS&E's half-hearted attempt to characterize those threats as mere "jawboning" are
incredible, to say the least. Its express assertions that L-3 infringes the patent, and its
express threats to sue over it, were made repeatedly, both orally and in writing.

AS&E's attempt to escape the repercussions of its threats is ineffective. What the
cases cited by AS&E say is that, during licensing negotiations, it may be necessary for
the patent holder not to entirely foreclose the possibility that the patent will be asserted if
an agreement is not reached, because without such a threat the patent holder would be
powerless in the negotiation. The facts of this case are not even remotely analogous to
those of Shell, Phillips or Cygnus, in which there were ongoing licensing discussions and
the patentees were simply making their best arguments as to why a license should be
taken. AS&E unilaterally threatened to sue L-3, without L-3 having expressed any
interest in taking a license, and proceeded to sue L-3 or its predecessors on several
occasions, and to repeat its threats in numerous forms. AS&E does not even claim that it

14

threatened to assert the '533 patent in an effort to get L-3 to license that patent. Instead, it claims that it raised the '533 patent to bring L-3 to the table to settle the then-existing litigation between the parties, which involved different patents.

In any event, an accusation of infringement of a patent, coupled with a threat to sue over that patent, plainly create an "apprehension of suit." Kos, 242 F.Supp. at 314; Fina Research, 141 F.3d at 1482. The fact that AS&E went even further and made representations to the court (Exs. J and K) that it intended to bring suit under the patent (Syrnick Dec. ¶21) makes that conclusion in this case all the more evident.

**2.    The '623 Patent**

**A.    AS&E Made Express Threats That Encompassed The '623 Patent**

AS&E expressly threatened to sue on the MobileSearch family of patents. For example, on April 9, 2003 (the date of a status hearing in the 1998 Case), AS&E's General Counsel Edwin Lewis told L-3 Vice President and General Counsel Mark Syrnick that AS&E had "a lot more patents" it would assert against the L-3 technology in question here (which is the same technology that was at issue in the 1998 Case), and that L-3 should "come around soon" and pay AS&E a sum of money. (Syrnick Dec. ¶24). In that meeting, AS&E made it clear to L-3 that AS&E's position was that L-3 infringed a number of additional patents from its MobileSearch patent family (which includes the '623 patent), and that unless L-3 acceded to AS&E's demands, AS&E would assert such patents against L-3 in litigation. (Id.) On several other occasions as well, AS&E threatened L-3 with litigation on this "suite" or "family" of patents, as well as more generally on its "intellectual property." (Syrnick Dec. ¶¶16, 17, 25, 27, 33). These

15

express charges of infringement and threats to sue on the '623 and related patents plainly creates declaratory judgment jurisdiction as to that patent.

## B. **The '623 Patent Covers The Same Technology As The '533 Patent**

Declaratory judgment jurisdiction over the '623 patent exists, as a matter of law, for the further reason that the '623 patent is closely related to the '533 patent as to which several letters expressly threatening suit were sent. The '623 patent is in the same MobileSearch family of patents as the '533 patent, has the identical disclosure, and covers virtually the same technology. (See Symick Dec., Exs A & B; Ex. 1 hereto.) As discussed above, even when no express charge of infringement has been made (as it has here), a reasonable apprehension that a patent infringement lawsuit will be brought can be created when a patentee engages in any course of conduct that communicates its willingness to litigate to protect the **technology** that underlies its patent. Since the technology that AS&E has repeatedly emphasized its intention to protect is encompassed by both of the patents in suit, reasonable apprehension of suit exists as to both patents.

Intent to sue on a patent can be inferred from any of a number of enforcement-related threats or actions far more removed than the conduct at issue here. For example, the filing of non-patent, state-court litigation concerning the technology underlying the patent, would alone suffice to create declaratory judgment jurisdiction over the patent. See Goodyear, 824 F.2d at 956 ("By suing Goodyear in state court for the same technology as is now covered by the patents, Releasomers has engaged in a course of conduct that shows a willingness to protect that technology"); Vanguard, 304 F.3d at 1255 ("By filing the earlier lawsuit and informing Vanguard's clients that Vanguard is

16

using the PEAT technology without a license, PEAT has shown a 'willingness to protect that technology'").

A fortiori, AS&E's actual filing of a patent infringement action on two closely-interrelated patents to the ones now in suit, against the very same technology, communicates a threat to bring suits on these "substantially similar" patents. Not surprisingly, on-point case law so holds. See Kos, 242 F.Supp.2d at 316 ("Based on the vigor that Kos has displayed in enforcing against Barr its rights under the Listed Patents, it is objectively reasonable to presume that Kos might pursue another course of litigation against Barr with regard to the substantially similar Unlisted Patents"); SmithKline, 2000 WL 963165 at 2 ("Based on the vigor that SB has displayed with respect to protecting its paroxetine hydrochloride patents, it is not unforeseeable that it would similarly choose to sue Zenith for infringement of the '449 patent"); Clontech, 2000 WL 33124811 at 2 ("[S]imilar to the '005 and '797 patents, the newly issued '608 patent also covers technology involving modified reverse transcriptase enzymes.... Viewed as a whole, the Court finds that LTI's conduct was sufficient to give Clontech a reasonable apprehension that LTI intends to similarly assert its perceived proprietary position in the marketplace and prosecute the newly issued '608 patent."); Dr. Reddy's, 2002 WL 31059289 at 8 ("aaiPharma's threatening public statements directed to the generic omeprazole-manufacturing industry coupled with the fact that all three patents at issue in DRL's declaratory judgment action deal with omeprazole leads to the conclusion that DRL had a reasonable apprehension that it would be sued for patent infringement on the '384 and '721 Patents even though those patents had not yet been issued when the Wall Street Journal articles were published.").

17

In the instant case, the patentee has made clear its willingness to litigate in order to protect the technology underlying its family of patents covering its MobileSearch product. (Syrnick Dec. ¶¶ 7-21, 24-34; Teska Dec. ¶¶7-10). Indeed, it has already sued on one patent in the family (the '683 patent) and expressly threatened to sue on another (the '533 patent). (Syrnick Dec. ¶¶11, 14-21). The parties have been involved in no fewer than four prior lawsuits on this and a related field of X-ray technology. (Syrnick Dec. ¶¶9-13). L-3's CX-450M transmission-only mobile system, which it is currently selling, has been alleged to infringe both such patents. (Syrnick Dec. ¶¶11, 14-21).

Given the striking similarity between the claims of '533 and '623 patents, it would certainly be reasonable – even without any communications on this subject at all – for L-3 to believe that AS&E will continue to unleash patents from its arsenal of continuations against that same product line. (Syrnick Dec. ¶¶7, 18, 24, 27, 33; Teska Dec. ¶10). The fact that AS&E has expressly threatened to do so, of course, disposes of the issue.

To illustrate the similarity between the subject matter covered by the two continuations involved in this lawsuit, L-3 has prepared a chart (attached to this memorandum as Ex. 1), which compares limitations of the claims of the '533 patent with corresponding limitations found in the first group of claims present in the '623 patent. As the Court can see from Exhibit 1, these are very closely related patents.

The facts of this case are on point with those present in <u>Kos</u>, <u>SmithKline</u>, <u>Clontech</u>, and <u>Dr. Reddy's</u>. In <u>Kos</u>, the plaintiff patentee brought suit for infringement of two patents. The defendant, in turn, brought a counterclaim for a declaratory judgment of non-infringement of the two asserted patents <u>and</u> two patents that had not been

18

asserted. The counterclaim defendant moved under 12(b)(1) to dismiss the declaratory

judgment counterclaims for the two unasserted patents because it had not sued or

threatened to sue on those patents. The court denied the motion, primarily because the

unasserted patents were "substantially similar" to the asserted ones, and the patentee had

refused to covenant not to sue under the unasserted patents. 242 F.Supp.2d at 315-17.

Here, the case for declaratory judgment jurisdiction is even stronger, as not only are the

patents in suit "substantially similar" to the ones on which AS&E had previously sued,

but they have also been subject to express threats to enforce patent rights governing this

"technology," an allusion to the entire family of AS&E's MobileSearch patents. (Syrnick

Dec. ¶¶14-21, 24-27; Teska Dec. ¶10). Moreover, here (as in Kos) Defendant AS&E has

refused to covenant not to sue on the asserted patents, when that issue was expressly

discussed in the context of the settlement negotiations two months ago that resolved the

1998 Case.

　　　　Likewise, in SmithKline, the patentee sued on three patents, and the defendant

counterclaimed for non-infringement of those three patents and one additional patent that

had not been asserted. The court found declaratory judgment jurisdiction to exist over all

four patents, stating that "[t]he similarities between the [unasserted] patent and those that

[the patentee] seeks now to enforce in the instant suit against [the accused infringer]

cannot be ignored," and noting that the patentee "has not filed a covenant not to sue the

[accused infringer] on the [unasserted] patent." 2000 WL 963165 at *2.

　　　　Clontech and Dr. Reddy's were also based on similar facts as the case at bar. In

Clontech, a patentee's bringing of lawsuit on two patents in a patent family was found

19

sufficient to give a declaratory judgment plaintiff a reasonable apprehension of being sued on a third patent (a continuation) in the same family. 2000 WL 33124811 at *2.

In Dr. Reddy's, a patentee's general statements in the Wall Street Journal expressing its intent to enforce two patents covering a particular technology against generic drug companies was found sufficient to create declaratory judgment jurisdiction, in a suit brought by one such generic drug company, over all of the patentee's patents directed to that technology, including those patents that issued after the article was published. 2002 WL 31059289 at *8.

This case, moreover, is also much like the situations presented in Goodyear and Vanguard, where it was found that a defendant's use of non-patent litigation to protect a particular technology provided sufficient grounds for a declaratory judgment plaintiff to bring suit on unasserted patents owned by the defendant that covered that same technology. Indeed, the instant case provides an even more compelling factual scenario, since the patent holder here has engaged in and threatened patent litigation to protect the very technology at issue.

Accordingly, by repeatedly brandishing its sword at L-3 in an effort to protect its MobileSearch technology, AS&E has placed L-3 in reasonable apprehension of being sued under both of the patents at issue here (as both are in that patent family). This is not a close question – in case after case, the courts have so held, even when the relationship between the intellectual property previously threatened with enforcement and the patent at issue in the declaratory judgment were not as close as they are here. See, e.g., Kos, SmithKline, ClonTech, Dr. Reddy's; see also F.B. Leopold, Inc. v. Roberts Filter

20

Manufacturing Company, Inc., 36 U.S.P.Q.2d 1782 (W.D.Penn. 1995) (reasonable
apprehension of suit on continuation patent) (copy attached hereto as Ex. 5).

**B.      AS&E's Attempts to Retract its Threats Are Insufficient as a Matter of Law**

As noted above, absent a change in circumstances, once a reasonable
apprehension of suit has been created, by an express threat or otherwise, nothing short of
a covenant not to sue like that made in Super Sack, 57 F.3d at 1059, or Spectronics Corp.
v. H.B. Fuller Co., 940 F.3d 631, 636 (Fed. Cir. 1991), will suffice to remove that
apprehension so as to divest the Court of declaratory judgment jurisdiction. Fina
Research, S.A. v. Baroid Ltd., 141 F.3d 1479, 1483-84 (Fed. Cir. 1998). The mere
declaration by the defendant that suit will not be brought against the plaintiff "on the
facts presently known to him" is insufficient as a matter of law. C.R. Bard, Inc. v.
Schwartz, 716 F.2d 874, 881 (Fed. Cir. 1983). All that AS&E offers here is the statement
found ineffective in Bard, and indeed found ineffective most recently by Judge O'Toole
in the 1998 Case, resulting in AS&E ultimately offering a Super Sack statement (which
would suffice to end this case).

Here, there has been no change in circumstances, as L-3 is currently making,
selling, and offering for sale the same kind of transmission-only mobile products,
including the CX-450M, that it has been making and selling all along. (Syrnick Dec.
¶¶36-37). If AS&E were willing to make a Super Sack statement on the patents-in-suit
that mirrors the one it made to resolve the 1998 Case, then no dispute would remain as to
these patents either. L-3 would then be free to go about its business without the fear that
AS&E will later assert those patents against it.

21

AS&E also has made it clear that its supposed lack of present intent to sue was based on its erroneous belief that L-3 was no longer selling a truck-mounted transmission-only X-ray inspection system. L-3 does continue to offer such systems for sale, such as the CTX-450M. In fact, such systems are prominently displayed on L-3's website. (See Syrnick Dec., Ex. M).

That AS&E is holding a possible infringement lawsuit concerning the '533 and '623 patents over L-3's head is evidenced by AS&E's steadfast refusal, both before and after this lawsuit was brought, to covenant not to sue L-3 on products L-3 has made and sold in the past. Indeed, just a few months ago, AS&E made a proposal which its counsel forthrightly acknowledged in a letter "does not address your goal of ensuring no future litigation between the parties." (Syrnick Dec. ¶33) (emphasis added). If that were not clear enough, she went on to add that AS&E's alleged patent rights "require protection." (Id.) AS&E not only has not lifted its cloud of threats, but has continued to reiterate them. If AS&E really has no intention of *ever* suing L-3 under the patents-in-suit for L-3's past and current products, it can moot this case by providing the same Super Sack statement that it provided to moot the 1998 Case.

## C.    Present Alleged Infringing Activity Exists to Create Declaratory Judgment Jurisdiction

Present activity exists for this Court to exercise declaratory judgment jurisdiction in this case. AS&E has repeatedly and explicitly accused L-3's transmission-only mobile X-ray inspection systems, including the CX-450M, of infringement. (Syrnick Dec. ¶¶14-21, 24-27; Teska Dec. ¶10). L-3 continues to manufacture and sell the CX-450M system. (Syrnick Dec. ¶¶36-37).

22

## D. The Court Should Exercise its Discretion and Assert Declaratory Judgment Jurisdiction in This Case

AS&E's attempt to liken the facts of this case to those presented in EMC Corp. v. Norand Corp., 89 F.3d 807, 810 (Fed. Cir. 1996), appears to be a last-ditch attempt to avoid the inevitable result of its belligerent saber rattling.

It was AS&E's repeated and aggressive litigation, and threats of further litigation, that put L-3 in apprehension that it would sue on its patents. All L-3 is trying to do is remove the cloud of potential litigation AS&E has left hanging over its head. As far as L-3's present business with respect to transmission-only mobile X-ray inspection systems, such as the CX-450M, is concerned, L-3 has been "restricted to an *in terrorem* choice between the incurrence of a growing potential liability for patent infringement and abandonment of [its] enterprise[]." Arrowhead Industrial, 846 F.2d at 735. That is precisely the scenario the Declaratory Judgment Act was intended to address. Id.

The easiest way to clear the air would have been for AS&E to provide L-3 with a Super Sack type covenant not to sue. L-3 requested such a covenant on several occasions prior to bringing the instant suit, but AS&E consistently refused to give it any such assurance. (Syrnick Dec. ¶33). To now allege that L-3 was attempting to gain some sort of improper advantage by proposing that such a covenant be provided soon after the suit was filed is absurd. In essence, AS&E has alleged that L-3 is misusing the Declaratory Judgment Act to obtain the very relief it is entitled to under it.

Under the present circumstances, L-3 is plainly entitled to use the Declaratory Judgment act to "clear the air by suing for judgment that would settle the conflict of interests." Arrowhead Industrial, 846 F.2d at 735. Contrary to AS&E's assertion, L-3's use of the act for its intended purpose can not possibly be deemed an abuse of it.

23

## CONCLUSION

For the above reasons, AS&E's motion to dismiss should be denied.

Respectfully submitted,

L-3 COMMUNICATIONS SECURITY AND
DETECTION SYSTEMS CORPORATION
DELAWARE

Dated: March 24, 2004

Michael A. Albert, BBO #558566
Robert M. Abrahamsen, BBO #636635
John L. Strand, BBO #654985
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, Massachusetts 02210
Tel.: 617.720.3500
Fax: 617.720.2441

24

776370.1

## CERTIFICATE OF SERVICE

I certify that on the above date, I served Plaintiff's Opposition To Defendant

AS&E's Motion To Dismiss for Lack of Actual Controversy, on counsel for Defendant

by sending a copy of the same by hand to:

Erik Paul Belt
Bromberg & Sunstein LLP
125 Summer Street
Boston, Massachusetts 02110

25