IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| |
|---|
| L-3 COMMUNICATIONS SECURITY AND DETECTION SYSTEMS CORPORATION DELAWARE, <br><br> Plaintiff, <br><br> v. <br><br> AMERICAN SCIENCE & ENGINEERING, INC., <br><br> Defendant. |

CIVIL ACTION NO. 04-10339-RWZ

**DECLARATION OF KIRK TESKA IN SUPPORT OF
PLAINTIFF'S OPPOSITION TO DEFENDANT
AS&E'S MOTION TO DISMISS FOR LACK OF
<u>ACTUAL CONTROVERSY</u>**

1. I submit this declaration under penalty of perjury in support of the opposition of plaintiff, L-3 Communications Security and Detection Systems Corporation Delaware ("L-3"), to the motion of defendant, American Science & Engineering, Inc. ("AS&E"), to dismiss the complaint for lack of subject matter jurisdiction.

2. I represented the interests of the intervening party, EG&G Astrophysics Research Corp. ("EG&G"), in a litigation captioned <u>American Science & Engineering, Inc. v. Kelly</u>, Civil Action No. 99-10365-GAO (D. Mass.) (the "Customs case"), and also represented EG&G during a portion of another litigation



captioned <u>American Science & Engineering, Inc. v. EG&G Astrophysics Research Corp.</u>, Civil Action No. 98-11939-GAO (D. Mass.) ("the 1998 case").

3. In October of 1996, EG&G, Inc. and its wholly owned subsidiary, EG&G Astrophysics Research Corporation, were renamed PerkinElmer, Inc. and PerkinElmer Detection Systems, Inc., respectively.

4. In June of 2002, L-3 Communications, Inc. acquired from PerkinElmer, Inc., all of the capital stock of PerkinElmer Detection Systems, Inc.

5. I thus represented EG&G (later called PerkinElmer Detection Systems, Inc.) throughout the entirety of the Customs case, and through June of 2002 in the 1998 case, when L-3 Communications, Inc. purchased that company.

6. I personally participated in a number of settlement conferences at AS&E's offices relating to both the Customs case and the 1998 case, in which a global settlement of both cases was discussed. Also participating in various ones of those conferences were inside and outside counsel for both parties, including Robert Daut (AS&E's outside counsel) and Edwin Lewis (AS&E's general counsel). I also recall several motion conferences taking place in court and in Judge O'Toole's chambers where similar issues were discussed.

7.  In the 1998 case, AS&E had formally asserted only one of the patents in its MobileSearch patent family, namely, U.S. Patent No. 5,764,683 ("the '683 patent"). During the above conferences, however, I recall AS&E raising the issue of its other MobileSearch patents (U.S. Patent Nos. 5,903,623, 6,252,929, and 6,292,533) on several occasions. Each time those patents were discussed, I indicated that EG&G would be unwilling to settle only with respect to the '683 patent because that would leave the door open for AS&E to later assert the other patents against EG&G's products. AS&E repeatedly used the existence of those patents to try to leverage a more favorable settlement for their client than would be possible if only the '683 patent were in issue.

8.  Further to such discussions, I wrote a letter (attached as Ex. A) to AS&E's counsel, Robert Daut, on August 28, 2001, proposing a settlement in which AS&E would release EG&G from claims not only under the '683 patent, but also under all related patents, including all patents claiming priority to, or continuation, continuation-in-part or divisional applications from it. My purpose in including the related patents as a part of the release was to clear the air with respect to the other MobileSearch patents which were being held over EG&G's head in connection with the settlement discussions discussed above.

9.  In response to my letter, AS&E's counsel, Robert Daut, rejected my proposal, and indicated that AS&E would require EG&G to "not use, sell, or offer to sell transmission detection in mobile truck x-ray inspection systems in the United

3

States" at all. He further asserted that AS&E would stop any company that purchased EG&G from using such technology, if AS&E was not selected as the purchaser. L-3 is the company that eventually purchased EG&G. Mr. Daut closed his letter by stating that "First and foremost, it is AS&E's responsibility to protect its intellectual property."

10. I understood this letter as well as the earlier discussions I had had with Mr. Daut, Mr. Lewis, and others representing AS&E to constitute a threat that AS&E would enforce its entire family of MobileSearch patents against EG&G's products, regardless of whether such products employed backscatter imaging, transmission imaging, or both. These communications placed EG&G in apprehension of being sued under all of the MobileSearch patents.

Dated: March 23, 2004                                                     Kirk Teska