UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| L-3 COMMUNICATIONS SECURITY AND DETECTION SYSTEMS CORPORATION DELAWARE,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN SCIENCE & ENGINEERING, INC.<br><br>Defendant | Civil Action No. 04-10339-RWZ |

**AS&E'S REPLY IN FURTHER SUPPORT OF ITS
MOTION TO DISMISS FOR LACK OF ACTUAL CONTROVERSY**

    A.    **AS&E's Settlement of Prior Litigation Shows There is No Controversy**

This Court (per Judge O'Toole) has already opined that there is no actual controversy between AS&E and L-3 Security concerning the '533 and '623 patents. Specifically, while hearing AS&E's motion to dismiss the then-pending *EG&G* litigation (No. 98-CV-11939-GAO), the Court rejected L-3 Security's attempt to sneak the '533 and '623 patents into AS&E's proposed *Super Sack* statement: "I don't think that there's enough of a current controversy to include other patents." *See* **Exh. 1,** Transcript of February 11, 2004, at p. 15

Certainly nothing has changed in the few weeks since the Court dismissed the *EG&G* litigation. And L-3 Security has not pointed to any recent threats that would lead it to fear an impending suit. Instead, L-3 Security relies primarily on alleged threats made years ago (2001 and 2002, to be exact), well <u>before</u> AS&E settled its infringement claims with L-3 Security's predecessor, EG&G Astrophysics, and well <u>before</u> AS&E voluntarily sought dismissal of the *EG&G* litigation. All prior suits between AS&E and L-3's predecessors have now ended.

The settlement of the earlier lawsuit is the important difference between the current situation and the cases on which L-3 Security relies in its opposition brief. Specifically, L-3 Security relies on such cases as *Kos Pharmaceuticals*, *Goodyear Tire & Rubber, Clontech.*, *SmithKline Beecham*, and *C.R. Bard, Inc.,* for the proposition that an earlier-filed suit or threat involving one patent could create a controversy as to different, unmentioned patents. But in all of those cases, the patentee was maintaining on-going litigation against the declaratory judgment claimant and had not settled its earlier-filed cases, as AS&E has done here. In other words, in those cases, there was already an existing, live controversy or tension between the parties.

For example, in *Clontech*, the patent owner, Life Technologies ("LTI"), was actively prosecuting one lawsuit against Clontech when Clontech filed its declaratory judgment action against LTI. In denying LTI's motion to dismiss the declaratory judgment action, the district court pointed to the existing suit being waged between the parties in holding that "ongoing" litigation could show a sufficient apprehension of "impending" suit on a new patent. *Clontech Labs., Inc. v. Life Technologies, Inc.*, No. AW-00-1879, 2000 WL 33124811 at * 2 (D. Md., Dec. 20, 2000) (attached to L-3 Security's opposition brief).

The *Clontech* court relied on *Goodyear Tire & Rubber* for the premise that <u>on-going</u> litigation could be an omen of more to come. In *Goodyear*, the important factor again was that the parties were "currently embroiled" in another "ongoing" lawsuit involving the same technology covered by the patents raised in the declaratory judgment action. *Goodyear Tire & Rubber co. v. Releasomers, Inc.*, 824 F.2d 953, 955 (Fed. Cir. 1987).

Likewise, in *C.R. Bard*, a patent owner sued its licensee in state court for breach of the license agreement. In a common response to such state court actions, the licensee filed a declaratory judgment action in federal court seeking to invalidate the licensed patent. The

2

licensee filed that federal case less than two weeks after being served with the state court complaint. Indeed, the licensee elected to file that federal action instead of answering in state court. In effect, the licensee was using the federal action to answer the pending state action. In other words, the patentee was actively waging war against the licensee, and the licensee was merely striking back. *See C.R. Bard, Inc. v. Schwartz*, 716 F.2d 874, 875-76 (Fed. Cir. 1983).

Finally, in *SmithKline Beecham*, the patentee sued the defendant for infringement of three patents. The defendant <u>counterclaimed</u> for non-infringement and invalidity of a fourth patent. Thus, as in *C.R. Bard*, the defendant was responding to current and actual litigation actually being pressed upon it. *See SmithKline Beecham Corp. v. Zenith Goldline Pharmaceuticals, Inc.*, No. 00-CV-1393, 2000 WL 963165 (E.D. Pa., June 28, 2000).

In all of the above cases, the important point was that the patent owner was actively pursuing on-going litigation against the declaratory judgment claimant, with no sign of let-up. The pending litigation--and hence on-going tension between the parties--helped prove actual controversies in those cases. Here, however, AS&E has settled its claims, has been compensated for the trespasses on its intellectual property, has gained dismissal of the earlier litigation, and has thus relieved the tension. AS&E is not actively pursuing litigation against L-3 Security.

> **B.      Pre-Settlement Events Do Not Show a Controversy Now**

Astrophysicists and cosmologists often say that what happened before the Big Bang that created the Universe is irrelevant and does not affect post-creation events. The same can be said here. What happened before AS&E settled with EG&G and PerkinElmer, what happened before AS&E dismissed the *EG&G* litigation, what happened before AS&E covenanted not to sue L-3 Security, does not show impending litigation today, in the post-settlement universe. Thus, AS&E's statements and letters from 2001 and 2002, cited in Mr. Syrnick's declaration, are

3

irrelevant. Any alleged threats made then, years ago, cannot possible show imminent action now. The universe has changed since then. *See, e.g.,Gen-Probe Inc. v. Vysis, Inc.,* Nos. 359 F.3d 1376, 1381 (Fed. Cir. 2004) (express threats of infringement suit and previous history of litigation between the parties did not prove an actual controversy because those events occurred <u>before</u> consummation of license agreement between the parties); *Northern Telecom Inc. v. Wang Labs., Inc.*, 543 F. Supp. 1026, 1028 (D. Mass. 1982) (Even if DJ plaintiff had reasonable apprehension of suit at time alleged threat was made, a year before the plaintiff filed its complaint, such apprehension should have vanished given the patentee's conciliatory conduct over the intervening year).[1]

L-3 Security does rely on two letters from AS&E's Ms. Caruso that are of recent vintage (*i.e*., October 2003). *See* Exhs. O and P to L-3 Security's Declaration of Mark Syrnick. And those letters certainly make a very significant threat against L-3 Security. But that threat is not to expand the litigation. Rather, in her letters, Ms. Caruso threatens to seek <u>dismissal</u> of the then-pending *EG&G* litigation. Specifically, in her letter of October 28, 2003 (Exh. O), Ms. Caruso writes, "You should be aware that we are prepared to file a motion to dismiss if we do not receive a response on this [settlement] proposal by . . .October 29, 2003." Notably, Ms. Caruso offered in that same letter to include the '533 patent in any settlement agreement.

---

[1] In *Gen-Probe*, the Federal Circuit distinguished *C.R. Bard*, on which L-3 Security relies, on the ground that the *C.R. Bard* patentee had initiated litigation that was on-going and unresolved when the licensee filed the declaratory judgment action. The Federal Circuit found it significant that, as in AS&E's case, the *Gen-Probe* patentee had settled previous litigation and had not filed a new action. *Gen-Probe*, 359 F.3d at 1380-81. Thus, the history of litigation between the *Gen-Probe* parties and express threats made before the license agreement failed to show an actual controversy in the post-litigation, post-settlement universe.

In a follow-up letter on October 30, 2003 (Exh. P to Syrnick's), Ms. Caruso again offered to address any concerns over the '533 patent but, having concluded that L-3 Security was not serious about settlement, stated that AS&E would move to dismiss its claims. AS&E did so.

The <u>voluntary</u> dismissal of the *EG&G* litigation is an important point. L-3 mischaracterizes that dismissal as somehow going against AS&E. That is, L-3 Security misleadingly suggests that AS&E signed the *Super Sack* statement only grudgingly. To the contrary, AS&E voluntarily moved for dismissal and embraced the *Super Sack* statement. While arguing the motion to dismiss, which L-3 Security opposed, AS&E's counsel volunteered in open court, without prompting, that AS&E would file any appropriate release or covenant promising not to sue L-3 Security in order to obtain dismissal. Seeking clarification of AS&E's proposal, the Court asked whether AS&E would make the same statement that the patent owner had made in *Super Sack* to win dismissal of declaratory judgment counterclaims in that case. AS&E's counsel's response was immediate and enthusiastic: "Absolutely without reservation." **Exh. 2,** Transcript of Hearing of February 4, 2004, at p. 7.

In any event, L-3 Security has not pointed to any recent threats or other evidence of an impending suit or other imminent action by AS&E.

### C.   L-3 Security Fails to Identify Present Infringing Activity

Finally, L-3 Security still has not shown any present infringing activity that would support the second prong of the Federal Circuit's test for an actual controversy. But if L-3 Security is now claiming that it is making the potentially infringing truck-mounted mobile x-ray inspection systems, then that claim contradicts L-3 Security's previous comments that it was not making such products. And those comments led AS&E to seek dismissal of the earlier *EG&G* litigation.

5

Specifically, in his letter to AS&E of October 17, 2003, L-3 Security's general counsel, Mr. Syrnick, wrote that "L-3 has not, since June 14, 2002, either manufactured, sold, offered for sale, or used any products that formed the basis for AS&E's infringement theory or otherwise arguably infringed the patents or the purported trade secrets." *See* Exh. N to Syrnick's Declaration. AS&E understood from this letter, and comments made by Syrnick at meetings in July and October 2003, that L-3 Security was no longer making truck-mounted mobile x-ray inspection systems. *See* Declaration of Cynthia M. Caruso (attached to AS&E's opening brief) at ¶ 21 ("That comment confirmed to me AS&E's determination that L-3 Security was no longer making or selling the accused mobile detection systems, such as the MOBIX system"). *See also* **Exh. 3**, Declaration of William F. Grieco at ¶ 9 ("I came away from this meeting continuing to believe that L-3 Security was no longer in the business of making and selling the truck-mounted systems").[2]

Syrnick and L-3 Security argue that his statement was directed to the patents raised in the *EG&G* litigation, not to the '533 and '623 patents. But in the same breath, they argue that the '533 and '623 patents are related to the '511 and '683 patents raised in the *EG&G* litigation. Moreover, the same product--a truck-mounted x-ray inspection system--is at issue in both cases.

Thus, AS&E could easily conclude that L-3 Security is not making truck-mounted inspection systems at all. And that is just the inference from L-3 Security's recent statements to the Court during the February 2004 hearings on AS&E's motion to dismiss the *EG&G* litigation. There, L-3 Security emphasized that its mobile inspections systems are not now being

---

[2] In his declaration, Mr. Grieco, who is currently AS&E's acting general counsel and who directly dealt with Mr. Syrnick, also states that he aggressively and urgently pursued settlement and never threatened suit on the '533 or '623 patents. To the contrary, he sought to end the litigation with L-3 Security. **Exh. 3**, Grieco Decl. at ¶¶ 3-10.

manufactured.  **Exh. 2**, Transcript at 9-10.  L-3 Security stated that it merely "would like to have the option of continuing to offer for sale or sell" such products.  *Id.* at 10.

But the mere fact that L-3 Security lists mobile inspection systems on its website, or that it wants to have the "option" to sell truck-mounted systems in the future, does not show that it is actually producing or preparing to produce those products now.  The mere desire to sell a product is not enough to satisfy the second prong of the Federal Circuit's test.  Rather, the declaratory judgment plaintiff must actually be producing or preparing to produce the infringing item. *BP Chems., Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 980 (Fed. Cir. 1993) (plaintiff must show more than just "an interest in practicing the invention of another"); *Spectronics Corp. v. H.B. Fuller Co.*, 940 F.2d 631, 634 (Fed. Cir. 1991) (plaintiff must have "actually produced or prepared to produce an allegedly infringing product"); *see also Amana Refrigeration, Inc. v. Quadlux, Inc.*, 172 F.3d 852, 855 (Fed. Cir. 1999) (no actual controversy concerning products that were not actually manufactured, marketed, or sold at the time complaint was filed).

If L-3 Security is now saying that it has actively been making and selling truck-mounted systems all along (which is doubtful), then Mr. Syrnick's and L-3 Security's earlier comments misled AS&E into dismissing the *EG&G* litigation and signing the *Super Sack* statement.  *See* **Exh. 3**, Grieco Decl. at ¶¶ 8-10.  For that reason, L-3 Security must be judicially estopped from now claiming that it is making and selling those products.  *See, e .g.*, *Lydon v. Boston Sand & Gravel Co.*, 175 F.3d 6, 12-13 (1st Cir. 1999) (rejecting arguments that contradicted a party's winning arguments in an earlier proceeding); *Patriot Cinemas, Inc. v. General Cinema Corp.*, 834 F.2d 208, 214 (1st Cir. 1987) ("If parties feel free to select contradictory positions before different tribunals to suit their ends, the integrity and efficiency of the courts will suffer").

7

## CONCLUSION

Because AS&E has not threatened imminent suit, and because L-3 Security is not even producing or preparing to produce the allegedly accused products, there is no actual controversy to support declaratory judgment jurisdiction. Even if there is such a controversy, the recent history between the parties shows conciliation, not war, and this Court should decline jurisdiction to encourage such conciliation.

Dated: April 2, 2004                                    AMERICAN SCIENCE AND
                                                        ENGINEERING, INC.

                                                        *By its attorneys*,


                                                        /s/ Erik Paul Belt
                                                        Erik Paul Belt, BBO # 558620
                                                        BROMBERG & SUNSTEIN LLP
                                                        125 Summer Street
                                                        Boston, Massachusetts 02110
                                                        Tel:  (617) 443-9292
                                                        Facsimile:  (617) 443-0004
                                                        ebelt@bronsum.com

01945/00511  303217.1