UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| L-3 COMMUNICATIONS SECURITY AND DETECTION SYSTEMS CORPORATION DELAWARE<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN SCIENCE & ENGINEERING, INC.<br><br>Defendant | Civil Action No. 04-10339-RWZ |

**DECLARATION OF WILLIAM F. GRIECO
SUPPORTING MOTION TO DISMISS**

1. I am currently the acting general counsel for American Science & Engineering ("AS&E"). During the events I report below, I was also acting as the general counsel and, along with Cindy Caruso, was involved first hand in settlement discussions with L-3 Communications Security and Detection Systems Corporation ("L-3 Security"). I thus have first-hand knowledge, or a well-informed recollection, of the events and conversations I discuss in this declaration. As to those events and conversations for which I have no first-hand knowledge, I have endeavored to become knowledgeable about them through my review of company records or through conversations with the participating AS&E employees and thus believe that my account of such events and conversations is true.

2. As stated in Ms. Caruso's declaration, AS&E had sued EG&G Astrophysics Research Corporation ("EG&G") for infringement of the '511 and '683 patents and for misappropriation of trade secrets. The accused product in that case was the so-called MOBIX truck-mounted mobile x-ray inspection system. After EG&G's corporate parent, PerkinElmer,

EXHIBIT 3

sold EG&G to L-3 Communications Corporation, AS&E sought to settle its claims. In the spring of 2003, AS&E settled with PerkinElmer for any liability of EG&G through the date of its sale to L-3 Communications, namely, June 14, 2002. In that agreement, as Ms. Caruso reports, AS&E released not just PerkinElmer and EG&G, but also L-3, for any liability through June 2002 for infringement of the '511 and '683 patents. Importantly, AS&E also released those parties for liability under the '533 patent, which is now the subject of L-3 Security's declaratory judgment action.

3. After settling with PerkinElmer and EG&G, AS&E sought to settle with EG&G's successor, L-3 Security. AS&E believed, and was attempting to confirm though investigation, that L-3 Security was no longer making and selling, or could not sell, the MOBIX system or any other truck-mounted mobile x-ray inspection system. If so, there would be no reason to continue the litigation because AS&E has already been compensated for the infringement through its settlement with PerkinElmer and because the infringement had not continued.

4. Accordingly, Ms. Caruso and I contacted our counterpart at L-3 Security, Mr. Syrnick, to try to end the litigation. In particular, I met with Mr. Syrnick in July 2003. At that meeting at AS&E's offices in Billerica, Massachusetts, Mr. Syrnick raised the issue of a possible cross-license of our respective company's patents. He specifically suggested including patents not asserted in the *EG&G* litigation. I told him that AS&E was not interested in any of L-3 Security's technology and that, therefore, a cross-license would be difficult to accomplish. Moreover, I said that expanding any such negotiations to include patents beyond the '511 and '683 patents asserted in the *EG&G* litigation would be difficult. But at no time did I threaten to sue L-3 over AS&E's other patents, as Mr. Syrnick alleges. On the other hand, I told him that AS&E would be willing to dismiss its claims and even license its patents to L-3 Security for a

nominal fee, but that we would need to confirm what products L-3 Security was then making and selling that would potentially be covered by AS&E's patents.

5.  Mr. Syrnick said that he did not believe a royalty would be acceptable to his client because it was not producing similar products. He emphasized his position by stating that PerkinElmer had paid money to AS&E because its EG&G division had trucks that operated with the same x-ray system covered by AS&E's patents, and L-3 Security did not. I interpreted his statement as clear evidence that L-3 Security was no longer making truck-mounted mobile x-ray inspection systems. This understanding also should have been clear to Mr. Syrnick because, in response to his comments, I invited him to confirm his representations and to provide AS&E with a list of L-3 Security's current products, as well as an outline of why he thought there was no "overlap" between the relevant products and patents. Mr. Syrnick agreed to do so. We agreed to reconvene our discussion the following month.

6.  When I did not hear back from Mr. Syrnick during August, I attempted to reach him during the first week of September. After leaving numerous messages, I finally caught Mr. Syrnick on September 17, 2003. He told me that although L-3 Security continued to be interested in settlement and that it was undesirable for both companies to needlessly spend money on the then-pending *EG&G* litigation, he was unable to discuss the matter on the phone due to the press of other business. He committed to get back to me with a time when he could meet during the following two weeks.

7.  Because L-3 Security's trial counsel continued to press AS&E's counsel on discovery responses, seemingly without knowledge that the parties were engaged in settlement discussions, I again called Mr. Syrnick on September 30, 2003, with an urgent message requesting that he honor his prior commitment to engage in continued meaningful settlement

discussions and to request leave of the Court to facilitate those discussions, such as through a stay of litigation.

8. The next communication from Mr. Syrnick was the October 17, 2003, letter addressed to me and to Cindy Caruso, the Associate General Counsel of AS&E, proposing a settlement. Mr. Syrnick attaches this letter as Exhibit N to his declaration. As previously echoed by Ms. Caruso in her declaration (at ¶¶ 19, 21), I was comforted by Mr. Syrnick's confirmation in his letter that L-3 Security was no longer making and selling truck-mounted mobile x-ray inspection systems. This representation was a significant factor influencing AS&E to seek settlement or dismissal of the *EG&G* litigation.

9. Moreover, in a follow-up meeting on the morning of October 24, 2003, Mr. Syrnick never contradicted his statements that L-3 Security was making the truck-mounted systems. He also continued to represent that L-3 Security's products did not fall within the scope of patents in the lineage of the '511 and '683 patents, such as the '533 patent. I came away from this meeting continuing to believe that L-3 Security was no longer in the business of making and selling the truck-mounted systems.

10. Like Ms. Caruso, I believe that L-3 Security is pursuing this case simply to obtain a cheap license to AS&E's valuable patents, even though, since the settlement with PerkinElmer and EG&G last year, AS&E has not threatened to sue L-3 Security on those patents. Moreover, if L-3 Security is really making and selling truck-mounted mobile x-ray inspection systems, then it appears that L-3 Security used misleading information in an attempt to bait AS&E into giving L-3 a broader or less profitable license than was merited

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT. EXECUTED ON APRIL __1__, 2004.

                                                          William F. Grieco, Esq.

01945/00511   303606.1