IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| L-3 COMMUNICATIONS SECURITY AND DETECTION SYSTEMS CORPORATION DELAWARE,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN SCIENCE & ENGINEERING, INC.,<br><br>Defendant. | CIVIL ACTION NO. 04-10339-RWZ |

**PLAINTIFF'S SUR-REPLY IN SUPPORT OF ITS
<u>OPPOSITION TO DEFENDANT'S MOTION TO DISMISS</u>**

Plaintiff, L-3 Communications Security and Detection Systems Corporation Delaware ("L-3"), submits this sur-reply to rebut certain factual and legal misstatements made in the reply memorandum filed by defendant, American Science & Engineering, Inc. ("AS&E"), in support of its motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).

**<u>INTRODUCTION</u>**

The Declaratory Judgment Act was enacted to address the exact circumstances of this case: AS&E made numerous allegations of infringement and threats of litigation against its competitor, L-3, over a period of many years, including recent instances, and in many different circumstances. AS&E expressly refuses to sign a <u>Super Sack</u> statement that would remove those threats – the method approved by the Federal Circuit and required by Judge O'Toole in the recently dismissed case between these parties involving closely related patents. Instead, AS&E offers vague (and factually inaccurate) rhetoric alleging the absence of a controversy, while still

leaving a cloud of legal risk over L-3's head. The Federal Circuit has unequivocally held that once the patent holder has created this cloud of apprehension, the only way to remove it (short of proceeding to a resolution of the case) is for the patent holder to make the covenant described in Super Sack. AS&E is well aware that a Super Sack statement is required to remove the apprehension it placed on L-3, as it was required to make such a statement in order to end the 1998 Case just a few weeks ago (despite efforts virtually identical to the ones it now employs to avoid this result). Because AS&E refuses to make a Super Sack statement regarding the patents now in suit, and because L-3 undisputedly offers for sale, sells, and manufactures the allegedly infringing products,[1] a live controversy exists before this Court that needs to be resolved. AS&E has been litigating in several different matters, and threatening further litigation, against L-3 (including its predecessors) for nearly a decade. L-3 is entitled to move forward with its business of providing cargo security technology without the chilling effect this competitor has been trying to impose on it.

## ARGUMENT

Nothing in AS&E's Reply refutes the fact that L-3 has met both prongs of the Federal Circuit's test for determining whether a court can exercise declaratory judgment jurisdiction over patent claims: (1) L-3 has shown that certain actions by AS&E have placed L-3 under a reasonable apprehension of suit, and (2) L-3 currently manufactures, offers for sale, and sells products that allegedly infringe the patents-in-suit. Super Sack Mfg. Corp v. Chase Packaging Corp., 57 F.3d 1054, 1059 (Fed. Cir. 1995) (emphasis removed).

---

[1] L-3 does not, of course, agree that the patents are infringed, nor that they are valid. At issue for present purposes is only whether the products L-3 offers for sale are among those accused of infringement. They undisputedly are.

I.   **L-3 IS UNDER AN APPREHENSION OF SUIT BECAUSE OF AS&E'S NUMEROUS THREATENING ACTIONS.**

AS&E cannot, and does not, deny the following actions, any one of which alone sufficed to create an apprehension of suit:

- A nearly decade-long history of litigations between the parties sparked each time by AS&E (either through the filing of suit or threatening to do so), and involving the same or very similar technology. That alone would have been sufficient. See <u>Kos Pharmaceuticals, Inc. v. Barr Labs., Inc.</u>, 242 F. Supp. 2d 311, 315 (S.D.N.Y. 2003).

- A letter from AS&E's General Counsel to PerkinElmer's (a predecessor company to L-3) General Counsel indicating that AS&E would assert its patent rights relating to mobile X-ray inspection systems (including those patents now in suit) against PerkinElmer's products, including the transmission-only systems that L-3 currently offers for sale. (Teska Dec. ¶ 9,[2] Syrnick Dec. ¶ 16). That alone would have been sufficient. See <u>Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.</u>, 846 F.2d 731 (Fed. Cir. 1988).

- A letter from AS&E's General Counsel to PerkinElmer's General Counsel indicating litigation would continue unless PerkinElmer agreed to take a license to AS&E's "suite of MobileSearch patents," i.e., <u>the patents at issue in this suit</u>. (Syrnick Dec. ¶ 17). That alone would have been sufficient.

- AS&E's renewed threat of suit, again over these same patents, made to L-3's outside counsel regarding L-3's continued manufacture of transmission-only mobile X-ray inspection systems. (Syrnick Dec. ¶ 19). That alone would have been sufficient.

- AS&E's asserted position throughout the 1998 Case that L-3 infringed the `533 patent and that this patent could or should be added to the then pending litigation. (Syrnick Dec. ¶ 21).

- AS&E's statement during settlement discussions with L-3 that it had "a lot more patents [besides those in the 1998 Case]" that it could, and was intending to, assert against L-3 – a reference to the remaining MobileSearch patents that were not in the 1998 Case but are now in suit. (Syrnick Dec. ¶ 24).

- AS&E's demand during even more recent settlement negotiations of the 1998 Case, in both the spring and summer of 2003, that for L-3 to be released from AS&E's claims regarding <u>the patents now in suit</u> it would have to pay AS&E royalties on those patents (which AS&E called its "suite" of MobileSearch patents). (Syrnick Dec. ¶ 25). A demand of money to settle a claim of infringement, particularly in conjunction with

---

[2] All declarations referred to herein were filed contemporaneously with Plaintiff's Opposition To Defendant AS&E's Motion To Dismiss For Lack Of Actual Controversy. (Docket Item 7).

   AS&E's other actions, is about as clear an assertion of infringement as there is. See Millipore Corp. v. Univ. Patents Inc., 682 F. Supp. 227, 233 (D. Del. 1987) (finding offer of license with other factors to establish reasonable apprehension of suit).

- AS&E's refusal, during negotiations this past fall (and ongoing), to covenant not to sue L-3 on any of the family of MobileSearch patents that it had repeatedly threatened L-3 with and that are now in suit. (Syrnick Dec. ¶¶ 31-32).

AS&E does not deny the substance of any of these letters or conversations in its Reply. These facts are dispositive.

As the Federal Circuit has made clear, only a statement of the type made in Super Sack will remove the apprehension of suit: "Were the defendants to eliminate the reasonable apprehension by proffering the necessary Super Sack or Spectronics covenant, they could moot this declaratory judgment action. They have chosen not to do so, and as a result, the first prong of the justiciability test remains satisfied." Fina Research, S.A. v. Baroid Ltd., 141 F.3d 1479, 1484 (Fed. Cir. 1998).

Instead of offering the appropriate statement to relieve the apprehension created by AS&E, AS&E tries to argue that because several of its threats occurred before certain limited settlements between the parties, its threats have now subsided and L-3 is not under an apprehension of suit. (AS&E Reply, p. 3). Its facts, however, prove the opposite. By expressly limiting the scope of the earlier settlements, AS&E left it clear that it was not removing L-3's apprehension concerning AS&E's threats on the MobileSearch patents now in suit. No settlement between the parties resolved AS&E's threats regarding the specific patents-in-suit, the `533 and the `623 patents, for any time period after June 14, 2002. Indeed, AS&E recently reiterated its refusal to include the patents-in-suit in any covenant between the parties. (See Trans. of Feb. 11, 2004 Hearing at 4 (Ex. 1 to AS&E's Reply)). It is, of course, the risk of such future litigation that the Declaratory Judgment Action is designed to remove. See Inamed Corp.

v. Kuzmak, 249 F.3d 1356, 1362 (Fed. Cir. 2001) ("The central purpose of a declaratory action is often to clear the air of infringement charges.") (internal citations omitted).

In its Reply, AS&E represents that it made its Super Sack covenant not to sue regarding the patents in the 1998 Case "without prompting" (Reply at 5). While it is far from clear how this assertion supports, or is even relevant to, AS&E's position here, it is even harder to understand how AS&E found it appropriate to make such a representation to this Court. AS&E spent five years litigating the case, claiming that there was infringement. In an about-face a few months ago, it suddenly moved to have its own case dismissed without prejudice. When L-3 opposed, pointing to case law prohibiting that sort of on-again, off-again litigation tactic, and noting that only a Super Sack statement would allow AS&E to obtain such dismissal, AS&E filed a reply in which it still refused to provide the required Super Sack statement. There followed two court hearings during which Judge O'Toole made it clear that AS&E would not be able to get the case dismissed without a Super Sack statement. AS&E tried to limit that statement to certain products, and again Judge O'Toole rejected that ploy and required it to make a statement covering all of L-3's past or current technology, with regard to the patents at issue in that action. (See Tr. of Feb. 4, 2004 Hearing at 7) (Ex. 2 to AS&E's Reply). Only then did AS&E finally make the Super Sack statement and thereby obtain dismissal.

Because the patents now in suit were not at issue in the 1998 Case, AS&E's repeated threats to sue L-3 on the theory that L-3's mobile truck X-ray inspection systems infringe these patents did not arise in that case, were not a part of its Super Sack statement, and are at issue now for the first time in this case. Accordingly, if AS&E is trying to imply that this issue was resolved by Judge O'Toole, that again is simply not the case. Quite to the contrary, it was made clear by L-3 at the hearings that if AS&E refused to include the patents now at issue in its Super

Sack covenant for the 1998 Case, "we may have to be back here . . . with [a] declaratory judgment action on those other related patents because they're the subject of threats that have never been removed by a Super Sack statement and which they now appear to be saying they don't want to remove with a Super Sack statement." Feb. 11 Tr. at 6 (Ex. 1 to AS&E's Reply). The Court acknowledged the point, noting that he was just trying to find a "reasonable place to draw the line for the [bounds of the 1998 Case]." Id. at 15. Judge O'Toole recognized that the parties would most likely be "be back and fighting again," id., and that there may be a "plurality of litigations" revolving around the MobileSearch patents considering AS&E's threats. Id. at 16. He added that "if it happens . . . it at least will have its own focus." Id. at 16.

Unable to rebut the basic facts that (1) it threatened L-3 and (2) it has refused to lift that threat with the required Super Sack statement, AS&E instead cites cases that are inapposite. For example, Gen-Probe Inc. v. Vysis, Inc., 359 F.3d 1376 (Fed. Cir. 2004), which AS&E cites, answers the interesting but unrelated question of whether a licensee of a patent can establish declaratory judgment jurisdiction over a licensed patent while still paying royalties. The Federal Circuit held that it could not. That is an utterly unrelated factual scenario, as the patents-in-suit here are not licensed to L-3, as they were in the Gen-Probe case.

AS&E's citation to the case Northern Telecom Inc. v. Wang Labs., Inc., 543 F. Supp. 1026 (D. Mass. 1982) is also inapposite. AS&E argued in its Reply that the Wang court found that there was no apprehension of suit because of the "patentee's conciliatory conduct." (Reply at 4). First of all, AS&E misstates the holding. The court found there was no apprehension of suit because the declaratory judgment defendant did not own the patent at issue, not because of "conciliatory conduct." See Northern Telecom Inc., 543 F. Supp. at 1028 ("[The defendant] has filed numerous papers which deny that it owns the patent or has any right to bring [an] action

[based on the patent]"). AS&E has never alleged that it does not own the `533 and `623 patents. But even if AS&E's characterization of Northern Telecom were correct, AS&E has not acted in any "conciliatory" way towards L-3 with regard to the patents-in-suit. Quite to the contrary, as detailed above and in L-3's prior brief, AS&E has repeatedly threatened to sue over the MobileSearch patents and that threat has not been abated in the manner required by Super Sack (or indeed any manner).

    AS&E likewise has no response to the volume of authority cited by L-3 in its Opposition which establishes that if a patentee sues on one of a family of patents, it thereby creates declaratory judgment jurisdiction on the related patents. This principle of law, which is directly on-point here, is important because otherwise patentees would have an easy end-run around the Declaratory Judgment Act. AS&E has cited no contrary authority. Instead, it contends that those cases were different because "the patent owner was actively pursuing on-going litigation." (Reply at 3). Nothing in the case law, logic, or any other authority suggests that this factual distinction has any relevance to the underlying principle. The fact that one case between AS&E and L-3 recently came to an end is immaterial to the fact that a threat as to the other MobileSearch patents now in suit has been made against L-3. It certainly does not reduce L-3's reasonable apprehension of suit on these patents. If anything, the opposite is true. AS&E was willing to covenant not to sue on the two other patents, but would not do so as to these two patents. That, if anything, only enhances L-3's apprehension of suit. As Fina Research held, L-3 will be under a cloud of risk until the case is resolved or AS&E relieves the apprehension of suit by offering a Super Sack statement. AS&E has made it clear in its papers that this statement is not forthcoming. There remains, therefore, a live controversy between the parties for this Court to resolve.

In sum, AS&E's repeated and consistent allegations of infringement against L-3, the history of litigation between the parties on related technology and familial patents, and AS&E's refusal to present a <u>Super Sack</u> statement to relieve the apprehension of suit these threats created, establish that L-3 is currently under a reasonable apprehension of suit.

## II.   L-3 IS PRESENTLY ENGAGED IN ALLEGEDLY INFRINGING ACTIVITY.

The second factor is whether the declaratory plaintiff (L-3) is presently engaged in the allegedly infringing activity.  Again, AS&E has no real rebuttal to the undisputed evidence that it is.

As is evidenced in the Declaration of Mark Syrnick (General Counsel of L-3), L-3 continues to manufacture, offer for sale, and sell the CX-450M system, along with other transmission-only mobile truck X-ray inspection systems.  (Syrnick Dec. ¶ 36-37).  It is not merely preparing to sell these items, it is <u>presently</u> offering the CX-450M, with transmission detection only, for sale.  AS&E must surely be aware of this fact, as these items are (and at all relevant times have been) prominently displayed for sale on L-3's website.  (<u>Id.</u>; Ex. M to Syrnick Dec.).  AS&E contention that it no longer believes L-3 is offering these items for sale is unfounded.

AS&E claims that it formed this belief from comments allegedly made by L-3 during hearings and in a letter.  AS&E also relies upon the newly-filed Declaration of William F. Grieco (Exhibit 3 to the Reply).  Even assuming this late-filed document were considered,[3] Mr. Grieco's statement adds nothing material to the outcome.  AS&E misconstrues the statements by L-3 to which it refers.  In those statements, L-3 represented – accurately – that it was not manufacturing

---

[3] This document could have been filed with AS&E's opening brief.  <u>See</u> <u>DeNadai v. Preferred Capital Mkts., Inc.</u>, 272 B.R. 21, 33 n. 10 (D. Mass. 2001) (argument waived if raised for first time in reply memorandum).

or selling mobile truck X-ray inspection systems <u>that utilize backscatter detection</u>. It was not commenting on systems that use transmission imaging only. (<u>See</u>, <u>e.g.</u>, Feb. 4, 2004 Hearing at 9-10 (Reply Ex. 2)). The claims of the `623 and `533 patents allegedly cover <u>transmission-only</u> systems, which are now, and always have been, prominently displayed for sale on L-3's website.[4]

In short, L-3's statements about backscatter systems do not contradict the fact that L-3 offers for sale transmission-only mobile truck X-ray systems. Indeed, AS&E's previous outside counsel recognized this distinction in his October 18, 2002 letter to L-3's outside counsel in which he stated: "To date, EG&G has asserted that it has not infringed the `683 Patent because its Mobix system [such as the CX-450M] does not use backscatter as an imaging technology. In prior meetings with EG&G, AS&E has informed EG&G that regardless of whether the Mobix system infringes the `683 Patent, the Mobix system infringes the `533 Patent."

AS&E's last-ditch argument is that L-3 "must be judicially estopped from now claiming that it is making and selling those products," even though AS&E now evidently seems to concede that L-3 <u>does</u> make and sell the products in question. (Reply at 7). In order for AS&E to prove judicial estoppel, it must prove L-3 took one position earlier in a litigation, that it prevailed based upon that position, that L-3 then changed its position in the present litigation, and that AS&E is now unfairly prejudiced because of the change of positions. <u>InterGen N.V. v. Grina</u>, 344 F.3d 134, 144-145 (1st Cir. 2003). AS&E has not event attempted to prove these four elements, nor could it: L-3 did not take the position that AS&E characterizes it as, did not

---

[4] L-3's backscatter mobile truck X-ray inspection systems, which allegedly infringed the `683 and `511 patents at issue in the 1998 Case that require backscatter, are the same systems that L-3 represented its October 17, 2003 letter to AS&E that L-3 does not currently manufacture: "AS&E has no basis . . . for maintaining that L-3 infringes the <u>patents in suit</u> [the `511 and `683 that require backscatter]. L-3 has not, since June 14, 2002, either manufactured, sold, offered for sale, or used any products that formed the basis for AS&E's infringement theory [in the 1998 case]."

prevail based on such position, and has not changed its position. AS&E is simply confused, or would have the Court be. No real factual dispute exists: since at least 2002, L-3 has manufactured, offered for sale, and sold transmission-only mobile truck X-ray systems and never said otherwise. (Syrnick Dec. ¶ 36-37).

## CONCLUSION

For the foregoing reasons, AS&E's Motion to Dismiss For Lack Of Actual Controversy should be denied.

Respectfully submitted,

L-3 COMMUNICATIONS SECURITY AND
DETECTION SYSTEMS CORPORATION DELAWARE,

Dated: April 19, 2004

/s/Michael A. Albert
Michael A. Albert, BBO #558566
malbert@wolfgreenfield.com
Robert M. Abrahamsen, BBO #636635
rabrahamsen@wolfgreenfield.com
John L. Strand, BBO #654985
jstrand@wolfgreenfield.com
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, Massachusetts 02210
Tel.: 617.720.3500
Fax: 617.720.2441

786558.1

- 10 -