UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| L-3 COMMUNICATIONS SECURITY AND DETECTION SYSTEMS CORPORATION DELAWARE </br></br> Plaintiff and Counter-defendant </br></br> v. </br></br> AMERICAN SCIENCE & ENGINEERING, INC. </br></br> Defendant and Counterclaimant | Civil Action No. 04-10339-RWZ |

**MEMORANDUM OF LAW IN SUPPORT OF AS&E'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON L-3'S INEQUITABLE CONDUCT DEFENSES**

This case involves a dispute over two patents owned by American Science & Engineering, Inc. ("AS&E") directed to mobile x-ray inspection systems used for inspecting large cargo containers at, for example, seaports and border crossings. AS&E's competitor in the x-ray inspection business, L-3 Communications Security and Detection Systems Corporation Delaware ("L-3"), filed this case to seek declaratory judgments that the two AS&E patents are invalid, unenforceable, or not infringed. This motion focuses exclusively on L-3's two counts for declaratory judgments of unenforceability, in which L-3 alleges that AS&E committed inequitable conduct by failing to disclose two prior art references to the United States Patent & Trademark Office ("PTO") during prosecution of its patents. Specifically, L-3 alleges that AS&E failed to disclose (1) an alleged prior art offer for sale reflected in a government contract with the designation DAAB10-95-C-0001 and (2) the existence of a non-mobile x-ray inspection system, known as the CargoSearch system, which was installed at Otay Mesa, California. But

1

the prosecution history of the two patents shows that, in fact, AS&E did disclose the details of Contract DAAB10-95-C-001 and the Otay Mesa installation to the PTO.

The defense of inequitable conduct requires the accused infringer to prove, by clear and convincing evidence, that the patentee purposefully withheld from the PTO material prior art. As a matter of law, therefore, there can be no inequitable conduct because, even assuming that Contract DAAB10-95-C-0001 and the Otay Mesa installation are prior art and would be considered material to examination of the then-pending patent applications, AS&E fully disclosed the details of the two references and thus fulfilled its obligations to the PTO.

## THE PARTIES

AS&E, of Billerica, Massachusetts, produces state of the art x-ray inspection systems used, for example, by homeland security officials, postal officials, customs agents, and others to search for concealed bombs, drugs, contraband, illegal immigrants, and similar threats to our country. Given the current state of world affairs, the need for such inspections systems at our seaports and boarder crossings is tremendous. AS&E is a world leader in its field, due in a large part to its highly sophisticated, patented x-ray inspection technology.

Among the x-ray inspection systems developed, manufactured, and sold by AS&E is the MobileSearch™ x-ray inspection system, which is an x-ray system mounted on a truck and which can be used for inspecting cargo containers, automobiles, trucks, and other vehicles.

L-3 is AS&E's competitor in the x-ray inspection business. L-3 was formerly known as EG&G Astrophysics Research Corporation until L-3's parent company, L-3 Communications, bought that business in 2002 from its then owner, PerkinElmer Inc. L-3 is based in Woburn, Massachusetts. L-3 claims to make and sell a mobile x-ray inspection system of its own. This case, therefore, concerns whether L-3's mobile system infringes the AS&E patents.

## THE PATENTS-IN-SUIT

L-3 has placed two AS&E patents into contention in this case. The first is United States Patent No. 6,292,533 to Swift *et al.*, issued September 18, 2001, and assigned to AS&E ("the '533 patent"). The '533 patent (**Exh. 1**) is entitled "Mobile X-Ray Inspection System for Large Objects." According to the face of the '533 patent, it issued from an application filed on May 15, 2001. Furthermore, according to the "Related U.S. Application Data" on the face of the patent, that application was a continuation of a line of continuation applications tracing their heritage back to an application filed on February 12, 1997 (Application No. 08/799,533, which resulted in United States Patent No. 5,764,683) and ultimately to a provisional application, No. 60/011,495, filed on February 12, 1996 ("the '495 provisional application").

The second patent is United States Patent No. 5,903,623 to Swift *et al.*, issued on May 11, 1999, and assigned to AS&E ("the '623 patent"). The '623 patent (**Exh. 2**) is also entitled "Mobile X-Ray Inspection System for Large Objects." Likewise, as seen on its face, the '623 patent also traces its roots back to the original '495 provisional application.

## L-3'S INEQUITABLE CONDUCT CLAIMS

L-3 alleges that the '533 and '623 patents are unenforceable due to AS&E's alleged inequitable conduct. Specifically, L-3 alleges that, while prosecuting the '533 and '623 patents, AS&E withheld the following two prior art references from the PTO:

1. A prior art offer for sale to a government agency the x-ray inspection system (commonly referred to as the Mobile CargoSearch system) which is the subject of a contract numbered DAAB10-95-C-0001, entered into by AS&E and C3I Acquisition Center of the Communications Electronics Command, United States Army, on October 19, 1994;

2. The existence of a non-mobile x-ray inspection system developed by AS&E and called CargoSearch, which is located at Otay Mesa, California

*See* Amended Complaint for Declaratory Judgment [Court Docket # 19] at ¶¶ 29 and 45.

L-3 was very specific as to what the alleged inequitable conduct was because earlier in this case, AS&E had sought to strike the inequitable conduct claims from L-3's first complaint for failure to plead with the particularity required for such claims under Fed. R. Civ. P. 9(b). In its first complaint, L-3 alleged that AS&E withheld material prior art without specifically identifying the prior art references. AS&E withdrew its Rule 9(b) motion after L-3 amended its complaint to specifically name Contract DAAB10-95-C-001 and the Otay Mesa installation. L-3 did not identify any other alleged inequitable conduct other than the alleged failure to disclose the contract and the Otay Mesa installation.

## UNDISPUTED MATERIAL FACTS

The Court need not look beyond the prosecution history of the '623 and '533 patents to find the undisputed facts needed to defeat L-3's inequitable conduct claims. As seen above, both the '623 and the '533 patents claim priority from the '495 provisional application. **Exh. 3**. Both patents expressly cite the '495 provisional application in the "Related U.S. Application Data" field on the face of each patent. And, indeed, AS&E expressly incorporated the '495 provisional application by reference in its applications for the '623 and '533 patents. Specifically, in both patents, AS&E states that "[t]he present application claims priority from U.S. provisional application number 60/011,495, filed Feb. 12, 1996, also incorporated herein by reference." *See* **Exh. 1**, '533 patent at Col. 1, *ll.* 10-13; **Exh. 2**, '623 patent at Col. 1, *ll.* 7-10. As seen below, both the government contract and the Otay Mesa installation are expressly described in the '495 provisional application and are thus part of the official prosecution history of the '533 and '623 patents.

### A.     Disclosure of Contract DAAB10-95-C-0001

AS&E fully disclosed to the PTO the government contract, DAAB10-95-C-0001, and its subject matter in the '495 provisional application, which was expressly incorporated by reference into the application that became the '533 patent. Specifically, in the '495 provisional application, AS&E states that "[a] series of embodiments providing both back scatter imaging as well as transmission imaging are discussed in the document attached hereto and incorporated herein by reference as Appendix 3." **Exh. 3**, '495 provisional application at p. 3, *ll.* 13-15. Appendix 3 to the '495 provisional application, in turn, states that AS&E has "recently completed a truck-mounted, mobile implementation of the CargoSearch technology under an ARPA-funded contract (DAAB10-95-C-0001) with the U.S. Army CECOM Intelligence and Electronics Warfare Directorate." **Exh. 3**, Appendix 3 to '495 provisional application at p. 4. The Appendix goes on to discuss the details of the contract, including, for example, that the subject of the contract, a prototype Mobile CargoSearch™ system, was scheduled to be delivered to Fort Huachuca, Arizona, in December 1995. Appendix 3 also describes "primary features" of the system and includes a photograph and drawings and other proprietary information about the system and its concept. For example, AS&E describes the subject of the contract as follows:

> The primary features of the Mobile CargoSearch are: (1) it is a completely self-contained, mobile system, able to be moved over ordinary roadways to its intended operating site and set up easily by a crew of two or three people; (b) it can be used to scan objects ranging in size from a small car to a full-scale tractor trailer rig; (c) it scans objects without requiring them to be moved – i.e., the system itself scans past the inspected objects rather than conveying or towing the object past a stationary system.

*Id.* at p. 4. Thus, it is simply not the case that AS&E failed to disclose the DAAB10-950C-0001 contract to the PTO. Rather, AS&E provided the PTO with exquisite detail about the contract and its subject matter in the official prosecution history of the '533 and '623 patents.

### B.     Disclosure of the Otay Mesa Non-Mobile CargoSearch™ System

AS&E also disclosed to the PTO the non-mobile CargoSearch™ system installed in Otay Mesa, California ("the Otay Mesa installation"). Details of the Otay Mesa installation were disclosed to the PTO in numerous places throughout the '495 provisional application. *See, e.g.,* **Exh. 3**, Appendix 1 to the '495 provisional application at ppg. B-5 and B-15.

For example, AS&E disclosed the following details of the Otay Mesa installation to the PTO:

> The CARGOSEARCH system at Otay Mesa is configured from modular components: 450 kV source assemblies, modular x-ray high voltage power supplies, modular detectors, a detector electronics box and an operator's console, together with their interconnecting cables. .

**Exh. 3**, Appendix 1 to the '495 provisional application at p. B-5.

AS&E again disclosed both the existence and details of the Otay Mesa installation elsewhere in the '495 provisional application. *See, e.g., Id.* at Appendix 1, ppg. B-15, B-18, B-20 (a photograph of the Otay Mesa installation); Appendix 3 at p. 6 ("The CargoSearch system at Otay Mesa has now been in operation for more than fifteen months . . . ."). Accordingly, AS&E also fully disclosed to the PTO the Otay Mesa installation in the official prosecution history of the '533 and '623 patents.

### ARGUMENT

### I.     AS&E's DISCLOSURE OF THE CONTRACT AND OTAY MESA INSTALLATION IN THE PROVISIONAL APPLICATION WAS SUFFICIENT

A claim of inequitable conduct requires the accuser to prove, by clear and convincing evidence, that a patentee (1) withheld material information from the PTO with (2) an intent to deceive or mislead the PTO into granting the patent. *ATD Corp. v. Lydall, Inc.*, 159 F.3d 534, 546 (Fed.Cir. 1998). Information is deemed "material" when there is a substantial likelihood

6

that a reasonable examiner would consider it important when deciding whether to allow an application to issue as a patent.

Information, even if otherwise material, need not be provided to the examiner if it is merely cumulative of previously submitted information. *Upjohn Co. v. MOVA Pharmaceuticals*, 225 F.3d 1306, 1312 (Fed.Cir 2000) (granting summary judgment of no inequitable conduct, holding that the mere failure to disclose cumulative material was not inequitable).

Because a patentee need not submit cumulative information to the PTO, summary judgment dismissing inequitable conduct claims is routinely granted when the information alleged to have been withheld during the prosecution of a continuation patent is cited in the prosecution of a parent application. *See, e.g., ATD Corp*, 159 F.3d at 609 (summary judgment granted on inequitable conduct claim, noting that material submitted with a parent application is not "withheld" if not re-submitted with a subsequent application); *Advanced Respiratory, Inc. v. Electromed, Inc.*, 2002 WL 3138670 *4 (D. Minn. 2002) (granting summary judgment on inequitable conduct claim because material submitted with parent application does not need to be resubmitted with continuation patent); *Syringe Development Partners LLC v. New Medical Technology Inc*, 2001 WL 403232 *63 (S.D. Ind. 2001) (same).

The PTO's *Manual of Patent Examining Procedures* (MPEP) also expresses the clear rule that an applicant need not re-submit information filed during prosecution of a parent application. *See* **Exh. 4**, MPEP § 609 (information submitted with the parent application is considered part of the file of the continuation patent).

Summary judgment must be entered against L-3's inequitable conduct claims. Those claims do no more than allege that, when AS&E filed the '623 and '533 patents, it failed to re-submit the information concerning contract DAAB10-95-C-0001 and the Otay Mesa installation

that it had previously submitted in the '495 provisional application.[1] As noted above, because AS&E was not required to re-submit such information, already in the prosecution history, AS&E cannot have acted inequitably. *See Environmental Designs, Ltd. v. Union Oil Co. of California*, 218 U.S.P.Q. 865, 870 (Fed. Cir. 1983) ("failure to duplicate what is in the file wrapper" is not inequitable conduct).

Thus, because AS&E was under no obligation to re-submit the information L-3 claims was wrongfully withheld, L-3 cannot establish that AS&E withheld material information, and L-3's claims of inequitable conduct must fail, as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (summary judgment granted when moving party demonstrates a lack of evidence to support the case of the non-moving party).

## II. AS&E CLEARLY IDENTIFIED THE PROVISIONAL APPLICATION IN ITS PATENT APPLICATION

AS&E made it very easy for the PTO--and, indeed, for L-3 or other competitors--to find the references to Otay Mesa and Contract DAAB10-95-C-001. According to the Federal Circuit, a patentee may incorporate a document by reference such that the "referenced document becomes effectively part of the host document as if it were explicitly contained therein." *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1329 (Fed. Cir. 2001). As seen above, AS&E incorporated by reference the '495 provisional application and its contents into both the '533 and '623 patent applications. *See, e.g.,* **Exh. 1**, '533 patent at Col. 1, *ll.* 10-13 ("the present application claims priority from U.S. provisional application number 60/011,495,

---

[1] AS&E disputes that Contract DAAB10-95-C-001 and the Otay Mesa installation were "material" to examination of the '533 and '623 patents. Nonetheless, for purposes of this argument, AS&E will assume they were material. Even if they were material, they were disclosed, thus ending the inquiry.

filed Feb. 12, 1996, also incorporated herein by reference"). With this wording, AS&E clearly signaled to the PTO, and to its competitors, the location and existence of the alleged prior art references at issue here.

### III. L-3'S CLAIMS ARE AN ATTEMPT TO GAIN INAPPROPRIATE ADVANTAGE OVER A COMPETITOR

The Federal Circuit and the district courts have often labeled inequitable conduct claims as a plague on the system of law. These claims clog up court dockets, waste court time and resources, and rarely have an iota of merit. *Burlington Indus., Inc. v. Dayco Corp.*, 849 F.2d 1418, 1422 (Fed. Cir. 1988) (reversing summary judgment of inequitable conduct). *See also Preemption Devices, Inc. v. Minnesota Mining & Manufacturing Co.*, 732 F.2d 903, 908 (Fed.Cir. 1984) (noting that charges of inequitable conduct are "much abused and too often last resort allegations"); *TM Patents, L.P. v. Int'l Bus. Mach. Corp.*, 121 F. Supp. 2d 349, 372 (S.D.N.Y. 2002) (noting that the Federal Circuit has "long decried" the use of inequitable conduct claims in patent litigation); *AT&T Corp. v. Microsoft Corp.*, 2004 WL 232725, *4 (S.D.N.Y.) (acknowledging Federal Court suspicion of inequitable conduct claims). Indeed, courts have noticed a troubling trend in which parties use inequitable conduct claims as a tactic to delay trial. *Chiron Corp. v. Abbott Laboratories*, 156 F.R.D. 219, 221 (N.D. Cal. 1994).

L-3's inequitable conduct claims further this trend. As discussed above, L-3's claims lack factual support and create an additional drain on the Court's resources and time. Likewise, these unjustified claims have burdened AS&E and have forced it to waste time on red herrings. Such misuse of the law of inequitable conduct should be condemned. *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1182 (Fed.Cir. 1995) (noting that unjustified accusations of inequitable conduct are offensive, unprofessional, and a plague on the court system).

Had L-3 bothered to review the prosecution history of the two patents, which is entirely available to the public, it would have discovered that AS&E had, in fact, disclosed Contract DAAB10-95-C-001 and the Otay Mesa installation to the PTO. L-3's claims lack merit.

## CONCLUSION

For all of the foregoing reasons, AS&E respectfully requests that this Court grant AS&E's Motion for Summary Judgment dismissing Counts Three and Six of L-3's Amended Complaint for Declaratory Judgment.

Dated: December 22, 2004

AMERICAN SCIENCE AND
ENGINEERING, INC.

*By its attorneys*,

Erik Paul Belt, BBO # 558620
John F. Ward, BBO # 646689
BROMBERG & SUNSTEIN LLP
125 Summer Street
Boston, Massachusetts 02110
Tel: (617) 443-9292
Facsimile: (617) 443-0004
ebelt@bronsum.com

## CERTIFICATE OF SERVICE

I certify that, on the above date, I served by hand delivery a true copy of this document on counsel for each other party.

Erik Paul Belt

01945/00511 350937.2