IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| L-3 COMMUNICATIONS SECURITY AND DETECTION SYSTEMS CORPORATION DELAWARE,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN SCIENCE & ENGINEERING, INC.,<br><br>Defendant. | CIVIL ACTION NO. 04-10339-RWZ |

**OPPOSITION TO AS&E'S MOTION FOR PARTIAL SUMMARY
<u>JUDGMENT ON L-3'S INEQUITABLE CONDUCT DEFENSE</u>**

Plaintiff, L-3 Communications Security and Detection Systems Corporation Delaware ("L-3"), opposes American Science & Engineering, Inc.'s ("AS&E") motion for partial summary judgment on L-3's inequitable conduct defense.

<u>**SUMMARY**</u>

AS&E committed inequitable conduct in the prosecution of the patents-in-suit. Specifically, AS&E did not disclose to the United States Patent and Trademark Office ("PTO") during the prosecution of the patents-in-suit that a prior art sale had been made to the government of an embodiment of one of the inventions claimed in the patents-in-suit.[1]

---

[1] L-3 is dropping the contention in the Amended Complaint (¶¶ 29, 45) that AS&E failed to disclose that a non-mobile CargoSearch system, located at Otay Mesa, California, was also prior art to the patents-in-suit.

Over a year prior to the filing of the application that led to the patents, AS&E had contracted to sell an embodiment of the invention to the government. Because the contract preceded the filing by more than a year, the sale was prior art to the application. AS&E stated to the PTO that it had "recently" completed an embodiment of the invention under the contract, but did not disclose that the contract (and thus the embodiment) was prior art.

In its motion, AS&E argued (AS&E Mem. (D.I. 32) at 5) that it had disclosed "details" of the contract to the PTO. AS&E, however, did not disclose to the PTO that the contract was prior art. The PTO would not, on its own, have realized that the contract was prior art because AS&E did not disclose that the date of the contract was more than a year before the provisional application was filed. Instead, AS&E told the PTO that the contract was for embodiments "of the present invention," (Ex. 3 to AS&E Appendix (D.I. 34)("AS&E's App."), p. 3) which statement necessarily implied that the contract was not prior art. AS&E thus violated its duty of disclosure.

L-3 has not yet had an opportunity to complete its discovery concerning this sale. As the Court is aware, L-3 attempted to depose AS&E regarding this sale under Fed. R. Civ. P. 30(b)(6). AS&E, however, did not show up for the deposition. The Court should thus order AS&E to provide discovery on these issue pursuant to Fed. R. Civ. P. 56(f).

Therefore, L-3 requests that AS&E's motion be denied, and that AS&E be ordered to provide discovery concerning the issues raised by L-3's inequitable conduct claim.

859496.3

## BACKGROUND

AS&E owns U.S. Patent Nos. 5,903,623 ("the `623 patent") and 6,292,533 ("the `533 patent"), directed to mobile x-ray inspection systems used for inspecting large cargo containers. Each patent claims priority to a provisional application, U.S. Patent App. No. 60/011,495 ("the `495 application"), filed on February 12, 1996. The `495 application was incorporated by reference in the applications that became the `623 and `533 patents.

L-3 sued AS&E in February 2004 to clear the air for L-3's future sales of certain mobile X-ray inspection systems. L-3's Amended Complaint (D.I. 19) asserted, among other things, that these patents were unenforceable because AS&E intentionally withheld certain material information from the PTO.

L-3 identified the information not disclosed to the PTO as the fact that a sale was made to a governmental agency of the subject matter reflected in contract number DAAB10-95-0001, between AS&E and the U.S. Army C3I Acquisition Center ("Mobile CargoSearch Contract") (Ex. 1)[2] more than a year before the patent application was filed, and thus was prior art.

In its Answer, AS&E denied, among other things, "that the subject matter of Contract DAAB10-95-C-0001 [is] prior art to the claims of the [patents-in-suit]." (Amended Answer (D.I. 22) at ¶¶ 29, 45).

L-3 then sought to take AS&E's deposition to prove what AS&E had denied, namely, that the X-ray inspection systems that were the subject of the contract were

---

[2] This exhibit is attached to the accompanying Declaration of Robert M. Abrahamsen in Opposition to AS&E's Motion for Partial Summary Judgment on L-3's Inequitable Conduct Defense.

859496.3

prior art to the patents-in-suit. L-3 also sought to establish AS&E's knowledge of this prior art and that the art was not disclosed to the PTO.

L-3's discovery, however, has been thwarted because AS&E did not show up for a properly noticed deposition concerning L-3's defenses. (See Pl's. R. 37 Mot. For Sanctions (D.I. 27) and supporting papers (D.I. 28, 29). Ironically, this motion for partial summary judgment encompasses the same issues for which AS&E has refused to appear for deposition.

The limited information L-3 has obtained shows that on January 31, 1994, AS&E submitted a proposal to the U.S. Army entitled "AS&E® MOBILE CARGOSEARCH™ X-Ray Inspection System" for the development and production of a mobile truck X-ray system (the "White Paper"). (Ex. 1, AS&E00502389). This White Paper included a 15-page description of the proposed system, including detailed drawings. (E.g., id. at AS&E00502413-14). The Army later awarded a "Cost-Plus-Fixed-Fee" contract to AS&E based on the White Paper and subsequent negotiations. (Id. at AS&E00502346 (AS&E "shall furnish all labor, material, and facilities necessary to perform the effort as described in accordance with AS&E's proposal dated 31 January 1994, entitled 'Mobile CARGOSEARCH X-Ray Inspection System. . . .'") (emphasis added). That contract was the "Mobile CargoSearch Contract" designated DAAB10-95-C-0001, and dated October 19, 1994. (Id. at AS&E00502389). Andrew Tybinkowski and Dr. Roderick D. Swift were named as "key personnel" to the Mobile CargoSearch Contract. (Id. at AS&E00502439). Because that contract was agreed to more than a year before the patent application was filed, the Mobile CargoSearch system of the contract was prior art to the patents.

The '495 application, entitled "Large Object X-Ray Imaging," naming Tybinkowski, Swift, and others as inventors, (Ex. 3 to AS&E's App., Application Coversheet), did not itself refer to the Mobile CargoSearch Contract. Instead, AS&E attached three appendices, which the application incorporated by reference. (Id. at 3).

Each of the appendices mentioned the Mobile CargoSearch system, but none disclosed that it had been the subject of a sale more than a year earlier, and thus was prior art.[3] To the contrary, the '495 application referred to Appendix 3 as describing "embodiments of the invention," necessarily implying that the Mobile CargoSearch system was <u>not</u> prior art. (Id. at 3).

On February 12, 1997, AS&E filed the first non-provisional application in the chain of applications that led to the patents in suit. In these applications, AS&E made no reference to the Mobile CargoSearch Contract; AS&E merely again incorporated by reference the `495 application. Therefore, Appendix 3 to the `495 application, the only paper AS&E filed with the PTO that contained any reference to the Mobile CargoSearch Contract, was incorporated by reference into the `495 application, which was then itself incorporated by reference into the applications that became the patents-in-suit.

AS&E contended its disclosures were sufficient to fulfill its duty of disclosure to the PTO.

---

[3] Appendix 3 mentioned the contract specifically, but did not disclose that it had been signed more than a year earlier.

5

**ARGUMENT**

Patent applicants and their attorneys owe a "duty of candor" to the United States Patent & Trademark Office:

> Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability as defined in this section.

37 C.F.R. § 1.56 (2004). To prove a party did not meet its duty of candor, i.e., committed inequitable conduct, a party must show the patentee (1) failed to disclose information material to patentability, and (2) did so with an intent to deceive or mislead the PTO. Bruno Indep. Living Aids, Inc. v. Acorn Mobility Servs., Ltd., App. Nos. 04-1114, 04-1125, __ F.3d __, 2005 WL 43153, at *2 (Fed. Cir. Jan. 11, 2005) (affirming district court decision that applicant "intentionally withheld [certain] prior art in an attempt to mislead the PTO," finding the patent unenforceable).

For the purposes of its motion, AS&E conceded materiality. (See, AS&E's Mem. at 8 n. 1 ("[F]or purposes of this argument, AS&E will assume [the information was] material.")). AS&E argued instead that the information was fully disclosed, "thus ending the inquiry." (Id.).

Whether AS&E adequately disclosed that the government contract was prior art presents, at a minimum, a question of material fact. Moreover, because AS&E refused to show up for its deposition on the issues raised in its motion, L-3 has not had an adequate opportunity to discover relevant information and is entitled to more discovery, pursuant to Rule 56(f) of the Federal Rules of Civil Procedure.

859496.3

## I. AS&E COMMITTED INEQUITABLE CONDUCT BY FAILING TO DISCLOSE THAT THE MOBILE CARGOSEARCH CONTRACT WAS PRIOR ART.

AS&E's failure to disclose that the subject matter of the Mobile CargoSearch Contract was prior art constituted inequitable conduct.

### A. The Mobile CargoSearch Contract Was Material Because It Was a Prior Art Sale.

Section 102(b) of 35 U.S.C., provides that a patent application cannot issue if the subject matter of the application is "on sale in this country, more than one year prior to the date of the application for patent in the United States." A patent is invalid under this "on sale bar" if (1) the invention was the subject of a commercial offer for sale more than one year before the filing date of the earliest application to which the application at issue can claim priority, and (2) the invention was ready for patenting more than one year before the filing of the earliest application. Pfaff v. Wells Electronics, Inc., 525 U.S. 55, 67 (1998). This "on sale bar" creates a "critical date," the earliest date the offer for sale could have occurred without anticipating the application, which is one year before the filing date of the application. Monon Corp. v. Stoughton Trailers, Inc., 239 F.3d 1253, 1257 (Fed. Cir. 2001) ("We give the term 'critical date' to the date one year prior to the date on which the patent application was filed."). The `495 application, the earliest application in the chain preceding the `533 and `623 patents, was filed on February 12, 1996. Therefore, the critical date for the patents-in-suit was February 12, 1995.

The Mobile CargoSearch Contract was material prior art to the patents-in-suit because it was a commercial offer for sale of an embodiment of the claimed inventions made before the critical date of the patents-in-suit.

7

The Mobile CargoSearch Contract, effective October 19, 1994, constituted a commercial offer for sale of inventions claimed in the patents-in-suit. See Zacharin v. United States, 213 F.3d 1366 (Fed. Cir. 2000). In Zacharin, the Federal Circuit examined a contract similar to the Mobile CargoSearch Contract and affirmed the district court's conclusion that the contract was an invalidating offer for sale. Id. at 1371. The contract in Zacharin was considered a "cost plus fee" contract, i.e., the contractee would recover the costs of manufacturing the described product plus a fee. Id. at 1368. The Mobile CargoSearch Contract is the same. (Ex. 1, p. B-1 ("This is a Cost-Plus-Fixed-Fee (completion) type contract.")). Furthermore, the contract in Zacharin was for a specific amount of goods made to the specifications provided. 213 F.3d at 1368. Likewise, under the Mobile CargoSearch Contract, AS&E was to provide one mobile truck x-ray system, made to the specifications provided by AS&E in its White Paper. (Ex. 1, p. B-1).

AS&E thus cannot contend that the Mobile CargoSearch Contract, as an offer for sale made well before the critical date, was not material to the prosecution of the applications. Since the system offered for sale through the Mobile CargoSearch Contract was an embodiment of inventions claimed in the patents in suit, that the contract was prior art was information highly material to the prosecution of those patents. See Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp., 267 F.3d 1370, 1386 (Fed. Cir. 2001) (affirming district finding of inequitable conduct based on failure to disclose material offer for sale).

859496.3

In any event, AS&E, for purposes of its present motion, does not contend the Mobile CargoSearch Contract was immaterial.  AS&E merely claims it disclosed the Mobile CargoSearch Contract.

### B. AS&E Did Not Disclose That The Mobile CargoSearch Contract Was Prior Art.

AS&E withheld from the PTO the information that would have identified the Mobile CargoSearch Contract as prior art, namely, the date it was consummated, October 19, 1994.

AS&E did not disclose that the contract had been made more than a year before the application.  The only dates AS&E provided to the PTO in its `495 Application were January, 1994 (Appendix 3 to Ex. 3 to AS&E's App., p. 4), the date when the Mobile CargoSearch was "proposed," and December 1995, the date the system was to be delivered (Id.).  AS&E did not disclose the date the Mobile CargoSearch Contract became effective: October 19, 1994, before the critical date.

The examiner would not have known to treat the Mobile CargoSearch Contract as prior art, as he could not evaluate whether a sale was prior art without knowing when it occurred.  Cf. Man. Patent Exam. and Prac. (MPEP) § 609 (Ex. 4 to AS&E's App.) (requiring the issue dates of patents submitted to be provided).

Moreover, that AS&E disclosed the Mobile CargoSearch Contract, but not the date of the contract, supports an inference that AS&E intended to deceive the PTO.  "It [is] incumbent upon the [applicant] to provide the PTO with sufficient information for a reasonable examiner to consider the [reference] in context, not with a selective and misleading disclosure." Refac Int'l, Ltd. v. Lotus Dev. Corp., 81 F.3d 1576, 1584 (Fed.

859496.3

Cir. 1996) (affirming district court determination that selectively disclosing information in an affidavit constituted inequitable conduct.)

AS&E's inclusion of other information concerning the Mobile CargoSearch Contract, such as the contract no. DAAB10-95-0001 (Appendix 3 to Ex. 3 to AS&E's App., p. 4) and the delivery date of December 1995 (Id.), was misleading.  A reasonable examiner would assume a government contract number with a "95" in the middle would have been consummated in **1995**, after the critical date, not in 1994.  In addition, AS&E's disclosure of the delivery date of the system of December 1995, well after the critical date, was also misleading.  Furthermore, AS&E stated in Appendix 3 to the `495 Application that it "recently completed" the Mobile CargoSearch system.  (Id.).  This implied that the activity was within a year of the filing date of the application.  Lastly, AS&E even claimed on the provisional application cover sheet that the Mobile CargoSearch System was not developed under government contract.  (Ex. 3 to AS&E's App., third page entitled "Provisional Application Cover Sheet"); which, as seen from the contract itself, was not accurate.  These disclosures, together with the high level of materiality of the Mobile CargoSearch Contract, present, at a minimum, a question of material fact as to whether AS&E withheld information that the Mobile CargoSearch Contract was prior art with an intent to deceive the PTO.

**CONCLUSION**

For the above reasons, AS&E's motion should be **denied**, or, in the alternative, L-3 should be given an opportunity to finish discovery concerning the issues raised by L-3's inequitable conduct defenses.

        Respectfully submitted,

        L-3 COMMUNICATIONS SECURITY AND
        DETECTION SYSTEMS CORPORATION
        DELAWARE

Dated: January 19, 2005    /s/ James J. Foster
        James J, Foster, BBO #553285
        Michael A. Albert, BBO #558566
        Robert M. Abrahamsen, BBO #636635
        John L. Strand, BBO #654985
        WOLF, GREENFIELD & SACKS, P.C.
        600 Atlantic Avenue
        Boston, Massachusetts 02210
        Tel.: 617.646.8000
        Fax: 617.646.8646
        JFoster@wolfgreenfield.com

859496.3