IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| L-3 COMMUNICATIONS SECURITY AND DETECTION SYSTEMS CORPORATION DELAWARE,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN SCIENCE & ENGINEERING, INC.,<br><br>Defendant. | CIVIL ACTION NO. 04-10339-RWZ |

## SURREPLY IN SUPPORT OF L-3'S OPPOSITION TO AS&E'S MOTION FOR PARTIAL SUMMARY JUDGMENT

### INTRODUCTION

L-3 is filing this Surrreply, and accompanying declaration under Fed. R. Civ. P. 56(f), to address several issues AS&E raised for the first time in its Reply.

AS&E moved for partial summary judgment, arguing that it had made a full disclosure to the PTO of all information identified by L-3 as not disclosed. AS&E did not contest that the information was material. Indeed, AS&E expressly conceded for the purposes of its motion that the information was material to the prosecution of the patents-in-suit. (AS&E's Mem. at 2, 8 n. 1).

Thus, L-3's initial Opposition concentrated on the disclosure issue. It acknowledged that the patent application had stated that the patented system had been developed pursuant to a government contract. L-3's Opposition pointed out, however, that the application had concealed that the contract (which reflected a sale of the

patented invention) had been entered into more than a year before AS&E had filed its initial patent application.

The date of the contract/sale was all-important. Since the date was <u>prior</u> to the critical date of AS&E's patents, the sale was prior art. Thus, had the date of the contract been disclosed, the PTO would have realized that the invention had been on sale before the critical date and thus would not have allowed the patents.

AS&E's Reply did not dispute that it had withheld the date of the contract, thus removing the stated basis for its motion. Rather than withdraw the motion, however, AS&E shifted its ground. Ignoring its earlier concession that the withheld information was "material," the Reply argued that AS&E did not have to disclose the information. Specifically, it alleged that the sale was not material because the invention being sold was not then "ready for patenting." AS&E also asserted in the Reply another new ground for summary judgment, namely, that AS&E had had no "intent to deceive the PTO." (AS&E's Reply at 4).

AS&E should not have raised these new issues on this summary judgment motion, particularly at this stage in the discovery process. Whether the date of the contract (the Mobile CargoSearch Contract) was material and whether AS&E had an intent to deceive the PTO present substantial factual questions. AS&E, however, filed its motion <u>before</u> it had allowed L-3 to depose it on the subject of the prior art sale, and <u>before</u> L-3 has had an opportunity to take the depositions of the inventors and AS&E's patent attorneys. AS&E controls the facts concerning these issues. Summary judgment, before L-3 has discovery, would thus be grossly unfair to L-3.

2

866293.1

After trying for several months to schedule its first deposition in this case[1], L-3 was finally allowed to take AS&E's deposition on the subject of the Mobile CargoSearch Contract and the product that was to be delivered pursuant to that contract on February 17, 2005. That deposition revealed that the Mobile CargoSearch Contract <u>was</u> a pre-critical date commercial sale of a product that anticipated most of the claims of AS&E's patents.

In any event, as noted in the accompanying Rule 56(f) Declaration of Robert M. Abrahamsen, to present all available evidence on the "ready for patenting" and "intent" issues, L-3 requires the testimony of at least one, and perhaps both, of the inventors named on AS&E's patents, and also requires the testimony of the patent attorneys who prepared and prosecuted AS&E's patent applications. L-3 is filing this Surreply to address these newly-raised issues.

## **ARGUMENT**

**I.  AS&E COMMITTED INEQUITABLE CONDUCT BY NOT FULLY DISCLOSING THE MOBILE CARGOSEARCH CONTRACT.**

The parties agree that to prove inequitable conduct, L-3 must demonstrate at trial that AS&E (1) failed to disclose information material to patentability, and (2) did so with an intent to deceive or mislead the PTO. <u>Bruno Indep. Living Aids, Inc. v. Acorn Mobility Servs., Ltd.</u>, 394 F.3d 1348 (Fed. Cir. 2005) (<u>see</u> AS&E Reply at 4). AS&E, however, misapprehended L-3's burden of showing that particular information was "material," and that the patentee intentionally concealed that information. At the very least, AS&E has not shown the absence of questions of material fact.

---

[1] L-3 had attempted to take the 30(b)(6) deposition of AS&E in December. AS&E's counsel, however, asserted that it was too busy to prepare a witness and defend a deposition at that time.

3

866293.1

### A. The Date of the Mobile CargoSearch Contract Was Material to the Prosecution of the Patents-in-Suit.

The Federal Circuit has cited the PTO's Rule 56 (37 C.F.R. § 1.56(b) (2003)) as to what information is material: "[I]nformation is material to patentability when it . . . establishes, by itself or in combination with other information, a prima facie case of unpatentability of a claim . . . ." Dayco Prod., Inc. v. Total Containment, Inc., 329 F.3d 1358, 1364 (Fed. Cir. 2003).[2] Materiality is a question for the fact finder. Id. at 1362. The date of the Mobile CargoSearch Contract was material to the prosecution of the patents-in-suit because it revealed that the contract was a prior art sale of subject matter that rendered the claims of AS&E's patents invalid.

Several of the claims of the patents were anticipated (i.e., every limitation of the claim was met) by the purchased system. (Indeed, L-3 intends to file its own motion for partial summary judgment focusing on the invalidity of those claims under 35 U.S.C. §102(b)).[3] The date of the Mobile CargoSearch Contract was thus highly material to the prosecution of AS&E's patents because it would have established that the sale made by the contract was <u>invalidating</u> prior art to those claims.

---

[2] This statement of materiality is similar to the Federal Circuit's earlier test for materiality, namely, that information is material if "a reasonable examiner would have considered such prior art important in deciding whether to allow the parent application." Dayco Prod., Inc., 329 F.3d at 1363 (citations omitted); Ulead Systems, Inc. v. Lex Computer & Management Corp., 351 F.3d 1139, 1144-45 (Fed. Cir. 2003) (finding that the PTO rule does not "establish a different standard than our traditional standard for inequitable conduct.").

[3] AS&E's provisional patent application conceded this point by stating that "the design of a first **embodiment of the present invention** . . . is presented in the document attached . . . as Appendix 1." (D.I. 34 (AS&E App.), Ex. 3 at 3). That appendix included <u>nothing</u> <u>more</u> than selected excerpts from the Mobile CargoSearch Contract. AS&E thus believed the product to be delivered pursuant to the contract embodied the invention on which it was seeking patent protection.

4

### 1. The Mobile CargoSearch Contract Represents a Commercial Sale Made More Than One Year Before the Critical Date of the Patents.

The Federal Circuit found a contract virtually identical to the one involved here to be a prior offer for sale.  Zacharin v. United States, 213 F.3d 1366 (Fed. Cir. 2000) (finding "cost-plus-fixed-fee" contract with military was prior art offer for sale).[4] Accordingly, AS&E did not deny that the Mobile CargoSearch Contract represents a commercial sale made more than one year before the critical date of February 12, 1995.

### 2. The Mobile CargoSearch System Was "Ready for Patenting" Before the Critical Date of February 12, 1995.

`

The "ready for patenting" prong of the Pfaff test can be met "by proof that prior to the critical date the inventor had prepared drawings or other descriptions of the invention that were sufficiently specific to enable a person skilled in the art to practice the invention."  Pfaff, 525 U.S. at 67-68.

AS&E's Reply argued that the invention described in the Mobile CargoSearch Contract, was not ready for patenting as of the date of that contract.  The Mobile CargoSearch system was, however, indisputably ready for patenting as of the effective date of the contract, as demonstrated by the striking similarity between the drawings and specifications in the Mobile CargoSearch Contract and the patents-in-suit.

Indeed, in virtually every respect, the specifications and drawings in the Mobile CargoSearch Contract provide even more detail than the patents.  Thus, by themselves, those materials would have provided sufficient information to enable one of ordinary skill in the art to practice the invention.  See Pfaff, 525 U.S. at 312 ("In this case the second

---

[4] For a more detailed discussion of the similarities between Zacharin and the instant case, see L-3's Opp. at 8.

866293.1

condition of the on-sale bar is satisfied because the drawings Pfaff sent to the manufacturer before the critical date fully disclosed the invention.")

Notably, all but one of the drawings AS&E chose to include in its patent applications that issued as the patents-in-suit, ostensibly for the purpose of enabling one of ordinary skill in the art to practice the claimed invention, were virtually identical to the drawings that were included in the Mobile CargoSearch Contract.[5]  For ease of comparison, drawings from the Mobile CargoSearch Contract (Ex. 1) and the corresponding figures from AS&E's patents (D.I. 34 (AS&E App.), Exs. 1 and 2) are juxtaposed below:

**Mobile CargoSearch Contract Drawings**          **AS&E Patent Drawings**



---

[5] The only figure from the patents that was not included in the Mobile CargoSearch Contract is Fig. 2B.



FIG. 2A



FIG. 3

866293.1



The remarkable similarity between the technical drawings in the Mobile

CargoSearch Contract and those included in the patents is thus, standing alone, proves

866293.1

that the system was ready for patenting at least by October 19, 1994, the date of the contract.

In addition, it is evident that the patent attorneys who prepared the applications that became AS&E's patents borrowed much more than the drawings from the Mobile CargoSearch Contract. Both the "Background Art" and "Detailed Description of Specific Embodiments" portions of the patents (e.g., D.I. 34 (AS&E App.), Ex. 2 at columns 1 and 3-10) were copied almost verbatim from the text of the contract. (See Ex. 1 at 56, 57, 60, 63, 64, 66-68, 70, 73, 76, 78-82).

In any event, the Federal Circuit has clarified that the invention does not need to be ready for patenting contemporaneously with the sale; all that is required is that the invention must have been ready for patenting at some point in time in advance of the critical date of February 12, 1995. Robotic Vision Sys. v. View Eng'g, 249 F.3d 1307, 1313 (Fed. Cir. 2001) ("Completion of the invention prior to the critical date, pursuant to an offer to sell that invention, would validate what had been theretofore an inchoate, but not yet established bar.").

In the months between the signing of the contract and the critical date, AS&E had prepared further, painstakingly detailed drawings and specifications for the later patented system. Specifically, it had prepared and compiled a large volume of materials for the purpose of conducting a Preliminary Design Review with its customer on February 14, 1995.[6] (Ex. 2). Although the design review took place two days after the

---

[6] Although not included in the package of Ex. 2, also presented at the Preliminary Design Review were a number of "E-size" (i.e., 3-foot by 4-foot) engineering drawings that would have been provided even more detail concerning the design of the system. (Ex. 7 at 4, 7). Although requested, AS&E has not made these E-size drawings available for L-3's inspection.

9

866293.1

critical date of February 12, 1995, the materials for the review had been completed at least as early as January 27, 1995, the date on which AS&E personnel conducted a "dry run" of the presentation.[7] (Exs. 3-5; Ex. 6 at 2).

Notably, the Mobile CargoSearch Contract specifically contemplated that the materials prepared for the Preliminary Design Review would constitute a <u>completed</u> system specification:

> 1.3.2   <u>System Conceptual Design and Specification</u>
>
> AS&E will develop a system design specification.  This specification will establish the design criteria, operational requirements and performance characteristics for the system and sub-systems to be developed.  <u>The ***completed*** system specification will be the basis for the Preliminary Design Review (PDR)</u>….

(Ex. 1 at 86) (emphasis added).

Consistent with that understanding, the Preliminary Design Review materials indicated in no uncertain terms that the initial system specifications were "completed":

> **PROJECT TECHNICAL STATUS**
>
> **SYSTEM SPECIFICATIONS**
> - INITIAL VERSION *COMPLETED*

(Ex. 2 at 10) (italic emphasis added).

The Preliminary Design Review materials thus establish that AS&E had completed its initial design not just of the claimed invention, but of the <u>entire</u> system being sold, prior to the critical date of February 12, 1995.  Accordingly, "the inventor had

---

[7] The Preliminary Design Review was originally-scheduled for January 24, 1995, but to accommodate the Government's schedule was rescheduled for February 14, 1995. (Ex. 3; Ex. 6 at 2). AS&E's documents make clear that the materials included in the Preliminary Design Review packet (Ex. 2), as well as the E-size engineering drawings that were presented at the Preliminary Design Review (Ex. 7 at 4, 7), were prepared well in advance of presentation date, and most certainly prior to the critical date of February 12, 1995.

prepared drawings or other descriptions of the invention that were sufficiently specific to enable a person skilled in the art to practice the invention," Pfaff, 525 U.S. at 67-68, and the claimed invention was thus "ready for patenting" prior to the critical date.

     To summarize, inventions claimed in the patents-in-suit were sold in the Mobile CargoSearch Contract, more than one year prior to the effective filing date of those patents. In addition, the claimed Mobile CargoSearch system was certainly "ready for patenting" before the critical date. Had AS&E disclosed the date of the Mobile CargoSearch Contract, the examiner would have been presented with a prima facie case of unpatentability of claims of the patents.[8] Therefore, the first requirement to prove inequitable conduct has been satisfied.

---

[8] AS&E misapprehended the "prima facie case of unpatentability" test in its Reply. AS&E claims that because "L-3 has not provided claim charts and the detailed analysis necessary to show whether the contract at issue disclosed embodiments meeting each and every limitation of the claims," summary judgment should be granted in AS&E's favor. (AS&E Reply at 3). To prove inequitable conduct, however, L-3 does not have to show the claims are actually invalid, only that there would have been a prima facie case of invalidity before the examiner if the applicant had apprised the examiner of the execution date of the Mobile CargoSearch Contract. HCC, Inc. v. R H & M Mach. Co., 39 F. Supp. 2d 317, 322 (S.D.N.Y. 1999) (recognizing distinction between doctrines of invalidity based on anticipation and unenforceability based on inequitable conduct; further stating patent could be "not invalid" yet "unenforceable" for inequitable conduct). Inequitable conduct does not require invalidity. E.g., LI Second Family Ltd. Partnership, v. Toshiba Corp., 231 F.3d 1373, 1380 (Fed. Cir. 2000) ("Information concealed from the PTO may be material even though it would not invalidate the patent").

**B.     AS&E Intentionally Deceived the PTO.**

AS&E intentionally deceived the PTO by purposely not disclosing the effective date of the Mobile CargoSearch Contract, while disclosing other details about the contract that would lead the examiner to believe the contract was not a prior sale. Intent, like materiality, presents a question of fact. Dayco Prod., 329 F.3d at 1362. "When balanced against high materiality, the showing of intent can be proportionally less." Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp., 267 F.3d 1370, 1381 (Fed. Cir. 2001) (affirming district finding of inequitable conduct based on failure to disclose material offer for sale). The "concealment of sales information can be particularly egregious because . . . the examiner has no way of securing the information on his own." Paragon Podiatry Lab., Inc. v. KLM Labs., Inc., 984 F.2d 1182, 1193 (Fed. Cir. 1993). Under these standards, at a minimum a question of material fact exists at to whether AS&E intentionally deceived the PTO during the prosecution of the patents-in-suit by not disclosing the effective date of the Mobile CargoSearch Contract.

---

AS&E further conflated the two doctrines by stating that "[e]ach claim of each patent stands on its own and remains valid and **enforceable** independent of the other claims." (AS&E's Reply at 3) (emphasis added). That position was expressly rejected by the Federal Circuit 17 years ago: "When a court has finally determined that inequitable conduct occurred in relation to one or more claims during prosecution of the patent application, **the entire patent is rendered unenforceable**." Kingsdown Medical Consultants, Ltd. v. Hollister Inc., 863 F.2d 867, 877 (Fed. Cir. 1988) (emphasis added); see also Baxter Intern., Inc. v. McGaw, Inc., 149 F.3d 1321, 1332 (Fed. Cir. 1998) ("It is also **settled law** that inequitable conduct with respect to one claim renders the entire patent unenforceable.") (emphasis added). Indeed, inequitable conduct in one patent could cause related patents to be unenforceable. Fox Industries, Inc. v. Structural Preservation Systems, Inc., 922 F.2d 801, 804 (Fed. Cir. 1990) ("a breach of the duty of candor . . . may render unenforceable all claims which eventually issue from the same **or a related application**.") (emphasis added).

An evaluation of "intent to deceive" in connection with an inequitable conduct defense "is *rarely* enabled in summary proceedings." Paragon, 984 F.2d at 1190 (quoting KangaROOS U.S.A., Inc. v. Caldor, Inc. 778 F.2d 1571, 1577 (Fed. Cir. 1985)). In Paragon the Federal Circuit affirmed a grant of summary judgment <u>in favor of the party asserting the defense</u> on facts remarkably similar to those presented here. 984 F.2d at 1192-93 ("Absent explanation, the evidence of a knowing failure to disclose sales that bear all the earmarks of commercialization reasonably supports an inference that the inventor's attorney intended to mislead the PTO").

Like in Paragon, the materiality of the information at issue in this case was the sale of an admitted embodiment of the claimed invention. Therefore, L-3 does not have to show a threshold intent to deceive. AS&E, however, offered no declarations to support a finding that the failure to disclose the date or the Mobile CargoSearch Contract to the PTO was an error made in good faith.

Instead, AS&E responded, mistakenly, that it had disclosed that the contract "was first proposed in January 1994." (AS&E's Reply at 4). The portion of the provisional application to which AS&E appears to have been referring reads:

> Initially, laboratory-based test images obtained using CargoSearch technology, the only ones available when Mobile CargoSearch was proposed in January, 1994 – indicated that its major benefit would result from the backscatter images.

(D.I. 34 (AS&E App.), Appendix 3 of Ex. 3 at 4). That statement, however, did not reveal that a commercial sale had occurred in October 1994.

The application did not state that what had been "proposed" would have risen to the level of a "commercial offer for sale" in the commercial contracts sense. Group One, Ltd. v. Hallmark Cards, Inc., 254 F.3d 1041, 1048 (Fed. Cir. 2001) ("Only an offer

13

866293.1

which rises to the level of a commercial offer for sale, one which the other party could make into a binding contract by simple acceptance (assuming consideration), constitutes an offer for sale under §102(b)").

Instead, the examiner was misleadingly told that "AS&E has only recently completed a truck-mounted, mobile implementation of the CargoSearch technology…," and that the system was "scheduled to be delivered … in December 1995" (10 months after the critical date). (See D.I. 34 (AS&E's App.), Appendix 3 of Ex. 3 at 4). These partial disclosures misleadingly suggested that all activity regarding the contract (including its formation) took place after the critical date – i.e., within a year of the filing of the application. These disclosures, together with the high level of materiality of the subject matter of Mobile CargoSearch Contract, at a minimum present a question of material fact as to whether AS&E had an intent to deceive the PTO when it withheld information that would have informed the patent examiner that the product it had sold pursuant to the Mobile CargoSearch Contract was prior art.

## II.    L-3 IS ENTITLED TO FURTHER DISCOVERY ON THE ISSUES PRESENTED BY AS&E'S MOTION.

The evidence presented above shows that questions of material fact exist as to when the Mobile CargoSearch system was "ready for patenting" (see I,A,2, supra) and whether AS&E had a deceptive intent when failing to disclose the effective date of the contract (see I,B, supra). Accordingly, AS&E's request for summary judgment should be denied.

14

If, however, the Court were inclined to give any further consideration to AS&E's motion, L-3 would request an opportunity to complete its discovery on the issues presented.

L-3 only recently (on February 17, 2005) was allowed to take its first deposition of AS&E in this case. (L-3 had originally noticed the deposition for October 6, 2004, but due to AS&E's refusal to appear, L-3 was only recently permitted to examine its first witness). At the deposition, AS&E revealed that the named inventors were no longer AS&E employees, and that no one at AS&E who was substantively involved in the Mobile CargoSearch product development or initial patent application process is still at the company. Several key questions thus went unanswered at the deposition.

L-3 has since issued a deposition subpoena to the lead inventor named on AS&E's patents, Roderick Swift, for testimony that will likely bear on the "materiality" and "intent" issues.[9] In addition, L-3 has subpoenaed the patent attorneys responsible for preparing and prosecuting AS&E's patents, and expects to take their depositions on March 23-24.

The evidence L-3 expects to elicit through those depositions is discussed in the Declaration of Robert M. Abrahamsen in Support of Further Discovery Pursuant to Fed. R. Civ. P. 56(f) filed herewith. As that Declaration demonstrates, there is reason to believe that material information bearing on AS&E's motion will be discovered.

---

[9] L-3 has thus far been unable to locate the other named inventor, Andrew Tybinkowski, but intends to take his deposition as well once his whereabouts are discovered.

15

866293.1

## **CONCLUSION**

For the above reasons, AS&E's motion should be **denied**. In the alternative, L-3 should be given an opportunity to finish discovery concerning the issues raised by L-3's inequitable conduct defenses.

Respectfully submitted,

L-3 COMMUNICATIONS SECURITY AND
DETECTION SYSTEMS CORPORATION
DELAWARE

Dated: March 1, 2005
/s/ James J. Foster
James J, Foster, BBO #553285
Michael A. Albert, BBO #558566
Robert M. Abrahamsen, BBO #636635
John L. Strand, BBO #654985
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, Massachusetts 02210
Tel.: 617.646.8000
Fax: 617.646.8646
JFoster@wolfgreenfield.com

866293.1