UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| L-3 COMMUNICATIONS SECURITY AND DETECTION SYSTEMS CORPORATION DELAWARE<br><br>　　　　Plaintiff and Counter-defendant<br><br>　　v.<br><br>AMERICAN SCIENCE & ENGINEERING, INC.<br><br>　　　　Defendant and Counterclaimant | Civil Action No. 04-10339-RWZ |

**AS&E'S MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION TO STAY LITIGATION PENDING CONCLUSION OF REISSUE
PROCEEDINGS IN THE PATENT AND TRADEMARK OFFICE**

This Court has before it two sets of pending motions for summary judgment concerning allegations by L-3 Communications Security And Detection Systems Corp. ("L-3") that (1) the patents-in-suit are unenforceable due to AS&E's alleged inequitable conduct and (2) certain claims of the '623 patent are invalid under the "on sale bar." *See* Court Docket Entries Nos. 31-34 and 61-63.  During the briefing of those motions, L-3 demanded that AS&E bring the central question posed in the motions to the attention of the United States Patent and Trademark Office ("PTO") for consideration during its examination of a related patent.  L-3's demand stems from its stated belief that the PTO's examination of that related patent could "directly affect the enforceability of at least one of the two patents-in-suit."  See **Exh. A**, E-mail from L-3's counsel to AS&E's counsel, dated March 18, 2005.

In response to L-3's demand, AS&E submitted to the PTO documents at the heart of the pending motions for summary judgment so that the PTO could determine their affect, if any, on

the related patent. Because the related patent is one of a family of patents for mobile inspection systems--a family that includes the patents-in-suit--AS&E respectfully requests that the Court stay these proceedings so that it may benefit from the PTO's expert assessment of the evidence underlying L-3's inequitable conduct and on-sale bar claims, and thus the central issues in the summary judgment motions.

## BACKGROUND FACTS

In this litigation**,** L-3 seeks declarations that two AS&E patents, U.S. Pat. No. 6,292,533 ("the '533 patent") and U.S. Pat. No. 5,903,623 ("the '623 patent") (together, "the patents in suit") are invalid or unenforceable. Both patents are directed to mobile x-ray inspection systems used for inspecting large cargo containers at, for example, seaports and border crossings. L-3, AS&E's competitor in the x-ray inspection business, alleges that AS&E committed inequitable conduct by failing to disclose an alleged prior art sale to the PTO during prosecution of the patents-in-suit. In particular, L-3 alleges that AS&E intentionally failed to disclose a government contract for the development of a prototype mobile x-ray inspection technology, then known as the "Mobile CargoSearch" system.

The patents-in-suit are two among a family of related patents, which also includes U.S. Patent No. 6,252,929 ("the '929 patent"). On August 28, 2002, AS&E filed an application for the reissue of '929 patent ("the '993 application") under 35 U.S.C. § 251.[1]  The reissue

---

[1] In a reissue proceeding, the PTO reconsiders the validity of the subject patent on any ground that can be considered during the original examination of a patent application. 37 C.F.R. § 1.176. At the conclusion of reissue proceedings, if the patent is found to be valid, the PTO "shall, on the surrender of such patent and the payment of the fee required by law, reissue the patent… for the unexpired part of the term of the original patent." 35 U.S.C. § 251.

proceeding is underway and was near its conclusion when L-3 demanded that AS&E withdraw the application from reissue and request continued examination of the '993 reissue application. **Exh. B**, Letter from L-3's counsel to AS&E's patent counsel, dated March 21, 2005.  L-3 further requested that AS&E submit to the PTO the relevant summary judgment motion papers and other pleadings from this litigation.  *Id*.

Even though the '929 patent is not in suit, it has captured the attention of L-3, which considers the reissue proceedings inextricably linked to its inequitable conduct and on-sale bar claims in this litigation.  Specifically, L-3 told AS&E that any "inequitable conduct committed [by AS&E] in connection with the '929 patent could … directly affect the enforceability of at least one of the two patents-in-suit."  **Exh. A,** E-mail from L-3's counsel, dated March 18, 2005.

Further**,** L-3 believes that the PTO's continued examination of the '929 patent (*i.e*., the '993 reissue application) must include a consideration of the alleged prior art sale (as allegedly evidenced in the government contract for development of the Mobile CargoSearch system) at the center of L-3's inequitable conduct and on-sale bar claims.  **Exh. B,** Letter from L-3's counsel, dated March 21, 2005.

Thus, on March 29, 2005, AS&E filed in the PTO a Request for Continued Examination (RCE), just as L-3 had demanded.  *See* **Exh. C**.  Submitted with that RCE was an Information Disclosure Statement ("IDS") listing an several documents that L-3 believes touch on the issues currently pending before the Court.  *Id*.[2]  The listed documents were all filed with the RCE and

---

[2] An Information Disclosure Statement ("IDS") is a filing by which a patent applicant can bring to the attention of the PTO examiner any prior art or other material it wishes considered during the examination of the patent.  37 C.F.R. § 1.97.  In this case, AS&E included in its IDS all of the documents that L-3 considers pertinent to the central dispute in this case, including the summary judgment papers, the government contract at issue, and related exhibits and pleadings.

accompanying IDS. For instance, AS&E submitted all the briefs filed in connection with L-3's motion for partial summary judgment. In addition, AS&E submitted to the PTO certain documents that were attached as exhibits to the pending motions and which L-3 contends evidence an on-sale bar. *Id*.

The PTO has now withdrawn the reissue application from issue, as L-3 demanded and AS&E requested, so that the PTO examiner may consider the submitted materials and their effect on the pending application. **See Exh. D** (file history for the '993 application indicating that the PTO's consideration of the IDS is underway as of March 31, 2005).

Thus, as argued below, AS&E believes that the Court should stay this litigation until the completion of the continued examination of the reissue application. Such a stay is the natural next step following L-3's contention that continued examination of the '993 application (and hence the related '929 patent) could "directly affect the enforceability of at least one of the two patents-in-suit," and thus, more clearly define, and perhaps resolve, contentions at the heart of this litigation. **Exh. A,** E-mail from L-3's counsel, dated March 18, 2005. Indeed, L-3 threatened that if AS&E failed to bring the issues to the attention of the PTO, L-3 would cite its demand against AS&E "as evidence of inequitable conduct." **Exh. B**, Letter from L-3's counsel.

Thus, AS&E had no choice but to withdraw the pending reissue application from issue and request continued examination. AS&E should not be penalized for acceding to L-3's demand by being forced to litigate the inequitable conduct and on-sale bar issues on two fronts. AS&E should be allowed to take up the matter with the PTO before resuming this litigation.

4

**ARGUMENT**

A district court should stay litigation if a stay will promote judicial economy and efficiency. *L.E.A. Dynatech, Inc. v. F. Allina*, 49 F.3d 1527, 1530 (Fed.Cir. 1995) (noting a district court's inherent power to manage its docket). Stays are particularly beneficial in patent litigation when the Court and a PTO examiner are simultaneously considering prior art references that may bear upon the patents-in-suit. *GPAC, Inc. v. D.W.W. Enterprises, Inc.*, 144 F.R.D. 60, 63 (D.N.J. 1992) (granting a stay and noting that the PTO, not the court, is in the best position to evaluate the implications of disputed prior art).

Indeed, district courts have endorsed a "liberal policy" in favor of staying patent litigation pending the outcome of PTO reissue proceedings. *See, e.g., ASCII Corp. v. STD Entertainment USA, Inc.*, 844 F.Supp. 1378, 1380 (N.D.Cal 1984) (granting stay so that reissue proceedings could assist the court and parties in resolving disputed issues); *accord, Clintec Nutrition Co. v. Abbott Laboratories*, No. 94-C-3152, 1995 WL 228988, at *3 (N.D.Ill., April 14, 1995) (to avoid duplicated efforts, granting stay while PTO considered reissue application); *Fisher Controls Co. v. Control Components, Inc.*, 443 F.Supp. 581, 582 (S.D. Iowa 1977) (granting stay while PTO considered additional prior art submitted with reissue application).

Courts consider the following three factors when deciding whether to stay litigation pending the outcome of reissue proceedings: (1) whether a stay will result in a simplification of the disputed issues; (2) whether discovery has been completed and a trial date set; and, (3) whether a stay will cause undo prejudice to the nonmoving party. *Clintec Nutrition Co.*, 1995 WL 228988, at *1. In these proceedings, all three factors favor a stay.

### A    A Stay Will Narrow the Disputed Issues by Providing the Parties and the Court with the PTO's Assessment of the Alleged Prior Art Sale

The PTO will now consider whether the alleged prior art sale of the prototype Mobile CargoSearch System will "affect the enforceability of at least one of the two patents-in-suit," as L-3 alleges. These proceedings should be stayed until AS&E and this Court learn the PTO's determination. Indeed, a stay will freeze these proceedings until the PTO provides an expert assessment of what, if anything, is disclosed by the items L-3 demanded AS&E submit to the PTO. It may be that the PTO will agree with L-3 that the submitted materials are evidence of inequitable conduct and an on-sale bar. It may be that the PTO will find the items immaterial. Or it may be that the PTO will find that the patented inventions were not on sale prior to the critical date. <u>These are the central questions in this litigation--the ones that the parties have spent all of their litigation efforts on to date</u>. Thus, the results of the reissue proceedings will greatly simplify and narrow the issues now under consideration by the Court. *See Clintec Nutrition Co.*, 1995 WL 228988, at *6 (granting a stay during reissue proceedings to allow the PTO to express its "expert opinion as to prior art" at the heart of a party's inequitable conduct claims).

### B.    A Stay Is Appropriate Because Discovery Has Not Been Completed and a Trial Date Has Not Been Set

The journey to trial, although underway, is far from over. The parties are months away from the close of fact and expert discovery. A trial date has not been set. In such situations, a stay is appropriate to allow for the completion of reissue proceedings. *See Fisher Controls*, 443 F.Supp. at 583. Indeed, so beneficial is a stay pending the completion of reissue proceedings, it is not uncommon for a court to stay late-stage litigation while the PTO considers issues at the heart of the parties' claims and defenses. *See, e.g., Loffland Bros. Co. v. Mid-Western Energy*

6

*Corp.*, No. 83-2255-E, 1985 WL 1483, at *2 (W.D. Okla. Jan. 3, 1985) (granting a stay after considerable discovery had been completed, the pretrial conference held, and the trial date set).

Here, the PTO's reissue proceedings are likely to have a substantial positive affect on the remaining discovery conducted in this litigation. L-3 itself contends that prosecution of the "929 patent (and the '993 reissue application) will narrow the parties' disputed issues. *See* **Exh. A**, E-mail from L-3's counsel. Thus, the reissue proceedings will lessen the need for further discovery and more clearly define the areas in which expert evidence, if any, will be required.

### C. A Stay Will Not Prejudice L-3 Nor Give A Tactical Advantage To Either Side

L-3 cannot seriously argue that a stay will prejudice its ability to pursue its claims against AS&E. After all, L-3 itself demanded that AS&E bring evidence of the alleged inequitable conduct and on-sale bar to the attention of the PTO. *See* **Exh. B**. In all fairness, given its demand, L-3 must now allow the PTO proceedings to run their course before this litigation moves forward. A stay in these proceedings works a tactical advantage for neither side, and should be granted.

## CONCLUSION

For all of the foregoing reasons, AS&E respectfully requests that this Court grant AS&E's Motion To Stay The Proceedings.

Dated: April 6, 2005

AMERICAN SCIENCE AND
ENGINEERING, INC.

*By its attorneys*,


/s/ Erik P. Belt
Erik Paul Belt, BBO # 558620
John F. Ward, BBO # 646689
BROMBERG & SUNSTEIN LLP
125 Summer Street
Boston, Massachusetts 02110
Tel: (617) 443-9292
Facsimile: (617) 443-0004
ebelt@bronsum.com

01945/00511  374762