IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| L-3 COMMUNICATIONS SECURITY AND DETECTION SYSTEMS CORPORATION DELAWARE,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN SCIENCE & ENGINEERING, INC.,<br><br>Defendant. | CIVIL ACTION NO. 04-10339-RWZ |

## L-3'S OPPOSITION TO AS&E'S MOTION TO STAY

AS&E has asked the Court to do something that no other court has done before, namely, to stay this action because AS&E currently has pending in the Patent Office a reissue proceeding for a patent that is not involved in this lawsuit, United States Patent No. 6,252,929 ("the '929 patent"). L-3 opposes the motion for the following reasons:

1) the '929 patent, which is the subject of the reissue proceeding, is not involved in this action;

2) the outcome of that reissue proceeding in the Patent Office will not determine any issue in this action;

3) L-3 is not a party to the reissue; and

4) the stay would accomplish nothing other than delay, and would seriously prejudice L-3.

L-3 brought this action in February 2004 asking for a declaratory judgment that, among other things, AS&E's United States Patent Nos. 6,292,533 ("the '533 patent")

and 5,903,623 ("the '623 patent") (collectively, "the patents in suit") are invalid and unenforceable.  This case is quite far along.  Considerable discovery on these issues has taken place.  Presently pending before the Court are L-3's motion for summary judgment declaring that certain claims of the '623 patent were anticipated by the subject of an Army Contract, and AS&E's motion for summary judgment of no inequitable conduct with respect to that Army Contract.  A status conference will be held May 4th at 2 PM.  The motion to stay should be denied.

1.

A reissue proceeding is begun when a patent owner files an application with the Patent Office to "reissue" an existing "original" patent, that is, to issue the patent again, but with altered claims or with new claims that, through error, had not been included in the original patent. 35 U.S.C. § 251.  (In the case of the '929 patent reissue, AS&E has simply added new claims to the claims in the original patent.)  During the course of reissue proceedings, the claims of the original patent may be changed, either at the request of the patent owner, or at the insistence of the examiner.

Because changes in the claims of the original patent could affect pending litigation based on those claims, courts are sometimes asked to stay infringement suits when the patent <u>involved in the suit</u> is the patent that is the subject of the reissue

proceeding. Here, however, the reissue proceeding involves a patent <u>not involved in this action</u>.[1]

Whatever the examiner does in the reissue proceeding will thus have no effect on the claims of the patents in this action. If any changes are made in the original claims of the '929 patent (none have been so far), those changes would be irrelevant to this case since the claims of the '929 are not in this case. Even if the examiner voided all the original claims of the '929 patent, that action would affect only the '929 patent. It would not remove the presumption of validity for the claims of the patents involved in this action. <u>See</u> 35 U.S.C. §282.

In the memorandum in support of its motion, AS&E cited three instances[2] where a court had stayed an action because a reissue proceeding was pending. In <u>every</u> case AS&E cited, however, the patent that was the subject of the reissue proceeding was also the patent that was the subject of the action. The courts issued a stay because the claims being asserted in the action might have been altered in the reissue proceeding. L-3 is aware of no cases in which a stay was granted because a reissue application was pending for a patent that was not involved in the lawsuit.

---

[1] AS&E inaccurately asserted (AS&E Mem. at 1) that L-3 had "stated [a] belief that the PTO's examination of [the pending reissue application] could 'directly affect the enforceability of at least one of the two patents-in-suit.'" L-3 stated no such thing. In the referenced e-mail (D.I. 72, Ex. A), L-3 had merely asserted that inequitable conduct committed during the prosecution of the <u>original</u> '929 patent could directly affect the enforceability of the '533 patent (one of the patents-in-suit) because it preceded the '533 patent in the priority chain. <u>See</u> <u>Consolidated Aluminum Corp. v. Foseco Intn'l Ltd.</u>, 910 F.2d 804, 812 (Fed. Cir. 1990). The outcome of the pending reissue proceeding would have no bearing on the issues presented in this action.

[2] <u>ASCII Corp. v. STD Entertainment USA, Inc.</u>, 844 F.Supp 1378 (N.D.Cal. 1984); <u>Clintec Nutrution Co. v. Abbott Laboratories</u>, 1995 WL 228988 (N.D.Ill. 1995); <u>Fisher Controls Co. v. Control Components, Inc.</u>, 443 F.Supp. 581 (S.D.Iowa 1977).

885711.1

<u>2</u>.

AS&E argued (AS&E Mem. at 6) that "the results of the reissue proceedings will greatly simplify and narrow the issues now under consideration by the Court." AS&E seemed to be suggesting that the patent examiner would decide whether the subject of the Army Contract is prior art to the patents in suit. The examiner, however, will not evaluate the patentability of the claims of the patents in suit, since they are not a part of the reissue proceeding. Thus, the Patent Office will not address whether the claims at issue in this action were anticipated by the subject of the sale, or would have been obvious in view of the addition of that subject matter to the prior art. That is simply not the issue before the patent examiner.

Nor will the examiner deal with the inequitable conduct issue. The Patent Office does not investigate, or issue rejections based on, allegations of inequitable conduct (<u>see</u> Manual of Patent Examining Procedure (MPEP) §§1448, 2010 (copy attached as Exhibit A)). It will thus not address whether AS&E committed inequitable conduct during the procurement of the patents in suit. (<u>Id</u>.) For that matter, it will not even address whether there was inequitable conduct in connection with the '929 patent. (<u>Id</u>.)

A reissue proceeding is *ex parte*. Only the patent owner and the patent examiner are involved. L-3 has no standing in the proceeding and would not be allowed to participate in any meaningful way. Nor would L-3 have standing to appeal the result. AS&E is asking for a stay because it would apparently prefer not to have the Court make the initial consideration of whether the Army Contract is prior art. Rather, AS&E would prefer the first consideration of that issue to be made in such an *ex parte*

4

885711.1

proceeding, where AS&E could characterize evidence and events without the constraint of an adversary.[3]

Diverting the issue to the Patent Office, however, would be pointless here. Whatever the examiner does in the reissue proceeding would have no binding effect here. The examiner's actions, if favorable to AS&E, would not be binding on L-3, even as to the '929 patent itself. Moreover, AS&E has not itself agreed to be bound in this action by any decision the examiner should make in the reissue proceeding. Further, since the '929 patent is not involved in this action, any action by the examiner would not even be admissible at the trial of this action.

An examiner's decision to allow claims in the reissue proceeding would be unappealable, and thus would not be subjected to any form of scrutiny or secondary review unless and until the validity of the reissued patent was later litigated in a court proceeding. Accordingly, an allowance by the examiner would establish neither facts nor binding precedent to which the parties to this litigation or the Court would be bound, even as to the reissued patent, and would leave the parties in the exact same position they are in presently. By contrast, the examiner's decision to reject claims of the

---

[3] As an example of how *ex parte* proceedings invite mischaracterizations, the information disclosure statement (IDS) AS&E recently filed in the reissue proceeding (D.I. 72, Ex. C) contained several inaccurate and potentially misleading statements with respect to the nature of the Army Contract. For instance, on page 5, it stated that "…a development effort, rather than a deliverable product, is specified…" Similarly, on page 6, it stated that "the contract was … not for the procurement of a product." The Army Contract, however, indicated that "a fully-operational, prototype Mobile CARGOSEARCH system intended for the non-intrusive x-ray inspection of vehicles in cargo containers, substantially as described in Volume 1, Part B, Section 3 of this proposal, <u>will be delivered</u> at the conclusion of the proposed program." (D.I. 60, Ex. 1 at 89) (emphasis added). Because the reissue proceeding is *ex parte*, however, L-3 is precluded from directly bringing these misstatements to the examiner's attention.

885711.1

reissue proceeding could be appealed both within the Patent Office and from the Patent Office to the courts, but only by AS&E. Further, as noted above, since the appeal would relate only to the claims of the '929 patent, whatever the appellate opinion held as to the allowance or rejection of claims of the '929 patent would not govern the claims of the patents in this suit. Thus, the results of the reissue proceeding, no matter what they are, will have absolutely no bearing on the issues presented in this case.

In addition, whatever action the examiner takes should not influence the proceedings here because the procedures in this Court differ sharply from those in the Patent Office. In this Court, the proceeding is adversarial and the parties can present live testimony from witnesses subject to cross-examination. In a reissue proceeding, the Patent Office will not hear live testimony and there is, of course, no cross-examination.[4]

### 3.

The prior art issue has been fully briefed, and is now ripe for the Court's decision. A prompt decision will expedite resolution of this lengthy dispute.[5]

By contrast, a stay of this action would cause serious delay and prejudice to L-3. As discussed above, the result of the reissue proceeding would not have any effect on

---

[4] The issue before the Court, whether a pre-critical date offer for sale had been made, is not technology based, but one of law. The Patent Examiner, if he even considered the issue, would bring no special expertise to bear.

[5] L-3 was first subjected to a drawn-out suit AS&E brought on the first of this family of patents (U.S. Pat. No. 5,764,683), see American Science & Engineering, Inc. v. EG&G Astrophysics Research Corp., Civil Action No. 98-11939-GAO (D. Mass.), and was subsequently forced to bring the current suit to clear the air of AS&E's repeated threats to assert the others. Had AS&E simply complied with its duty of good faith and candor and informed the patent examiner of its pre-critical date commercial activity before any of its patents had issued, L-3 might have been spared the hassle and expense of litigating any of them, as it is unlikely that any of them would have been allowed.

885711.1

the ultimate trial of the issues in this case.  A decision adverse to AS&E in the reissue proceeding could be appealed to the Board of Patent Appeals and Interferences and subsequently to the Court of Appeals for the Federal Circuit, a procedure which is notoriously slow and would likely not result in a final decision for several years.

The purposes of the Declaratory Judgment Act would not be well served by forcing L-3 to await a decision by an administrative agency that would have no binding effect on either party or the Court, particularly when both parties have already expended substantial resources in fully investigating and briefing the issue for resolution <u>by the Court</u>.  Until a decision on the merits is reached <u>by the Court</u>, L-3 will continue to be "restricted to an *in terrorem* choice between the incurrence of a growing potential liability for patent infringement and abandonment of [its] enterprise[]."  <u>Arrowhead Industrial Water, Inc. v. Ecolochem, Inc.</u>, 846 F.2d 731, 735 (Fed. Cir. 1988).  A stay would thus not help in the slightest to <u>resolve</u> this matter; it would serve only to <u>delay</u> it.

## **CONCLUSION**

For the above reasons, the motion to stay should be denied.


Respectfully submitted,

885711.1

                    L-3 COMMUNICATIONS SECURITY AND DETECTION SYSTEMS CORPORATION DELAWARE

Dated: April 20, 2005      /s/ James J. Foster
James J, Foster, BBO #553285
Michael A. Albert, BBO #558566
Robert M. Abrahamsen, BBO #636635
John L. Strand, BBO #654985
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, Massachusetts 02210
Tel.: 617.646.8000
Fax: 617.646.8646
jfoster@wolfgreenfield.com

885711.1