UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| L-3 COMMUNICATIONS SECURITY AND DETECTION SYSTEMS CORPORATION DELAWARE<br><br>    Plaintiff and Counter-defendant<br><br>    v.<br><br>AMERICAN SCIENCE & ENGINEERING, INC.<br><br>    Defendant and Counterclaimant | Civil Action No. 04-10339-RWZ |

### AS&E and BROMBERG & SUNSTEIN LLP'S JOINT OPPOSITION TO L-3's MOTION TO COMPEL ATTORNEY-CLIENT PRIVILEGED DOCUMENTS

L-3 Communications Security and Detection Systems ("L-3") has requested, and American Science & Engineering, Inc. ("AS&E") has produced, ample discovery on the two pressing issues in this case: whether a 1994 technical proposal and government contract constitute an on-sale bar to the patents-in-suit and whether AS&E committed inequitable conduct in allegedly failing to disclose those materials to the United States Patent & Trademark Office ("PTO") during prosecution of the patents. The parties extensively argued these issues, submitting to this Court hundreds of pages of summary judgment briefs, evidentiary documents, and testimony. Essentially admitting that it has failed to prove its case, and desperate to find a any evidence of inequitable conduct (there is none), L-3 now seeks documents shielded from discovery by the attorney-client privilege. L-3 also seeks documents that are irrelevant to the on-sale bar and inequitable conduct issues, as explained below. Because, in the first instance, the documents are privileged, and, in the second instance, are immaterial, this Court should deny L-3's motion to compel.

## BACKGROUND FACTS

L-3, AS&E's competitor in developing x-ray inspection equipment, seeks declarations that two AS&E patents, U.S. Pat. No. 6,292,533 ("the '533 patent") and U.S. Pat. No. 5,903,623 ("the '623 patent") are invalid or unenforceable. The '533 and '623 patents are directed to mobile x-ray inspection systems used for inspecting large cargo containers at, for example, seaports and border crossings. In 1994, AS&E proposed to research, develop, and build a prototype mobile x-ray inspection system and eventually signed a contract with the U.S. Army to do so. L-3 alleges that AS&E committed inequitable conduct by failing to disclose the Army contract (labeled DAAB10-95-C-0001) for the development of a prototype system, then known as the "Mobile CargoSearch" system.

During the winter and spring of 2005, the parties extensively briefed L-3's allegations in cross-motions for summary judgment. *See, e.*g., Court Docket Entries 31-33, 45, 46, 49, 55, 61-69, 77, 79-81 and 83. This Court heard argument on the cross-motions on June 15, 2005. The motions were supported by ample discovery.

The documents that L-3 now seeks by its motion to compel are all privileged. L-3 complains that it needs the requested privileged documents not for their own sake but simply to refresh the recollections of Attorneys Sunstein and Petuchowski. L-3's complaint has at least two flaws, however. First, contrary to L-3's mischaracterization of the deposition testimony, Attorneys Sunstein and Petuchowski recalled the material details of their prosecution efforts. They did not need any memories refreshed as to the pressing issues surrounding the 1994 proposal and contract. Indeed, as detailed below, both attorneys testified emphatically that they appropriately considered the on-sale bar issue when prosecuting the patents. The alleged lack of memory concerns issues that are immaterial to the central disputes. For example, L-3 wanted to

know the exact date that AS&E became a client of Bromberg & Sunstein LLP. *See* **Exh. 1,** Deposition of Bruce D. Sunstein ("Sunstein depo") at 17. But such questions hardly shed light on the two central questions and do not require the production of privileged documents.

Second, as detailed below, many of the requested documents relate to patents that are not asserted in this litigation and are thus not material. In other words, these documents could not possibly be used to refresh recollections as to prosecution of the '533 and '623 patents. For example, twelve of the fifteen challenged documents listed on the privilege log relate to U.S. Patent No. 5,764,683 ("the '683 patent"), which not only is not asserted in this litigation but is also the subject of a settlement agreement between the parties. Other requested documents relate to U.S. Patent No. 6,252,929 ("the '929 patent"), which is also not asserted in this litigation.[1]

### A. Bromberg & Sunstein Produced All Relevant, Non-Privileged Documents

AS&E and its attorneys, Bromberg & Sunstein LLP, have produced to L-3 ample discovery relating to these issues and have not withheld any relevant, non-privileged documents or testimony. More specifically, to build its case, L-3 requested production of the technical proposal and contract documents, other documents pertaining to the research and development of Mobile CargoSearch, and the prosecution files for the patents stemming from AS&E's research and development efforts, including the '533 and '623 patents. In response, AS&E produced approximately fifty boxes of documents.

---

[1] L-3 does not seek a declaration that the '929 patent is invalid or not infringed. If, however, L-3 continues to insist that the '929 patent is somehow relevant to whether AS&E committed inequitable conduct in obtaining the '533 and '623 patent, then this Court should stay this litigation until the PTO has passed judgment on the '929 patent, which is currently in reissue proceedings at L-3's urging. AS&E requested such a stay in a motion filed in April 2005 (*See* D.N. 71), which this Court denied. But L-3's continued insistence on documents relating to the '929 patent suggest that this Court should reconsider the stay.

L-3 then subpoenaed AS&E's patent counsel, Bromberg & Sunstein LLP. In response to L-3's subpoenas, Bromberg & Sunstein produced approximately 2,253 pages of documents and provided a privilege log, which Bromberg & Sunstein supplemented on two occasions. In particular, Bromberg & Sunstein produced not just the patent prosecution files for the '533 and '623 patents, but also the files for two other AS&E patents--the '683 and '929 patents--even though those patents are not implicated in this case.

In addition to its voluminous document requests, L-3 also noticed and deposed seven witnesses. Specifically, L-3 deposed AS&E's Rule 30(b)(6) witness, Dr. Calerame, and focused its inquiry on the technical proposal and contract. Dr. Calerame's testimony relevant to the on-sale bar and inequitable conduct issues is replayed in the summary judgment motions. L-3 also deposed the lead inventor of the '533 and '623 patents, Dr. Swift, but could uncover no evidence whatsoever of inequitable conduct. For example, there was no evidence of intent to mislead the PTO. No evidence that Dr. Swift withheld the Army contract. Indeed, L-3 hardly cites to Dr. Swift's testimony in its summary judgment papers.

L-3 also deposed two government officials who oversaw the 1994 proposal and contract, Robert Muldoon and Roy Lindquist, and a former AS&E scientist, Dr. Michael Hynes. Even though L-3 focused its examination of these witnesses on the inequitable conduct and on-sale bar issues, L-3 did not even mention their testimony in any of its summary judgment papers. That is because Muldoon, Lindquist, and Hynes testified consistently with AS&E's position that it committed no inequitable conduct and that the 1994 contract did not amount to an on-sale bar.

Finally, L-3 subpoenaed AS&E's patent counsel, Bruce Sunstein and Sam Petuchowski of Bromberg & Sunstein LLP, requesting from them both documents and deposition testimony.

In response, the attorneys produced hundreds of documents totaling over 2,223 pages relating to the prosecution of the patents. Both attorneys also submitted to depositions.

Bromberg & Sunstein spent considerable time and effort complying with the subpoenas and attempting to address L-3's unreasonable demands for production. Specifically, in response to the February 2005, subpoenas to Attorneys Sunstein and Petuchowski, Bromberg & Sunstein produced 738 documents on March 16, 2005. The following day, Bromberg & Sunstein produced an additional 527 documents. That document production was followed by the production of an additional 971 documents on March 22, 2005. *See* **Exh. 2**, Declaration of John F. Ward, Esq. ("Ward Decl.") at ¶ 2.

During March 2005, in conjunction with its document productions, Bromberg & Sunstein provided L-3 with logs accounting for documents withheld from production due to attorney client privilege and/or the work product doctrine. Bromberg & Sunstein first produced a log on on March 16, 2005. Bromberg & Sunstein supplemented that privilege log on March 22, 2005, to account for the privileged documents withheld from the documents produced on March 17 and 22, 2005. **Exh. 2**, Ward Decl. at ¶ 4.

Several months later, in a letter dated May 31, 2005, L-3 requested that Bromberg & Sunstein produce twenty-four documents listed on its Supplemental Privilege Log of March 22, 2005. In response to L-3's letter, AS&E did two things. First, on June 8, 2005, AS&E produced twelve of the twenty-four documents requested in L-3's letter. These documents were described in entries 69-71, 73-75, 129-132 and 136-137 on Bromberg & Sunstein's supplemental privilege log. These documents concerned various teleconferences made in connection with the prosecution of the '683 patent, which were originally thought to be privileged but, upon further review, were determined not to contain attorney/client

5

communications or material immune from disclosure under the work product doctrine. **Exh. 2**, Ward Decl. at ¶ 5.

Second, on June 30, 2005, AS&E issued a Second Supplemental Privilege log. In that privilege log, AS&E removed the entries associated with the documents produced on June 8, 2005, and revised numerous document descriptions in an attempt to make it crystal clear for L-3 that the listed documents are privileged and thus not subject to discovery. Significantly, following the issuance of the Second Supplemental Privilege Log, L-3 essentially conceded that certain documents are in fact privileged, having dropped its request for five of the privileged documents it had originally sought. These documents included such obviously privileged materials as attorney generated notes and internal memos reflecting attorney/client communications. **Exh. 2**, Ward Decl. at ¶ 6. Thus through its document production of June 8th and its supplemental privilege log, AS&E has satisfied most of the requests in L-3's May 31, 2005, letter. *Id.*

### B. The Bromberg & Sunstein Attorneys Testified Completely and Do Not Need Their Memories Refreshed

Bruce Sunstein, a founding partner of AS&E's law firm, Bromberg & Sunstein LLP, prepared and filed the provisional patent application in February 1996 that eventually gave birth to the '533 and '623 patents. Mr. Sunstein testified that, when he filed the 1996 provisional application, he <u>carefully</u> considered the on-sale bar issue and the effect, if any, of the 1994 technical proposal and contract. For example, Mr. Sunstein testified that he "evaluated the circumstances" and "satisfied himself that the question of statutory bars was answered in a way satisfactory to me to make it completely appropriate to file the application." *See* **Exh. 1,** Sunstein depo. at 50-51. Indeed, Mr. Sunstein testified that neither he nor AS&E saw anything

6

to hide when filing the patent applications. *Id*. at 51. Thus, he included the technical proposal and details of the Army contract (even providing the contract designation, DAAB10-95-C-0001) in an appendix to the provisional patent application. *Id*. at 51-52. Accordingly, the PTO had the essential facts for examination of the ensuing patent applications.

During the deposition, L-3's counsel asked Mr. Sunstein about details of the prosecution of the patents-in-suit and also other patents not asserted here (*i.e.*, the '683 and '929 patents). Mr. Sunstein testified that consulting privileged documents would not refresh his recollection as to details of the prosecution of the regular applications (*i.e.*, the applications filed after the provisional application). **Exh. 1**, Sunstein depo. at 34 (the privileged documents generally "don't help my memory").

It is not surprising that Mr. Sunstein could not recite all of the details of the patent prosecution. After filing the provisional application, Mr. Sunstein handed responsibility for the patent prosecution to Samuel Petuchowski, Ph. D., who, in addition to being a patent attorney, holds a Ph. D. in physics and is thus able to understand the complex x-ray technology underlying AS&E's patents.

Dr. Petuchowski prosecuted the two continuation applications that resulted in the '533 and '623 patents. He was able to recall the material details of the prosecution, specifically testifying that, when he prosecuted AS&E's patents, he considered whether the Army contract constituted an on-sale bar:

> Q. (BY MR. ABRAHAMSEN) Did you consider whether any Mobile Cargosearch invention was ready for patenting as of the critical date?
>
> A. Yes.
>
> Q. And what did you decide?

7

> A. I decided that it was not.
>
> Q. And why was it not?
>
> A. Because in February 1995, no one knew whether it would work as claimed.

**Exh. 3,** Deposition of Samuel J. Petuchowski ("Petuchowski depo) at 35.

> Q. . . . Did you consider whether as of the critical date the inventor had prepared drawings or specifications that were sufficient to enable one of ordinary skill in the art to practice the claimed invention?
>
> A. I knew that not to be the case.

Petuchowski depo. at 36.

Contrary to L-3's mischaracterization, the prosecuting attorneys were aware of the Army contract. *See* **Exh. 1,** Sunstein depo at 53 ("If the question is was I aware that there was government funding to develop the vehicle that was the subject of the filing, yes"); **Exh. 3,** Petuchowski depo. at 45, *ll*. 15-17 ( "I was aware of the fact that AS&E was being paid to develop this device"); at 46 ("I knew when I first began work on it [the patent prosecution] that some government agency was having AS&E develop a mobile back scatter capability. I knew that from the outset"); and at 50 (testifying that he was aware that "AS&E had a vehicle in place with the United States government providing it funding to at least build a prototype Mobile Cargosearch system").

Even so, the attorneys also determined that the Army contract was not material, did not constitute an on-sale bar, and thus would not upset the patents:

> Q. Had you learned that there was a contract in place prior to the critical date, would you have inquired further?
>
> [objection stated]
>
> A. I knew that the client only learned that the product worked not long, months before the provisional application was filed. Therefore, that was not an issue.

8

**Exh. 3,** Petuchowski depo. at 51.  *See also id.* at 53 ("I think it's clear that there was no sale of the claimed products at the time the contract was signed or at any time prior to the critical date"); **Exh. 1,** Sunstein depo at 119 (Mobile CargoSearch was not ready for patenting at the time); 121-123 (the system has not even been fully designed or built at the time of the contract).

In particular, the Bromberg & Sunstein attorneys knew that there could be no inequitable conduct because AS&E had provided the PTO examiner with the 1994 technical proposal and the details of the contract:

> Q. But did you think that the examiner had been made aware that a proposal was submitted to the U.S. Army prior to the critical date?
>
> A. Yes.
>
> Q. And what was the basis of that belief?
>
> A. The appendix to the provisional application.

**Exh. 3,** Petuchowski depo at 104.  *See also id.* at 97 (testifying that the examiner had a copy of the January 1994 proposal); at 106 ("It [the provisional application] says that Mobile CargoSearch was proposed in January 1994."); and at 108 ("The examiner knew everything that I knew").

Finally, Contrary to L-3's mischaracterization, Bromberg & Sunstein did consider the effect of *Pfaff v. Well* on the patents:

> Q. What was your understanding of the state of the law when you considered whether this in fact represents a precritical date offer for sale?
>
> A. Pfaff v. Wells.

**Exh. 3,** Petuchowski depo. at 34.

> Q. So what is the reason it's [*Pfaff v. Wells*] readily considered?

9

   A. Because there was neither reduction to practice before the critical date nor drawings that were sufficient specific to enable a person skilled in the art to practice the invention."

*Id.* at 54.

Accordingly, this Court must reject L-3's mischaracterization that (a) it has shown inequitable conduct and (b) the patent attorneys could not recall the details relevant to the summary judgment issues.

  **C.** **The Requested Documents Are Privileged or Immaterial**

    **1.** **The Privilege Log Documents**

L-3 seeks the production of notes, correspondence, and memos prepared by counsel in the course of securing patent rights for AS&E in its mobile inspection technology. These documents, which fall into the three categories discussed below, have been properly withheld from production.

      **a)** **Attorney Notes and Memos To File Concerning Client Conversations**

Three of the documents L-3 seeks are attorney notes and memos to file containing attorney/client communications. These documents are described on AS&E's privilege logs at entries numbered 29, 92, and 139. In addition to containing privileged communications, the majority of these documents concern the '683 patent and are thus immaterial to these proceedings. Specifically, document number 29 describes a conversation between Attorney Petuchowski and AS&E employees Bill Adams and Rod Swift (an inventor of the patents-in-suit) concerning the drafting of patent claims for the '683 patent. Document 92 describes the content of a telephone conversation between Attorney Petuchowski and Michael Hynes, AS&E's Chief Technical Officer, concerning patent rights. Finally, documents numbered 139 is a memo to the file which contains the notes Attorneys Petuchowski generated during the course of a

10

telephone conference call with AS&E's in-house counsel, Jeff Bernfeld, and various AS&E engineers and managers concerning the '683 patent.

### b) Communications with Dowell & Dowell and Others

Seven of the documents L-3 seeks are letters between Bromberg & Sunstein and Attorney Ralph Dowell, Esq., of the firm Dowell & Dowell, P.C. These documents are described on AS&E's privilege logs at entries numbered 52, 53, 58, 72, 76, 77 and 78. The Dowell firm assisted Bromberg & Sunstein in the prosecution of AS&E's patents. As discussed in greater detail below, these documents are properly withheld from production under the attorney/client privilege. Further, these seven documents are immaterial to this proceeding because they all relate to the prosecution of the '683 patent, which is not among the patents-in-suit. Indeed, the '683 patent was the subject of litigation between AS&E and L-3's corporate predecessor, EG&G Astrophysics, which case has now settled. There is no reason for L-3 to now probe AS&E's privileged communications concerning that settled matter.

Another two of the documents L-3 seeks are notes and memos to file concerning conversations between Bromberg & Sunstein and the Dowell firm concerning the prosecution of the '683 patent. These documents are described in AS&E's privilege logs at entries numbers 59 and 80. These documents are counsel's telephone notes related to conversations with the Dowell firm concerning the securing AS&E's rights in the '683 patent. Like the correspondence with the Dowell firm described above, these two telephone notes are privileged communications. And like the correspondence described above, these notes all relate to the '683 patent, and are thus both privileged and immaterial.

In addition, L-3 seeks the production of document number 66, counsel's notes concerning a telephone discussion with a foreign associate. Like documents 59 and 80, document 66

11

concerns counsel's communication with an agent engaged for the purpose of securing patent rights. And like the correspondence notes concerning communications with the Dowell firm, these notes relate to the '683 patent and are thus immaterial to these proceedings.

### c) Other Attorney Notes and Memos To File

The two remaining documents L-3 seeks are described in AS&E's privilege logs at entries numbers 10 and 138. Document 10 contains notes prepared by Attorney Petuchowski in anticipation of a conference with AS&E concerning a legal issue raised by the provisional application Attorney Sunstein prepared in 1996, the '495 application. Thus, this document is privileged attorney/client communication. Document 138 contains notes that Attorney Petuchowski compiled in connection with the re-examination of the '683 patent. (The '683 patent was put into re-examination during the course of EG&G's litigation with AS&E). Thus, because the '683 re-examination is part of the EG&G litigation, Attorney Petuchowski's notes are immune from production under the work product doctrine.

### 2. The Invoices of Bromberg & Sunstein.

In its subpoena of March 28, 2005, L-3 seeks the production of the invoices Bromberg & Sunstein generated and sent to AS&E in connection with the prosecution of six patent applications and the '683 re-examination. These invoices number more than 225 pages and abound with direct and indirect references to the content of attorney/client communications and attorney work product. It would take more than eight hours of attorney time to thoroughly review, redact and prepare these documents for the in-camera inspection L-3 seeks.

## ARGUMENT

### I. PATENT COUNSEL'S CORRESPONDENCE, NOTES, AND MEMOS ARE PRIVILEGED AND PROPERLY WITHHELD FROM PRODUCTION

The attorney/client privilege allows inventors who seek patent protection to communicate with counsel on matters related to patentability, claim drafting, patent filing strategy, and the like, secure in the knowledge that such communications are immune from disclosure, and beyond the reach of competitors and the subpoenas of their litigation counsel. *Spaulding Sports Worldwide, Inc.*, 203 F.3d 800, 806 (Fed.Cir. 2000) (attorney/client communications concerning the preparation of patent applications are privileged).[2]

Like the attorney/client communications in *Spaulding*, the communications among and between Bromberg & Sunstein, or its agents, and AS&E concerning efforts to secure patent protection for AS&E's mobile inspection systems are privileged and immune from production. *Id*.

#### A.    Attorney Notes and Memos To File Concerning Conversations With AS&E

The notes a patent attorney generates in connection with a client teleconference on matters relating to patent applications and legal strategy are non-discoverable privileged documents. *McCook Metals, Inc. v. Aloca Inc.*, 192 F.R.D. 242, 254 (N.D.Ill. 2000) (an attorney's notes summarizing client discussions are privileged attorney/client communications). Thus, the documents described on AS&E's privilege logs at entries numbered 29, 92 and 139 notes Attorney Sunstein and Petuchowski made during confidential discussions with AS&E

---

[2] L-3 primarily relies on *United States v. Massachusetts Institute of Technology*, 129 F.3d 681 (1st Cir. 1997), to support its argument. But in that case, the attorney-client privilege was waived because the client shared the attorney communications with third parties. That is not the case here. L-3 does not allege that the requested documents are shared with third parties outside the scope of the privilege. And such is not the case.

Case 1:04-cv-10339-RWZ   Document 87   Filed 08/17/2005   Page 14 of 20

management, inventors and in-house counsel concerning patent prosecution and rights, are privileged documents and beyond the reach of L-3's motion to compel.

### B. Bromberg & Sunstein's privileged communications with those it engaged to assist in prosecuting AS&E's patents

The scope of the attorney/client privilege extends beyond communications between a client and an attorney. The privilege also covers communications between an attorney and representatives of an attorney who assist in the securing a client's patent protection. *Golden Trade v. Lee Apparel Co.*, 143 FRD 514, 518 (S.D.N.Y. 1992) (noting that the attorney/client privilege applies to communications between patent counsel and patent counsel's agents); *Willemijn Houdstermaatschaapij BV v. Apollo Computer Inc.*, 707 F.Supp. 1429, 1446 n. 24 (D.Del. 1989) (same).

Thus, AS&E has properly asserted the attorney/client privilege in connection with the seven letters between Bromberg & Sunstein and Dowell & Dowell concerning the Dowell firm's efforts to assist Bromberg & Sunstein in securing patent protection for AS&E's mobile cargo inspection inventions. *See* privilege log entries numbered 52, 53, 58, 72, 76, 77 and 78. The letters are communications with the representatives of patent counsel concerning the provision of legal services to AS&E, and are privileged. *Id.* Similarly, AS&E has properly withheld from production its patent counsels' notes and memos to file concerning telephone conversations with the Dowell firm and others from whom Attorneys Sunstein and Petuchowski enlisted in their efforts to secure patent protection for AS&E. *See* privilege log entries numbered 59, 66 and 80. The production of such letters and notes should be denied. *Id.*

14

### C.    Other Attorney Memos and Notes

AS&E has also properly withheld from production the documents described in AS&E's privilege logs at entries numbers 10 and 138.  Document 10 contains legal analysis prepared by Attorney Petuchowski in anticipation of a conversation with AS&E concerning the provisional application Attorney Sunstein prepared in 1996, the '495 application.  Thus, the document is, in effect, an interoffice memorandum identifying legal issues which must be brought to AS&E's attention.  It is immaterial whether or not the legal issues described in this documents were brought to the attention of AS&E.  The document contains confidential client communications interwoven with legal analysis and strategy.  It is classic attorney/client privilege material. *Palomar Medical Technologies, Inc. v. Cutera*, 2005 WL 419685 (D.Mass. 2005) (Zobel, J.) (production of records concerning memo by prosecuting attorney "invasive and inevitably treads on attorney-client privilege"). *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 143 F.R.D. 611, 619 (E.D. N.C. 1992)   (patent counsel's draft declarations concerning legal strategy are properly withheld from production under attorney/client privilege).

Finally, AS&E has properly withheld document 138 from production.  The document is immune from discovery under the work-product doctrine, which prohibits discovery of materials prepared in anticipation of litigation. *See Fairbanks v. American Can Co.,* 110 F.R.D. 685, 687 (D.Mass.1986) (discussing *Hickman v. Taylor,* 329 U.S. 495 (1946)).  The document contains notes that Attorney Petuchowski compiled in connection with the re-examination of the '683 patent.  As noted above, the '683 patent was put into re-examination at the insistence of L-3's corporate predecessor, EG&G, during the course of litigation with AS&E.  Thus, the notes are attorney work. *McCook Metals, Inc. v. Aloca Inc.*, 192 F.R.D. 242, 263 (N.D.Ill. 2000) (noting that the reexamination process is "litigation" for the purpose of the attorney work product

doctrine analysis). *See also Applied Telematics, Inc. v. Sprint Communications Co.*, 1996 WL 539595 *5 (E.D.Pa., Sept. 18, 1996) (applying the work product doctrine and noting that "[T]he reexamination proceeding itself is adversarial."). Thus, this document has been properly withheld from production.

## II.     PATENT COUNSEL'S INVOICES ARE PRIVILEGED

Requests 8-14 from the March 28th subpoena seek Bromberg & Sunstein's time and billing records related to prosecution of various AS&E patents and the re-examination of the '683 patent. It is black letter law that attorney invoices are immune from discovery if they contain descriptions of the legal services provided. *See, e.g.*, *Colonial Gas Co. v. Aetna Cas. & Sur. Co.*, 144 F.R.D. 600, 607 (D. Mass. 1992) (Bowler, M.J.) ("To the extent that time records and statements reveal the nature of the services provided, however, such documents are privileged"); *see also Ehrich v. Binghamton City School District*, 210 F.R.D. 17, 23 (N.D.N.Y 2002) (holding that attorney billing statements are subject to the attorney-client privilege); *In re Grand Jury Subpoenas*, 123 F.3d 695 (1st Cir. 1997) (holding that documents intended for billing purposes are privileged where they contain substantive descriptions of legal services rendered); *In re Grand Jury Witness*, 695 F.2d 359, 362 (9th Cir. 1982) (denying discovery of an attorney's bills, ledgers, statements, time records and the like).

In addition to being privileged, these documents are also not material to L-3's inequitable conduct case. L-3 claims that such documents will refresh recollections as to when Attorneys Sunstein and Petuchowski took certain actions and for how long. But such information has nothing to do with inequitable conduct. For example, L-3 asked Dr. Petuchowski how much time he spent considering *Pfaff v. Wells* (the current leading case on the on-sale bar) during prosecution of the patents. How much time Attorney Petuchowski spent considering any

particular case does bear on L-3's inequitable conduct claim, however. At most, the particulars of counsel's research may bear on a claim of negligence (not that there was any here). But L-3 has not alleged negligence; it has alleged inequitable conduct, which requires proof, by clear and convincing evidence, of both of the materiality of a representation or omission made to the Patent and Trademark Office and intent to mislead or deceive the Office. *See Kingsdown Medical Consultants, Ltd. v. Hollister, Inc.* 863 F.2d 867, 872-873 (Fed.Cir. 1988) (a finding of inequitable conduct requires clear and convincing evidence of intent to deceive); *Schneider (USA) Inc. v. C.R.Bard, Inc.* 1990 WL 292143 (D.Mass. 1990) (claims of inequitable conduct must fail if based on allegations of attorney negligence). Of course, as seen above, Attorneys Sunstein and Petuchowski carefully considered the propriety of filing the patents, carefully considered the relevant documents, and satisfied themselves that there was no on-sale bar.[3]

### III. PATENT PROSECUTION DOCUMENTS CAN ALSO REFLECT ATTORNEY WORK PRODUCT

An attorney's notes and communications can also be protected under the work product doctrine when the interests of clients – and ultimately the cause of justice – demand that lawyers work with a certain degree of privacy. *See Connelly et al. v. Dun & Bradstreet*, 96 F.R.D. 339, 342) (D.Mass. 1982) (Zobel, J.) (*citing Upjohn v. United States*, 101 S.Ct. 677, 686-87 (1981)). Such is the case when the prosecution occurs simultaneously with patent litigation or otherwise

---

[3] Contrary to L-3's assertion, nothing required Bromberg & Sunstein LLP to prepare a privilege log for the time records requested in the March 28th subpoena. Bromberg & Sunstein LLP had already informed L-3 that it was asserting the attorney-client privilege for all of these documents. Ward Declaration at ¶ 8. In such circumstances, the law does not require that each time record be listed separately on a log. *See, e.g., In re Imperial Corp. of America*, 174 F.R.D. 475, 477 (S.D. Cal. 1997) ("nowhere in [Rule] 26(b)(5) is it mandated that a document-by-document privilege log is required . . . if a party seeks to withhold documents based on privilege or work product"); *accord, In re Grand Jury Investigation*, 974 F.2d 1068, 1070 (9th Cir. 1992).

in an adversarial posture. *See American Optical Corp. v. Medtronic, Inc.*, 56 F.R.D. 426, 430 (D.Mass. 1972) (work product protects attorney impressions, observations and opinions made "with an eye toward litigation"). That was the case for many of the documents, such as 138 and 139, which relate to reexamination of the '683 patent. At the time, AS&E was locked in litigation with EG&G. Because of the overlapping issues created when the '683 patent was put into re-examination, patent counsel at Bromberg & Sunstein coordinated their efforts and strategy with AS&E's litigation counsel, Thomas Sobol and Robert Daut. Accordingly, these documents are privileged and protected by the work product immunity.

### IV.   MOST OF THE REQUESTED DOCUMENTS ARE IMMATERIAL

Twelve of the fifteen challenged privilege log documents relate solely to the '683 patent. These documents are 29, 52, 53, 58, 59, 66, 72, 76-78, 80 and 139. Such documents cannot possibly be material to the inequitable conduct issue. *See, e.g.*, *FMC Corp. v. Hennessy Indus., Inc.,* 836 F.2d 521, 524 (Fed.Cir. 1987) (patentee's practice with respect to applications for other patents not in suit is not relevant); *SSIH Equip. S.A. v. U.S. Int'l Trade Comm'n*, 718 F.2d 365, 378-79 (Fed.Cir. 1983) (conduct in prosecution of other patents immaterial to the patent in suit). *See also In re: Lupron Marketing and Sales Practices Litigation*, No. MDL 1430, 01-CV-10861-RGS, 2004 WL 764454 (D. Mass., March 17, 2004) (Sterns, J.) (denying motion to compel documents relating to issues that were the subject of separate litigation).[4]

---

[4] Some of these documents are communications from Dr. Petuchowski to Dowell & Dowell, a patent law firm in Washington D.C. that assisted Bromberg & Sunstein in prosecuting the patents. Such communications are also privileged. *See, e.g., Fromson v. Anitec Printing Plates, Inc.,* 152 F.R.D. 2, 3 (D. Mass. 1993) (Ponsor, M.J.); *United States v. Kovel*, 296 F.2d 918, 921 (2d Cir. 1961) (holding that communications between attorney and attorney's agent in pursuit of client's interest does not destroy attorney-client privilege).

## V. BROMBERG & SUNSTEIN LLP WAS NOT REQUIRED TO BRING PRIVILEGED DOCUMENTS TO THE DEPOSITIONS

L-3's preoccupation with the production of privileged documents is a canard, as Attorney Sunstein specifically testified that such documents would *not* help refresh his memory, and Attorney Petuchowski was able to recall all of the material details of the prosecution of the '533 and '623 patents. L-3's contention that Attorneys Sunstein and Petuchowski were required to review privileged documents during the course of their deposition is an attempt to impose obligation upon those witnesses greater than the obligation permitted under the Federal Rules. Unlike deponents who testify under Rule 30(b)(6), Attorneys Sunstein and Petuchowski were under no obligation to review documents or files, in connection with their depositions. *See Calzaturficio S.C.A.R.P.A  S.P.A. v. Fabiano Shoe Co.*, 201 F.R.D. 33, 36 (D. Mass 2001) (holding that duty to prepare for 30(b)(6) deposition is concomitant obligation to the privilege of being able to use corporate form to conduct business). That is not to say that Attorneys Sunstein and Petuchowski were unprepared for their depositions. They testified candidly and at length. But they properly refused L-3's attempt to impose additional duties and obligations not anticipated by the Rules.

## CONCLUSION

AS&E suspects that L-3 is not so much interested in obtaining the requested documents as it is in (1) forcing its competitor, AS&E, to spend more time and money fighting small battles in this declaratory judgment action, which AS&E never wanted and which L-3 forced on AS&E, and (2) using the discovery motion, improperly, to make further arguments concerning the two pending summary judgment motions. After all, L-3 seeks to compel production of documents that even it must concede reflect privileged attorney-client communications and/or attorney work product. For example, from the face of the privilege log itself, L-3 can see that the listed

19

documents are either correspondence or notes of conversations between AS&E and its patent attorneys or other privileged communications commonly withheld from production. The invoices requested in the March 28th subpoena are Bromberg & Sunstein's statements of legal work done for AS&E, at AS&E's request, and are likewise privileged. Moreover, L-3 seeks documents concerning patents that are not even part of this litigation and therefore add little, if anything, to resolving this case. So AS&E suspects that L-3 targeted these documents randomly simply to pick a fight. Accordingly, this Court should deny L-3's motion to compel.

Dated: August 17, 2005                           AMERICAN SCIENCE AND
                                                 ENGINEERING, INC.

                                                 *By its attorneys*,


                                                 /s/ Erik P. Belt
                                                 Erik Paul Belt, BBO # 558620
                                                 John F. Ward, BBO # 646689
                                                 BROMBERG & SUNSTEIN LLP
                                                 125 Summer Street
                                                 Boston, Massachusetts 02110
                                                 Tel:  (617) 443-9292
                                                 Facsimile:  (617) 443-0004
                                                 ebelt@bronsum.com

01945/00511 423442.1