Bruce D. Sunstein, Esq.                                                    03/22/2005

**EXHIBIT 1**

```
 1    BROMBERG & SUNSTEIN LLP              Volume:   I
           RECEIVED
 2       APR 0 6 2005                      Pages:    1-139

 3                                         Exhibits: 44-52

 4

 5          IN THE UNITED STATES DISTRICT COURT

 6          FOR THE DISTRICT OF MASSACHUSETTS

 7          Civil Action No. 04-CV-10339-GAO

 8    - - - - - - - - - - - - - - - - - - - - - - - x

 9    L3 COMMUNICATIONS SECURITY AND DETECTION SYSTEMS

10    CORPORATION DELAWARE,

11               Plaintiff,

12        v.

13    AMERICAN SCIENCE AND ENGINEERING, INC.,

14               Defendant.

15    - - - - - - - - - - - - - - - - - - - - - - - x

16

17          DEPOSITION OF BRUCE D. SUNSTEIN, ESQ.

18               Tuesday, March 22, 2005

19                    10:37 a.m.

20          WOLF GREENFIELD & SACKS, P.C.

21          600 Atlantic Avenue, 23rd Floor

22               Boston, Massachusetts

23

24    Reporter:  Marianne R. Wharram, CSR/RPR
```

Bruce D. Sunstein, Esq.                                      03/22/2005

                                                                                                     2

1   A P P E A R A N C E S

2

3        WOLF GREENFIELD & SACKS, P.C.

4        (BY ROBERT M. ABRAHAMSEN, ESQ.

5         And JAMES FOSTER, ESQ.)

6        600 Atlantic Avenue

7        Boston, MA   02210-2206

8        (617) 720-3500

9        rabrahamsen@wolfgreenfield.com

10       Counsel for the Plaintiff

11

12       BROMBERG SUNSTEIN, LLP

13       (BY ERIK PAUL BELT, ESQ.

14        And JOHN F. WARD, ESQ.)

15       125 Summer Street

16       Boston, MA   02110-1618

17       (617) 443-9292

18       ebelt@bomsun.com

19       jward@bromsun.com

20       Counsel for the Defendant

21

22  ALSO PRESENT:

23       Samuel J. Petuchowski, PhD, Esq.

24       (During initial non-testimony portion.)

Bruce D. Sunstein, Esq.                                    03/22/2005

17

| Time | # | |
|---|---|---|
| 10:51:32 | 1 | MR. ABRAHAMSEN: Okay. |
| 10:51:34 | 2 | Q. (BY MR. ABRAHAMSEN) Mr. Sunstein, how long |
| 10:51:39 | 3 | has AS&E been a client of Bromberg and Sunstein? |
| 10:51:45 | 4 | A. I can't tell you exactly how long, but |
| 10:51:49 | 5 | certainly for many years. |
| 10:51:50 | 6 | Q. If you had the patent prosecution files |
| 10:52:00 | 7 | with privileged correspondence in it with you here |
| 10:52:04 | 8 | today, would you be able to answer that question? |
| 10:52:11 | 9 | A. You mean by inspection of files? |
| 10:52:13 | 10 | Q. Correct. |
| 10:52:14 | 11 | A. Or do you mean by based on memory? |
| 10:52:17 | 12 | Q. Is your memory exhausted as to when AS&E |
| 10:52:23 | 13 | first became a client? |
| 10:52:25 | 14 | A. Please explain the question. |
| 10:52:26 | 15 | Q. Do you know when AS&E first became a client |
| 10:52:30 | 16 | of Bromberg and Sunstein? |
| 10:52:33 | 17 | A. The exact date? |
| 10:52:34 | 18 | Q. Yes. |
| 10:52:35 | 19 | A. No. |
| 10:52:35 | 20 | Q. So your memory on that particular issue has |
| 10:52:39 | 21 | been exhausted at this point; the exact date? |
| 10:52:41 | 22 | A. I have no explicit knowledge of the exact |
| 10:52:45 | 23 | date on which AS&E first became a client. That's |
| 10:52:49 | 24 | correct. |

Bruce D. Sunstein, Esq. 03/22/2005

34

| | | |
|---|---|---|
| 11:23:54 | 1 | involved in at least one reexamination proceeding |
| 11:23:57 | 2 | that had been initiated by Mr. Teska. |
| 11:24:01 | 3 | Q. Okay. Do you believe there would be any |
| 11:24:10 | 4 | privileged communications in these files that would |
| 11:24:13 | 5 | help refresh your recollection as to whether you |
| 11:24:16 | 6 | participated in any strategic decisions involving |
| 11:24:19 | 7 | the applications corresponding to all of the |
| 11:24:24 | 8 | exhibits we just looked at? |
| 11:24:26 | 9 | MR. BELT: That's a pretty broad |
| 11:24:27 | 10 | question. |
| 11:24:31 | 11 | A. Generally, what happens when I look at |
| 11:24:34 | 12 | prior documents is that I find them interesting. |
| 11:24:39 | 13 | They don't help my memory, typically, but I can |
| 11:24:42 | 14 | deduce things from them, so if you're asking about |
| 11:24:45 | 15 | deducing things, sure. If you're asking about |
| 11:24:49 | 16 | assisting my memory, that's a different story. My |
| 11:24:52 | 17 | memory is seldom helped by these things. |
| 11:24:57 | 18 | Q. (BY MR. ABRAHAMSEN) Okay. Do you recall |
| 11:25:15 | 19 | seeing an invention disclosure for the MobileSearch |
| 11:25:22 | 20 | product? |
| 11:25:26 | 21 | A. What do you mean an invention disclosure? |
| 11:25:29 | 22 | Q. A disclosure describing what the applicants |
| 11:25:34 | 23 | believe their invention to be. |
| 11:25:37 | 24 | A. What do you mean a disclosure? |

Bruce D. Sunstein, Esq.                                         03/22/2005

50

| Time | # | |
|---|---|---|
| 11:51:57 | 1 | MR. BELT: Let me just stop the witness |
| 11:51:59 | 2 | here. |
| 11:51:59 | 3 | THE WITNESS: Okay. |
| 11:52:00 | 4 | MR. BELT: If you're going to go into |
| 11:52:02 | 5 | attorney/client privileged matters, what you |
| 11:52:05 | 6 | advised them in terms of legal advice, then I'll |
| 11:52:12 | 7 | instruct you not to reveal that subject matter. |
| 11:52:16 | 8 | Q. (BY MR. ABRAHAMSEN) We could just stick |
| 11:52:19 | 9 | with what conclusions did you reach, without |
| 11:52:21 | 10 | disclosing what was communicated to the client. |
| 11:52:25 | 11 | A. The outcome of the meeting with the client |
| 11:52:28 | 12 | at the time was a filing of a patent application in |
| 52:35 | 13 | very short order. |
| 11:52:38 | 14 | Q. Okay. Going back to an earlier question |
| 11:52:43 | 15 | that I'm not sure I got an answer, were you |
| 11:52:46 | 16 | concerned that this January 31st, 1994 technical |
| 11:52:52 | 17 | proposal, which has been marked as Exhibit 49, may |
| 11:52:55 | 18 | present a statutory bar for the patent application |
| 11:52:59 | 19 | you filed? |
| 11:53:00 | 20 | MR. BELT: Can I have that question |
| 11:53:19 | 21 | back? |
| 11:53:19 | 22 | (Last question read back.) |
| 11:53:26 | 23 | A. The answer is that I evaluated the |
| 11:53:29 | 24 | circumstances leading to the building of that |

Bruce D. Sunstein, Esq.                                    03/22/2005

51

| | |
|---|---|
| 11:53:40  1 | device, which was just then being tested, and |
| 11:53:43  2 | satisfied myself that the question of statutory |
| 11:53:49  3 | bars was answered in a way satisfactory to me to |
| 11:54:04  4 | make it completely appropriate to file the |
| 11:54:07  5 | application. |
| 11:54:14  6 | Q.   (BY MR. ABRAHAMSEN)  Did you ever consider |
| 11:54:15  7 | disclosing to the Patent Office the fact that a |
| 11:54:19  8 | technical proposal had been dem-- had been |
| 11:54:22  9 | presented to the U.S. government on January 31st, |
| 11:54:26 10 | 1994? |
| 11:54:32 11 | A.   Well, in fact, I believe that major pieces |
| 11:54:35 12 | of the provisional filing came from that document, |
| 11:54:40 13 | so in some sense, the -- the documents disclose all |
| 11:54:52 14 | sorts of activity, and as of today, how much of |
| 11:55:01 15 | that disclosure is explicit in these documents, I |
| 11:55:05 16 | can't tell you based on memory, but I can say that |
| 11:55:16 17 | we saw nothing whatsoever to hide, so that whatever |
| 11:55:21 18 | was disclosed in these documents -- in fact, you |
| 11:55:27 19 | can see if you look at Appendix 1 to this |
| 11:55:31 20 | provisional filing, it just leaps up at me now as |
| 11:55:37 21 | an example.  It says on page B1, this program has |
| 11:55:43 22 | been funded in part by the Advanced Research |
| 11:55:46 23 | Projects Agency, ARPA, contract number so and so. |
| 11:55:49 24 | So it talks about all sorts of funding going on |

| | | |
|---|---|---|
| 11:55:53 | 1 | here. Then it talks about Otay Mesa's system, |
| 11:55:59 | 2 | which was a -- a slightly different piece of |
| 11:56:04 | 3 | technology, but there's all sorts of disclosure in |
| 11:56:08 | 4 | here about AS&E's involvement, so we felt that |
| 11:56:14 | 5 | there was absolutely nothing to hide about the |
| 11:56:19 | 6 | situation of American Science and Engineering, and |
| 11:56:28 | 7 | the presence of these documents in the original |
| 11:56:32 | 8 | make that abundantly clear. So the answer is I was |
| 11:56:36 | 9 | not concerned. I had made the determination and in |
| 11:56:39 | 10 | fact used relevant documents that talked about all |
| 11:56:43 | 11 | sorts of things directly in that provisional |
| 11:56:46 | 12 | application. |
| 56:46 | 13 | Q. Did you consider disclosing to the Patent |
| 11:56:49 | 14 | Office any additional information that would enable |
| 11:56:52 | 15 | an examiner to make their own determination as to |
| 11:56:55 | 16 | whether a statutory bar had taken place? |
| 11:56:58 | 17 | MR. BELT: Objection. |
| 11:57:00 | 18 | A. A provisional application is not examined, |
| 11:57:06 | 19 | so at the time of filing this document, it simply |
| 11:57:13 | 20 | is what it is. |
| 11:57:15 | 21 | Q. (BY MR. ABRAHAMSEN) What about during the |
| 11:57:17 | 22 | prosecution of the '683 patent, which is |
| 11:57:20 | 23 | Exhibit 27? Did you ever consider whether to give |
| 11:57:23 | 24 | the examiner any additional information that would |

| | | |
|---|---|---|
| 11:57:26 | 1 | enable the examiner to make their own conclusion as |
| 11:57:29 | 2 | to whether a statutory bar had taken place? |
| 11:57:32 | 3 | A.  So you're asking for my memory of the |
| 11:57:35 | 4 | prosecution of those documents downstream, and I |
| 11:57:39 | 5 | can't illuminate that because I have no specific |
| 11:57:42 | 6 | memory of downstream prosecution of those |
| 11:57:47 | 7 | application claims. |
| 11:57:52 | 8 | Q.  Were you aware that a -- a contract was |
| 11:57:55 | 9 | actually signed between American Science and |
| 11:57:59 | 10 | Engineering to build a prototype fully operational |
| 11:58:04 | 11 | Mobile Cargosearch system that was signed in August |
| 11:58:09 | 12 | -- I'm sorry; in October of 1994 when the |
| 11:58:17 | 13 | provisional patent application was filed? |
| 11:58:20 | 14 | A.  Well, your question has a lot of dates and |
| 11:58:23 | 15 | facts in it.  If the question is was I aware that |
| 11:58:29 | 16 | there was government funding to develop the vehicle |
| 11:58:35 | 17 | that was the subject of the filing, yes.  The |
| 11:58:41 | 18 | answer to that question is yes. |
| 11:58:42 | 19 | Q.  Were you aware that the contract to provide |
| 11:58:44 | 20 | that funding was signed on October 19th of 1994? |
| 11:58:48 | 21 | A.  The exact dates?  I'm not aware of the |
| 11:58:52 | 22 | exact dates today.  I have no memory of them. |
| 11:58:54 | 23 | Q.  Were you aware that the contract to provide |
| 11:58:57 | 24 | that funding was signed more than a year before you |

Bruce D. Sunstein, Esq.                                            03/22/2005

119

| | | |
|---|---|---|
| 03:01:57 | 1 | of subject matter that is claimed. |
| 03:02:11 | 2 | Q.  So you're just saying that a year before |
| 03:02:14 | 3 | the application was filed, the invention had not |
| 03:02:17 | 4 | been reduced to practice yet; is that right? |
| 03:02:21 | 5 | A.  Among other things, that's correct. |
| 03:02:24 | 6 | Q.  Would the drawings and description present |
| 03:02:27 | 7 | in Exhibit 49 have been sufficient to enable one of |
| 03:02:32 | 8 | ordinary skill in the art at the time the |
| 03:02:34 | 9 | application was filed?  As of the critical date; |
| 03:02:37 | 10 | I'm sorry. |
| 03:02:38 | 11 | A.  As of the time the application was filed, |
| 03:02:41 | 12 | it was known that they were sufficient, that the |
| 03:02:43 | 13 | drawings attached, that the entire body of material |
| 03:02:51 | 14 | provided at the time of filing of the application, |
| 03:02:54 | 15 | it was known to the inventors that this subject |
| 03:02:59 | 16 | matter was sufficient. |
| 03:03:01 | 17 | Q.  Is that part of the Pfaff v. Wells test, as |
| 03:03:07 | 18 | far as you're concerned? |
| 03:03:14 | 19 |         MR. BELT:  Objection. |
| 03:03:14 | 20 | A.  What's that? |
| 03:03:16 | 21 | Q.  (BY MR. ABRAHAMSEN)  That the inventors |
| 03:03:18 | 22 | have to appreciate that -- that it was possible to |
| 03:03:22 | 23 | build this thing? |
| 03:03:30 | 24 | A.  I think with respect to the law of the on |

| Time | Line | Text |
|---|---|---|
| 03:05:18 | 1 | triggered? |
| 03:05:18 | 2 | MR. BELT:  That mischaracterizes his |
| 03:05:22 | 3 | testimony. |
| 03:05:23 | 4 | A.  I would agree that that mischaracterizes my |
| 03:05:26 | 5 | testimony. |
| 03:05:27 | 6 | (Mr. Ward enters deposition.) |
| 03:05:44 | 7 | Q.  (BY MR. ABRAHAMSEN)  Would you agree that |
| 03:05:45 | 8 | as of the date of the provisional patent |
| 03:05:49 | 9 | application that you filed that an offer for sale |
| 03:05:51 | 10 | of the invention had been made? |
| 03:05:54 | 11 | A.  What do you mean the invention? |
| 03:05:56 | 12 | Q.  Of a back scatter only Mobile Cargosearch |
| 03:06:00 | 13 | system. |
| 03:06:00 | 14 | A.  Not as defined by any particular claims |
| 03:06:03 | 15 | anywhere, but just any kind of old system?  I think |
| 03:06:07 | 16 | that that funding agreement was to develop and |
| 03:06:10 | 17 | deliver a prototype, and I think it is quite a |
| 03:06:18 | 18 | distortion to call that a sale of a back scatter |
| 03:06:27 | 19 | vehicle or a sale of a detection vehicle.  This is |
| 03:06:31 | 20 | basically a development contract, and I salute you |
| 03:06:36 | 21 | guys for cleverness in trying to find an on sale |
| 03:06:41 | 22 | bar in a development contract, but it's a |
| 03:06:43 | 23 | development contract.  That's what its essential |
| 03:06:48 | 24 | nature was.  And before that contract was signed |

122

| | | |
|---|---|---|
| 03:06:50 | 1 | and at the time that contract was proposed, this |
| 03:06:54 | 2 | vehicle never existed, and our clients were |
| 03:06:57 | 3 | proposing to develop something of great |
| 03:06:59 | 4 | significance to the world of inspection. That they |
| 03:07:08 | 5 | succeeded is wonderful, but in the course of their |
| 03:07:11 | 6 | activity, they had quite a bit of discovery to do |
| 03:07:16 | 7 | in order to determine even that they were on the |
| 03:07:19 | 8 | right road. So at the time I filed this |
| 03:07:23 | 9 | application, they had built such a device and found |
| 03:07:26 | 10 | that they could make it work, and that was |
| 03:07:29 | 11 | fantastic, and that gave rise to a basis for filing |
| 03:07:34 | 12 | an application. I can write down all sorts of |
| 03:07:38 | 13 | wonderful plans, and maybe they'll work out and |
| 03:07:42 | 14 | maybe my odds will be better if I have technical |
| 03:07:45 | 15 | training, but it would be an act of enormous |
| 03:07:48 | 16 | chutzpah, it would be an act of terrific gall to |
| 03:07:53 | 17 | presume that what I dream up and later build will |
| 03:07:59 | 18 | work. |
| 03:08:00 | 19 | The whole principle of science and |
| 03:08:03 | 20 | engineering and development is to work, test, and |
| 03:08:10 | 21 | try to make sure that what you have is something |
| 03:08:14 | 22 | that can actually work. This is quite a leap from |
| 03:08:18 | 23 | that Otay Mesa device. It's an extraordinary leap, |
| 03:08:24 | 24 | and that it worked is fantastic, but it is not |

123

| | | |
|---|---|---|
| 03:08:29 | 1 | something that anyone could reasonably expect, and |
| 03:08:32 | 2 | I think the objective test would be that it |
| 03:08:38 | 3 | required a whole funding period, a whole contract |
| 03:08:43 | 4 | that the government did it -- this was not a deal |
| 03:08:46 | 5 | in which the government ordered 50 of them. They |
| 03:08:49 | 6 | wanted one and hoped also that it would work. That |
| 03:08:55 | 7 | it did work is great. That it would work is |
| 03:08:58 | 8 | definitely unknown, and on those facts, yes, I |
| 03:09:01 | 9 | conclude that it was not on sale. |
| 03:09:10 | 10 | Q. In your view, the ready for patent prong of |
| 03:09:13 | 11 | the Pfaff v. Wells test, then, if I understand you |
| 03:09:18 | 12 | correctly, requires an appreciation on behalf of |
| 03:09:21 | 13 | the inventors that the later-claimed invention |
| 03:09:24 | 14 | would work for its intended purpose? |
| 03:09:26 | 15 | A. That's not my testimony. |
| 03:09:27 | 16 | Q. That's not your testimony? |
| 03:09:29 | 17 | A. No. It's as I said. |
| 03:09:33 | 18 | Q. Is the opposite the case? Is there not a |
| 03:09:35 | 19 | requirement that the inventors appreciate that -- |
| 03:09:39 | 20 | as of the critical date, is there a requirement |
| 03:09:42 | 21 | that the inventors appreciate that what they've |
| 03:09:45 | 22 | described and prepared drawings for will actually |
| 03:09:49 | 23 | work for its intended purpose? |
| 03:09:53 | 24 | MR. BELT: Do you want Mr. Sunstein to |