```
                                                                    1
                BROMBERG & SUNSTEIN LLP
  1                    RECEIVED              EXHIBIT    Volume:   I
                                                3
  2              APR 0 6 2005                           Pages:    1-81

  3                                                     Exhibits: 53-55

  4

  5             IN THE UNITED STATES DISTRICT COURT

  6             FOR THE DISTRICT OF MASSACHUSETTS

  7             Civil Action No. 04-CV-10339-GAO

  8    - - - - - - - - - - - - - - - - - - - - - - - x

  9    L3 COMMUNICATIONS SECURITY AND DETECTION SYSTEMS

 10    CORPORATION DELAWARE,

 11                     Plaintiff,

 12        v.

 13    AMERICAN SCIENCE AND ENGINEERING, INC.,

 14                     Defendant.

 15    - - - - - - - - - - - - - - - - - - - - - - - x

 16

 17       DEPOSITION OF SAMUEL J. PETUCHOWSKI, PhD, ESQ.

 18                 Tuesday, March 22, 2005

 19                         3:51 p.m.

 20              WOLF GREENFIELD & SACKS, P.C.

 21             600 Atlantic Avenue, 23rd Floor

 22                   Boston, Massachusetts

 23

 24       Reporter:  Marianne R. Wharram, CSR/RPR
```

```
                                                                    2
 1   A P P E A R A N C E S
 2
 3        WOLF GREENFIELD & SACKS, P.C.
 4        (BY ROBERT M. ABRAHAMSEN, ESQ.)
 5        600 Atlantic Avenue
 6        Boston, MA  02210-2206
 7        (617) 720-3500
 8        rabrahamsen@wolfgreenfield.com
 9        Counsel for the Plaintiff
10
11        BROMBERG SUNSTEIN, LLP
12        (BY ERIK PAUL BELT, ESQ.
13         And JOHN F. WARD, ESQ.)
14        125 Summer Street
15        Boston, MA  02110-1618
16        (617) 443-9292
17        ebelt@bromsun.com
18        jward@bromsun.com
19        Counsel for the Defendant
20
21
22
23
24
```

Samuel J. Petuchowski, PhD, Esq.
03/22/2005

34

| Time | # | |
|---|---|---|
| 16:41:01 | 1 | product? |
| 16:41:05 | 2 | MR. BELT: Are you asking for a legal |
| 16:41:07 | 3 | opinion now as opposed to facts? |
| 16:41:10 | 4 | MR. ABRAHAMSEN: I'm trying to inquire |
| 16:41:11 | 5 | into his state of mind when he considered this. |
| 16:41:14 | 6 | I'm trying to find out why -- |
| 16:41:16 | 7 | MR. BELT: Are you asking about at the |
| 16:41:18 | 8 | time he considered the contract? |
| 16:41:19 | 9 | Q.   (BY MR. ABRAHAMSEN)  At the time you |
| 16:41:20 | 10 | considered the contract, as you said you did -- |
| 16:41:22 | 11 | A.   Mm-hmm. |
| 16:41:23 | 12 | Q.   -- was it your understanding that an |
| 16:41:26 | 13 | invention had to have been reduced to practice as |
| 16:41:30 | 14 | of the critical date? |
| 16:41:31 | 15 | A.   No.  No. |
| 16:41:32 | 16 | Q.   What was your understanding of the state of |
| 16:41:34 | 17 | the law when you considered whether this in fact |
| 16:41:38 | 18 | represents a precritical date offer for sale? |
| 16:41:42 | 19 | A.   Pfaff v. Wells. |
| 16:41:45 | 20 | Q.   Okay. |
| 16:41:47 | 21 | A.   Ready for patenting. |
| 16:41:48 | 22 | Q.   Okay.  And did you consider whether the |
| 16:41:51 | 23 | invention was ready for patenting as of the |
| 16:41:54 | 24 | critical date? |

35

| | | |
|---|---|---|
| 16:41:58 | 1 | MR. BELT: What invention are we |
| 16:42:00 | 2 | talking about? |
| 16:42:02 | 3 | MR. ABRAHAMSEN: The Mobile Cargosearch |
| 16:42:03 | 4 | invention. |
| 16:42:04 | 5 | MR. BELT: Well, you know, each claim |
| 16:42:06 | 6 | states its own invention; each patent has many |
| 16:42:09 | 7 | claims, et cetera. |
| 16:42:10 | 8 | Q. (BY MR. ABRAHAMSEN) Did you consider |
| 16:42:11 | 9 | whether any Mobile Cargosearch invention was ready |
| 16:42:14 | 10 | for patenting as of the critical date? |
| 16:42:17 | 11 | A. Yes. |
| 16:42:18 | 12 | Q. And what did you decide? |
| 16:42:29 | 13 | A. I decided that it was not. |
| 16:42:31 | 14 | Q. And why was it not? |
| 16:42:42 | 15 | A. Because in February 1995, no one knew |
| 16:42:52 | 16 | whether it would work as claimed. |
| 16:42:57 | 17 | Q. And you think it's a requirement for the on |
| 16:43:00 | 18 | sale bar test that as of the critical date, someone |
| 16:43:03 | 19 | has to know whether it will work? |
| 16:43:10 | 20 | A. These are questions that -- |
| 16:43:13 | 21 | Q. I'm trying to figure out your understanding |
| 16:43:15 | 22 | of the law that enabled you to reach this |
| 16:43:17 | 23 | conclusion. Was it your understanding, when you |
| 16:43:20 | 24 | considered whether this in fact represents a |

Samuel J. Petuchowski, PhD, Esq.                    03/22/2005

45

| | | |
|---|---|---|
| 16:57:53 | 1 | couldn't build it, though? |
| 16:57:58 | 2 | A.  It was built by AS&E ultimately. |
| 16:58:23 | 3 | Q.  Now, it's your testimony that the first |
| 16:58:25 | 4 | time you considered whether either the proposal or |
| 16:58:27 | 5 | a contract that took place prior to the critical |
| 16:58:32 | 6 | date may have been a prior art offer for sale was |
| 16:58:36 | 7 | in connection with the reissue application; is that |
| 16:58:40 | 8 | accurate? |
| 16:58:44 | 9 | A.  No, I didn't say that. |
| 16:58:45 | 10 | Q.  When was the first time you considered |
| 16:58:47 | 11 | whether the proposal or the contract that occurred |
| 16:58:52 | 12 | prior to the critical date was an offer for sale |
| 16:59:01 | 13 | that would be prior art? |
| 16:59:10 | 14 | A.  A patent attorney will consider all the -- |
| 16:59:17 | 15 | all the circumstances.  I mean, I was aware of the |
| 16:59:19 | 16 | fact that AS&E was being paid to develop this |
| 16:59:29 | 17 | device. |
| 16:59:31 | 18 | Q.  And -- |
| 16:59:32 | 19 | A.  So there can't be a characterization that |
| 16:59:36 | 20 | that wasn't considered. |
| 16:59:38 | 21 | Q.  Were you aware that -- |
| 16:59:40 | 22 | A.  You asked me when I first saw this |
| 16:59:43 | 23 | contract, and I said that that was relatively |
| 16:59:46 | 24 | recently. |

46

| | | |
|---|---|---|
| 16:59:46 | 1 | Q. Fair enough. When was AS&E -- when were |
| 16:59:50 | 2 | you first aware that AS&E was being paid to build |
| 16:59:54 | 3 | the device? |
| 17:00:04 | 4 | A. I knew when I first began work on it that |
| 17:00:10 | 5 | some government agency was having AS&E develop a |
| 17:00:18 | 6 | mobile back scatter capability. I knew that from |
| 17:00:23 | 7 | the outset. |
| 17:00:24 | 8 | Q. And you were aware that the vehicle that |
| 17:00:26 | 9 | provided that funding was in place prior to the |
| 17:00:29 | 10 | critical date, correct? |
| 17:00:31 | 11 | MR. BELT: Objection. That |
| 17:00:32 | 12 | mischaracterizes his testimony. |
| 17:00:38 | 13 | A. I did not know contract particulars. |
| 17:00:42 | 14 | Q. (BY MR. ABRAHAMSEN) Did you know there was |
| 17:00:44 | 15 | some vehicle for providing money prior to the |
| 17:00:48 | 16 | critical date, in place prior to the critical date? |
| 17:00:57 | 17 | A. Um, I don't recall. |
| 17:00:59 | 18 | Q. What would you need to review to refresh |
| 17:01:02 | 19 | your recollection on that? |
| 17:01:03 | 20 | A. If I would have known, it would have been |
| 17:01:19 | 21 | because of discussions. I don't recall there being |
| 17:01:30 | 22 | a document that I was ever aware of. |
| 17:01:33 | 23 | Q. Discussions with whom? |
| 17:01:47 | 24 | A. I remember having a discussion -- telephone |

Samuel J. Petuchowski, PhD, Esq.                              03/22/2005

50

```
17:06:49   1   be provided?
17:06:54   2       A.   I -- I don't remember thinking about it.
17:07:02   3       Q.   Would you be surprised if there was not a
17:07:04   4   deliverable to be provided?
17:07:13   5            MR. BELT:  To the government, you mean?
17:07:15   6       Q.   (BY MR. ABRAHAMSEN)  To the government.
17:07:21   7       A.   I know plenty of examples where the
17:07:26   8   contractor retains the prototype.
17:07:28   9       Q.   Okay.  Now, at the time you prepared the
17:07:32  10   non-provisional patent application that led to the
17:07:35  11   '683 patent and subsequently prosecuted that
17:07:38  12   application and the whole series of applications
17:07:40  13   here, beginning at the time you prepared the
17:07:43  14   provisional application, you were aware that AS&E
17:07:47  15   had a vehicle in place with the United States
17:07:51  16   government providing it funding to at least build a
17:07:56  17   prototype Mobile Cargosearch system, right?
17:08:01  18       A.   Yes.
17:08:01  19       Q.   Now, at that time, did you inquire with
17:08:05  20   anyone to satisfy yourself that that event was not
17:08:08  21   an invalidating offer for sale?
17:08:14  22       A.   I don't recall inquiring.
17:08:16  23       Q.   You don't recall asking anybody?  You don't
17:08:19  24   recall any conversations with Mr. Sunstein?
```

| | | |
|---|---|---|
| 17:08:22 | 1 | A. No. |
| 17:08:31 | 2 | Q. Do you wish you had investigated that |
| 17:08:34 | 3 | further at this point? |
| 17:08:35 | 4 | MR. BELT: Objection. |
| 17:08:51 | 5 | A. I had a complete understanding at the time |
| 17:09:01 | 6 | that they were in the process of developing a |
| 17:09:10 | 7 | product and that they were providing progress |
| 17:09:22 | 8 | reports. |
| 17:09:25 | 9 | Q. (BY MR. ABRAHAMSEN) Okay. Do you wish you |
| 17:09:36 | 10 | had inquired further? |
| 17:09:40 | 11 | A. No. |
| 17:09:48 | 12 | Q. Had you learned that there was a contract |
| 17:09:51 | 13 | in place prior to the critical date, would you have |
| 17:09:54 | 14 | inquired further? |
| 17:09:57 | 15 | MR. BELT: Objection. Calls for |
| 17:09:59 | 16 | speculation. Hypothetical. |
| 17:10:24 | 17 | A. I knew that the client only learned that |
| 17:10:34 | 18 | the product worked not long, months before the |
| 17:10:46 | 19 | provisional application was filed. Therefore, that |
| 17:10:52 | 20 | was not an issue. |
| 17:10:56 | 21 | Q. (BY MR. ABRAHAMSEN) So in your view, the |
| 17:11:00 | 22 | client would have to know a product works before |
| 17:11:03 | 23 | there could be a potential on sale bar? |
| 17:11:06 | 24 | MR. BELT: We've gone over that ground |

| | | |
|---|---|---|
| 17:15:20 | 1 | (Witness gesturing.) |
| 17:15:22 | 2 | Q.  And in your view, because a product hadn't |
| 17:15:25 | 3 | been built yet, there could be no on sale bar? |
| 17:15:28 | 4 | A.  No.  No.  That's a mischaracterization. |
| 17:15:32 | 5 | Q.  So what is the reason it's readily |
| 17:15:35 | 6 | considered? |
| 17:15:49 | 7 | A.  Because there was neither reduction to |
| 17:15:52 | 8 | practice before the critical date nor drawings that |
| 17:15:57 | 9 | were sufficiently specific to enable a person |
| 17:16:01 | 10 | skilled in the art to practice the invention. |
| 17:16:05 | 11 | Q.  Prior to the critical date, there weren't |
| 17:16:08 | 12 | drawings specifically specific to enable one of |
| 17:16:10 | 13 | ordinary skill in the art to practice the |
| 17:16:13 | 14 | invention?  You reached that conclusion without |
| 17:16:15 | 15 | even considering the issue?  I'm confused.  How |
| 17:16:20 | 16 | much consideration did you give that question? |
| 17:16:27 | 17 | A.  I considered it that there's no, um -- |
| 17:16:42 | 18 | there's no documentation that I'm aware of of the |
| 17:16:44 | 19 | consideration. |
| 17:16:50 | 20 | Q.  And you considered it when after Pfaff v. |
| 17:16:55 | 21 | Wells? |
| 17:16:55 | 22 | A.  It's -- it's something that was going on in |
| 17:17:02 | 23 | our minds, since we were very closely involved with |
| 17:17:07 | 24 | the work of this client, understanding the -- the |

82

```
 1                              Volume:    II
 2                              Pages:     82-230
 3                              Exhibits:  56-74
 4        IN THE UNITED STATES DISTRICT COURT
 5        FOR THE DISTRICT OF MASSACHUSETTS
 6        CIVIL ACTION NO. 04-CV-10339-GAO
 7    - - - - - - - - - - - - - - - - - - - - - x
 8    L3 Communications Security and Detection
 9    Systems Corporation Delaware,
10                   Plaintiff,
11         v.
12    American Science and Engineering, Inc.,
13                   Defendant.
14    - - - - - - - - - - - - - - - - - - - - - x
15
16             CONTINUED DEPOSITION OF
17         SAMUEL J. PETUCHOWSKI, PhD, ESQUIRE
18             Wednesday, March 23, 2005
19                      9:10 a.m.
20             WOLF GREENFIELD & SACKS, P.C.
21                 600 Atlantic Avenue
22            Boston, Massachusetts 02210-2206
23
24    Reporter:  Lori-Ann London, RPR
```

BROMBERG & SUNSTEIN LLP
RECEIVED
APR 0 7 2005

BROMBERG & SUNSTEIN LLP
RECEIVED
APR 0 7 2005

```
 1   A P P E A R A N C E S:
 2
 3   WOLF, GREENFIELD & SACKS, P.C.
 4   By Robert M. Abrahamsen, Esquire
 5   600 Atlantic Avenue
 6   Boston, Massachusetts 02210-2206
 7   617.720.3500
 8   rabrahamsen@wolfgreenfield.com
 9   Appearing for the Plaintiff
10
11   BROMBERG & SUNSTEIN LLP
12   By John F. Ward, Esquire and
13   Erik Paul Belt, Esquire
14   125 Summer Street
15   Boston, Massachusetts 02110-1618
16   617.443.9292
17   jward@bromsun.com
18   ebelt@bromsun.com
19   Appearing for the Defendant
20
21
22
23
24
```

97

1   A   No.

2   Q   So while you were prosecuting the
3   nonprovisional patent applications, you also had
4   no reason to believe that the examiner's attention
5   had been drawn to the fact that Mobile CargoSearch
6   was proposed in January 1994; is that correct?

7   A   The examiner had a copy of the proposal,
8   so that is not correct.

9   Q   But did you understand that the examiner
10  had been made aware of -- that Mobile CargoSearch
11  was proposed in January 1994 when you were
12  prosecuting the nonprovisional patent
13  applications?

14  A   Yes, the examiner had a copy of the
15  proposal.

16  Q   But did you know that the examiner's
17  attention had been drawn to this sentence?

18  A   Not to this sentence, no.

19  Q   Did you have --

20  A   That his attention had been -- I can't
21  answer what his attention was drawn to.  I know
22  the documents that were before him.

23  Q   When you were prosecuting the
24  nonprovisional patent applications, did you have

102

1  on.
2      Q    Is the answer to the question yes or no,
3  Doctor?
4      A    The answer is that I knew that this
5  document was before the examiner.
6      Q    That wasn't my question.  The question
7  is -- was:  Did you believe during the prosecution
8  of the nonprovisional patent applications that the
9  examiner had been made aware that a proposal was
10 submitted to the U.S. Army before the critical
11 date of the applications?
12     A    Yes.
13     Q    You did know that?
14     A    Absolutely.  I don't know about the
15 specifics as to the Army.  This does say Army, and
16 it -- I mean, it doesn't have the specific date
17 that you're talking about, but yeah.
18     Q    So during the prosecution of the patent
19 application, you thought that the examiner had
20 been made aware that a proposal was submitted
21 before the critical date?
22          MR. WARD:  Asked and answered.
23          Could you read the last full
24 question and answer back that precedes the

Case 1:04-cv-10339-RWZ    Document 87-9    Filed 08/17/2005    Page 14 of 17
Samuel J. Petuchowski, PhD, Esq., Vol. II                            03/23/2005

104

1   Q   It's specific to this patent. During
2   the prosecution of this patent application.
3   A   During the prosecution of this patent, I
4   knew that the examiner had before him the
5   provisional applications and the appendices
6   attached to it.
7   Q   But did you think that the examiner had
8   been made aware that a proposal was submitted to
9   the U.S. Army prior to the critical date?
10  A   Yes.
11  Q   And what was the basis of that belief?
12  A   The appendix to the provisional
13  application.
14  Q   Any particular part, please identify it?
15          MR. WARD:  Just to clarify the
16  question, are you asking for his memory of what
17  was in his mind while prosecuting the application,
18  or as he sits here today, does he believe that the
19  examiner was aware of the information?
20          MR. ABRAHAMSEN:  During the
21  prosecution of the patent application, I'm asking
22  whether he was aware --
23  Q   Or what -- what was the basis of you
24  being -- thinking that the examiner had been made

106

1  question.

2          MR. ABRAHAMSEN: For the record, the
3  witness is perusing the exhibit I believe looking
4  for a disclosure that he supposedly submitted to
5  the U.S. Army prior to the critical date.
6      A    It says that Mobile CargoSearch was
7  proposed in January 1994.
8      Q    And I think your testimony a little
9  while ago was that you were not aware of that
10 sentence at the time that you were prosecuting the
11 nonprovisional patent applications --
12         MR. WARD: Objection.
13     Q    -- is that not correct?
14     A    I don't recall having given it any
15 thought whatsoever.
16     Q    But it was your belief during the
17 prosecution of the nonprovisional patent
18 applications that the examiner had been apprised
19 that a proposal was submitted to the United States
20 government prior to the critical date?
21         MR. WARD: Asked and answered.
22     A    I knew that the examiner had before him
23 the appendices to the provisional application. I
24 don't remember having considered the details of

108

1           MR. WARD: Objection. Asked and
2   answered.
3       A   The examiner knew everything that I
4   knew.
5       Q   That's your belief?
6           THE STENOGRAPHER: I'm sorry?
7           MR. WARD: You have to say yes or
8   no, Sam.
9       A   Yes. Yes.
10      Q   You knew that a proposal was submitted
11  to the U.S. Army in January of 1994; is that
12  correct?
13          MR. WARD: Objection. That's a mis-
14  characterization of his testimony.
15      A   I don't remember whether I was aware of
16  the date. I had seen the proposal.
17      Q   Did you ever consider disclosing to the
18  patent examiner additional facts concerning the
19  proposal or the contract during the prosecution of
20  any of the nonprovisional patent applications?
21      A   No.
22          MR. WARD: Objection as to form.
23      Q   You did not consider that?
24      A   Consider disclosing -- I -- no.

1   Q   And which activities were part of the
2   contract?
3   A   I think there we get into --
4        MR. WARD:  I instruct the witness
5   not to answer.
6   Q   I'm not asking for any -- what was
7   communicated to you by anybody.  I just want to
8   know what your state of mind was.
9        What activities were part of the
10  contract irrespective of how you learned that
11  information?
12  A   The development that led to what AS&E
13  refers to as truck one were considered to have
14  been conducted by AS&E in their performance under
15  the contract.
16  Q   Is that the only thing that was under
17  the contract?
18       MR. WARD:  Objection.  Are you
19  asking for what his understanding of --
20       MR. ABRAHAMSEN:  Of course.
21       MR. WARD:  -- what was under the
22  contract or...
23       He's asking whether you knew -- are
24  you aware of anything else that was under the