UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-10339-RWZ

L-3 COMMUNICATIONS SECURITY AND
DETECTION SYSTEMS CORPORATION DELAWARE

v.

AMERICAN SCIENCE & ENGINEERING, INC.

MEMORANDUM OF DECISION

September 16, 2005

ZOBEL, D.J.

Plaintiff L-3 Communications Security and Detection Systems Corporation Delaware and defendant American Science & Engineering, Inc. both develop and market x-ray detection systems, among other technologies. For the past ten years, these parties and their predecessors in interest have been engaged in litigation concerning various patents for x-ray equipment. To resolve some of these disputes, defendant entered a covenant not to sue plaintiff as to certain of defendant's patents. However, defendant declined similar comfort regarding its U.S. Patent Number 6,292,533 (the "'533 patent") and U.S. Patent Number 5,903,623 (the "'623 patent") concerning mobile x-ray technology. Because plaintiff feared further suit on these patents, it filed the instant action seeking declaratory judgment of non-infringement, as well as invalidity and unenforceability of both patents. The latter two are the subject of the present motions.

With respect to invalidity, plaintiff asserted as prior art a government contract that obligated defendant to provide a mobile x-ray system allegedly equivalent to the system described in the '533 and '623 patents (the "Mobile CargoSearch Contract"). Plaintiff's unenforceability claim focuses on defendant's failure to affirmatively state the effective date of the Mobile CargoSearch Contract in its provisional application underlying the '533 and '623 patents. Plaintiff now moves for partial summary judgment on Count 2 regarding invalidity of claims 1-7, 9, 11-13, 19-21, 23-30, 32, 34-36, 42-48, 50, 52 and 53 of the '623 patent, while defendant moves for partial summary judgment on the assertion of unenforceability of the '533 and '623 patents. In connection with its opposition to defendant's motion, plaintiff also moves to compel production of certain documents.

Plaintiff's motion challenges the validity of 36 claims set forth in the '623 patent, under 35 U.S.C. § 102(b). "A patent is invalid if the patented device was publicly used or on-sale in the United States more than one year before the date on which the patent application was filed." Monon Corp. v. Stoughton Trailers, Inc., 239 F.3d 1253, 1257 (Fed. Cir. 2001). The date "one year prior to the date on which the patent application was filed" is known as the "critical date." Id. The on-sale bar applies to devices that are both the subject of a commercial offer for sale and ready for patenting before the critical date. See id. The commercial sale of a device triggers the on-sale bar if the device fully anticipates or renders obvious the invention claimed in the patent. Tec-Air, Inc. v. Denso Mfg. Michigan Inc., 192 F.3d 1353, 1358-1359 (Fed. Cir. 1999). The device may be shown ready for patenting "by proof of reduction to practice before the

2

critical date; or by proof that prior to the critical date the inventor had prepared drawings or other descriptions of the invention that were sufficiently specific to enable a person skilled in the art to practice the invention." Pfaff v. Wells Electronics, Inc., 525 U.S. 55, 67-68 (1998). Such sufficiency exists when the inventor is "able to prepare a patent application," understanding that "conception can occur before the inventor has verified that his idea will work." Space Systems/Loral, Inc. v. Lockheed Martin Corp., 271 F.3d 1076, 1080 (Fed. Cir. 2001). On the other hand, the need for further development and verification indicates that "the invention is not yet ready for patenting." Id.

In the instant case, the '623 patent derived from a provisional application dated February 12, 1996. Thus, the corresponding critical date of February 12, 1995, represents the earliest date on which a commercial offer for sale of technology ready for patenting could occur without invalidating the '623 patent. Plaintiff argues that the Mobile CargoSearch Contract, dated October 19, 1994, constituted a commercial offer for sale of a device that fully anticipated certain claims set forth in the '623 patent and was ready for patenting and, thus, invalidates those claims. Defendant counters that the device sold through the Mobile CargoSearch Contract did not fully anticipate or render obvious the 36 claims of the '623 patent. Specifically, defendant argues that its expert, Dr. Joseph A. Callerame, testified that the device sold did not anticipate the '623 patent requirement that the x-ray system produce a radiation beam that traverses the object being inspected. Defendant also notes that Dr. Callerame identified a steering arrangement in the '623 patent that the device sold did not disclose. However,

3

review of Dr. Callerame's deposition clarifies that his doubt regarding traversal depended on the type of object being inspected. For example, while Dr. Callerame questioned the ability of the device sold to emit a beam that traverses a truck, he agreed that Figure 8-A of the Mobile CargoSearch Contract accurately depicted a beam capable of traversing a car. See App. of Ex. in Supp. of AS&E's Opp. Ex. A (Callerame Dep.) 157:2-3. In other words, he did not find the device sold to be incapable of emitting a beam that traverses the object inspected, as characterized by defendant, but instead, opined that the beam for the device sold may not necessarily traverse every potential object to be inspected. With respect to the steering arrangement, Dr. Callerame declined to opine on whether the device sold contained a steering arrangement for the beam, as the figure he reviewed did not indicate a means for aiming the beam up or down. See id. at Ex. A, 243:8-10. In light of Dr. Callerame's testimony, defendant's two defenses to the claim of a qualifying commercial offer for sale are not persuasive.

  Defendant next contends that the Mobile CargoSearch Contract did not disclose technology ready for patenting before the critical date. Neither party asserts that defendant had reduced the technology to practice prior to February 12, 1995. Rather, plaintiff claims that the drawings and descriptions included in the Mobile CargoSearch Contract outlined the device in sufficient detail to enable a person skilled in the art to construct the mobile x-ray system set forth in the '623 patent before the critical date. In support of its allegation, plaintiff compares the drawings in the '623 patent with those in the Mobile CargoSearch Contract to reveal them as essentially identical. Plaintiff also

4

offers an extensive chart of the sameness and similarities between the '623 patent claim language at issue and the contract language.  Lastly, plaintiff observes that the device sold under the contract originated from a non-mobile x-ray system previously built by defendant and simply adapted for mobility.  Defendant, on the other hand, points to language in the Mobile CargoSearch Contract regarding the developmental posture of the device sold and the design tasks remaining undone as of both the effective and critical dates.  According to defendant, this language, plus the revision of designs throughout 1995, demonstrates that the device continued to be developed after the critical date and thus was not ready for patenting prior to February 12, 1995.

Even considering the evidence in the light most favorable to defendant, nothing in the contract language or design revisions appears to have influenced defendant's articulation of the claims challenged in the '623 patent.  For example, defendant lists the differences that Dr. Callerame identified between the device sold under the Mobile CargoSearch Contract and defendant's previously constructed non-mobile x-ray system.  However, defendant never suggests – and the record does not support a finding – that the Mobile CargoSearch Contract failed to account for these differences or that execution of these differences resulted in any substantive changes to the '623 patent language as distinct from the contract language.  To challenge plaintiff's claim comparison chart, defendant relies upon Dr. Callerame's doubt regarding the ability of the beam in the device sold to traverse certain vehicles and his non-opinion on the steering arrangement that the device sold may or may not have included.  On the basis of this testimony, defendant argues that the Mobile CargoSearch Contract did not fully

anticipate any of the claims in the '623 patent containing the term "traverse" or "steering." However, the qualifications expressed by Dr. Callerame hardly undermine the derivative relationship between the Mobile CargoSearch Contract and the '623 patent, especially as the same depictions of the beam and ambiguous steering arrangement in question appear in both the contract and the '623 patent. See App. of Ex. in Supp. of AS&E's Opp., Ex. B ('623 Patent), Fig. 5A and 5B, and Surreply Decl. of Abrahamsen in Supp. of L-3's Opp., Ex. 1 (Mobile CargoSearch Contract) Fig. 8A and 8B. Dr. Callerame also recognized differences between the numbering systems used by the contract and the '623 patent to label certain figures. See App. of Ex. in Supp. of AS&E's Opp. Ex. A (Callerame Dep.) 157:223-227. Defendant trumpets this distinction but fails to reconcile Dr. Callerame's observation with the fact that the contract and the patent actually use substantially similar word descriptions for the parts of the figures, regardless of differences in numbering. See App. of Ex. in Supp. of AS&E's Opp., Ex. B ('623 Patent), col. 6, lines 37-38, and Surreply Decl. of Abrahamsen in Supp. of L-3's Opp., Ex. 1 (Mobile CargoSearch Contract) Fig. 6. Defendant also argues that the identification of six technical analysis "action items" at the preliminary design review meeting on February 14, 1995, illustrated the need for additional development after the critical date. However, defendant never explains, even briefly, the nature of further analysis required, much less how the analysis may or may not have affected the claims in the '623 patent. See App. of Ex. in Supp. of AS&E's Opp. Ex. F, App. A. While defendant's arguments indicate that further testing and analysis occurred in order to reduce the device sold to practice, they do not show that preparation of the patent

6

application underlying the '623 patent relied upon the performance of such additional work.

Defendant's final challenge to plaintiff's motion asserts the lack of a case or controversy on the basis that the '623 patent concerns x-ray inspection through backscatter imaging, and plaintiff produces no technology that uses such imaging. Plaintiff disputes this assertion and notes that defendant has not acknowledged any such constraint in its threats to sue for infringement. Because defendant offers no evidence to support its allegation, its argument fails. Accordingly, plaintiff's motion for partial summary judgment of invalidity of claims 1-7, 9, 11-13, 19-21, 23-30, 32, 34-36, 42-48, 50, 52 and 53 of the '623 patent is allowed.

As to defendant's motion for partial summary judgment on the enforceability of both the '533 and '623 patents, a patent may be unenforceable if the patentee, with intent to deceive, neglected to disclose material information in its application to the U.S. Patent and Trade Office (the "USPTO"). See Frazier v. Roessel Cine Photo Tech, Inc., 417 F.3d 1230, 1234 (Fed. Cir. 2005). Because defendant assumes the materiality of the information in question, whether the '533 and '623 patents are enforceable depends solely on its intent.[1] To demonstrate requisite intent,

> ... the alleged conduct must not amount merely to the improper performance of, or omission of, an act one ought to have performed. Rather, clear and convincing evidence must prove that an applicant had the specific intent to accomplish an act that the applicant ought not to have performed, *viz.*, misleading or deceiving the PTO.

Molins PLC v. Textron, Inc., 48 F.3d 1172, 1181 (Fed. Cir. 1995). "Generally, intent

---

[1] Although defendant appears to retreat from this assumption in its Reply, consideration of materiality is moot based on the subsequent discussion of intent.

7

must be inferred from the facts and circumstances surrounding the applicant's conduct." Id. at 1180-1181. Plaintiff's Amended Complaint accused defendant of failing to disclose the 1994 effective date of Mobile CargoSearch Contract and, thereby, misleading the USPTO as to the existence of relevant and potentially invalidating prior art. Defendant asserts that the provisional application underlying patents '533 and '623 specifically referenced the contract and detailed the x-ray system to be provided under its terms. As this dispute of fact renders summary judgment inappropriate on the present record, defendant's motion is denied.

Plaintiff's motion to compel contends that it had not, as of the time of these motions, completed discovery on the issue of unenforceability. However, plaintiff's basis for compelling further production of documents on this matter offers little evidence to undermine the accuracy of defendant's privilege log. Moreover, defendant provides in its response to the motion additional information regarding certain documents listed on the log. The Court is not persuaded that review by plaintiff of defendant's invoices will shed further light on the issue. Plaintiff's motion to compel is, therefore, denied.

Accordingly, plaintiff's motion for partial summary judgment (#61 on the docket) is allowed. Defendant's motion for partial summary judgment (#31 on the docket) and plaintiff's motion to compel production of certain documents (#85 on the docket) are both denied.

| | |
|---|---|
| _____<br>DATE | /s/ Rya W. Zobel<br>RYA W. ZOBEL<br>UNITED STATES DISTRICT JUDGE |

8