UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| L-3 COMMUNICATIONS SECURITY AND DETECTION SYSTEMS CORPORATION DELAWARE<br><br>Plaintiff and Counter-defendant<br><br>v.<br><br>AMERICAN SCIENCE & ENGINEERING, INC.<br><br>Defendant and Counterclaimant | Civil Action No. 04-10339-RWZ |

**AS&E'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR RECONSIDERATION OF PARTIAL SUMMARY JUDGMENT AND, IN THE ALTERNATIVE, ENTRY OF FINAL JUDGMENT AND A STAY PENDING APPEAL**

AS&E seeks reconsideration of the Court's summary judgment decision of September 16, 2005, invalidating certain claims of U.S. Patent No. 5,903,623 ("the '623 patent") under the on-sale bar of 35 U.S.C. § 102(b). Reconsideration is appropriate for two reasons. First, there is <u>new</u> evidence that bears on the issue. Specifically, in its recent reissue examination of the related '929 patent, the United States Patent & Trademark Office ("PTO") considered the October 1994 contract at issue (The "Contract") and did not find that it triggered an on-sale bar. That finding at least creates an issue of fact sufficient to preclude summary judgment.

Second, reconsideration will allow the Court an opportunity to address two legal errors. In ruling that (a) the Mobile CargoSearch mobile x-ray inspection system disclosed in the Contract anticipates the claims at issue and (b) this Court has declaratory judgment jurisdiction to invalidate those claims, this Court apparently shifted the burden of proof onto AS&E and inappropriately weighed or discounted AS&E's evidence.

Thus, AS&E asks the Court to (a) reconsider its ruling of September 16, 2005; (b) deny L-3's motion for summary judgment; and (c) dismiss L-3's complaint for lack of declaratory judgment jurisdiction as to the claims requiring backscatter imaging.

In the alternative, under Fed. R. Civ. P. 54(b), AS&E moves for entry of final judgment as to the invalidated claims (Claims 1-7, 9, 11-13, 19-21, 23-30, 32, 34-36, 42-48, 50, 52 and 53 of the '623 patent). AS&E will then appeal the judgment to the Court of Appeals for the Federal Circuit. To facilitate that appeal and for the sake of judicial economy, AS&E also seeks a stay of these proceedings pending the appeal.

## ARGUMENT

When new evidence raises a disputed issue of material fact, a court has inherent authority to consider that evidence and modify its ruling on partial summary judgment. *Eascare, LLC v. Cape Cod Healthcare, Inc.*, 2004 WL 989125, *1 (D. Mass. May 6, 2004) (Zobel, J.) (reversing entry of partial summary judgment upon consideration of new evidence). Reconsideration is also appropriate when a court determines that it must reevaluate the legal standard used in its initial ruling. *Palomar Medical Tech. v. Cutera, Inc.*, 2004 WL 903807, *1 (D. Mass. April 28, 2004) (Zobel, J.). Other grounds for reconsideration include legal error, overlooked grounds, and misapprehension of the evidence. *See, e.g., Graham v. Malone Freight Lines,* 43 F. Supp.2d 77, 78 (D. Mass. 1997) (Gertner, J.); *Desrosiers v. Great Atlantic & Pacific Tea Co.*, 885 F. Supp. 308, 313 (D. Mass. 1995) (Ponsor, J.).

These grounds for reconsideration apply here. As argued in Section I, new evidence, not available during the summary judgment briefing, at least creates an issue of fact sufficient to preclude summary judgment. As argued in Section II, an incorrect legal standard was applied that likely affected the outcome.

### I.     NEW EVIDENCE REQUIRES RECONSIDERATION

New evidence casts doubts on the propriety of summary judgment. That new evidence recently emerged from the reissue proceedings currently underway in connection with AS&E's United States Patent No. 6,252,929 ("the '929 patent"). **Exh. 1** (AS&E's U.S. Patent No. 6,252,929).[1] The '929 patent is in the same family as the '623 patent and, like the '623 patent, is directed to mobile x-ray inspection systems. Just a day before this Court issued its summary judgment ruling, AS&E received word from the PTO that the PTO did not consider the Contract to trigger the on-sale bar. The PTO's determination is significant because L-3 itself (a) demanded that AS&E submit the Contract to the PTO and (b) argued that the PTO's examination of the Contract in relation to the '929 patent is relevant to this Court's consideration of the summary judgment issues.

Accordingly, there is now a discrepancy between the Court's view of the Contract and the PTO's. That discrepancy at least creates an issue of fact as to whether the Contract triggers the on-sale bar and, in any event, shows that reconsideration is warranted. *See Fromson v. Advance Offset Plate, Inc.*, 755 F.2d 1549, 1555 (Fed. Cir. 1985) ("The Examiner's decision, on an original or reissue application, is never binding on a court. It is, however, evidence the court must consider in determining whether the party asserting invalidity has met its statutory burden by clear and convincing evidence") (emphasis added); *see also Casa Office Machs. v. Mita Copystar America, Inc.*, 42 F.3d 668, 685-86 (1st Cir. 1994) (possibility of "multiple interpretations" of the same evidence supported court's denial of summary judgment).

---

[1] All exhibits are attached to the accompanying Declaration of Samuel J. Petuchowski (the "Petuchowski Decl.").

More specifically, in March 2005, L-3 sent AS&E a letter demanding that AS&E submit the Contract to the PTO. In that letter, L-3 contended that the prior art sale evidenced in the Contract and alleged to trigger the on-sale bar to the '623 patent "would render unpatentable the pending claims of the reissue application for the <u>same</u> reasons." **Exh. 2,** Letter from Robert M. Abrahamsen, Esq., to John L. Conway, Esq., dated March 21, 2005 (emphasis added).

In a follow-up letter, L-3 demanded that AS&E submit additional materials to the PTO. **Exh. 4,** Letter from Attorney Abrahamsen to Samuel J. Petuchowski, Esq., dated April 6, 2005. AS&E's patent counsel, Sam Petuchowski, complied with L-3's demands; requested that the PTO continue the reissue proceedings so that it could examine the Contract in light of L-3's allegations; and submitted to the PTO the Contract, summary judgment briefs, and related materials. *See* Petuchowski Decl. at ¶¶ 3-5.

In addition to arguing that the '929 patent would be invalidated for the "same reasons" as the '623 patent claims (and thus admitting the close relationship of the reissue proceedings to the summary judgment dispute), L-3 stated that prosecution of the '929 related could "directly affect the enforceability of at least one of the two patents-in-suit." **Exh. 3**, E-mail from L-3's counsel to AS&E's counsel, dated March 18, 2005. Thus, L-3 alleged, in effect, that the PTO's consideration of the Contract in connection with the '929 reissue claims would be relevant to this Court's consideration of the Contract in relation to the '623 patent claims.

The day before the Court issued its summary judgment ruling, AS&E received a non-final office action in which the PTO examiner did not find that the Contract constituted an on-sale bar to the pending reissue claims of the '929 patent. *See* Petuchowski Decl. at ¶¶ 9-11 and **Exh. 5,** Office Action dated September 12, 2005. Instead, the PTO examiner merely raised a question as to whether AS&E's Model 101 Van (which is <u>not</u> a MobileSearch truck), which is

4

also referenced in the Contract as background material, renders the pending reissue claims obvious. *Id*. As Dr. Petuchowski explains, however, the Model 101 Van is not a mobile x-ray inspection system of the type claimed in the '623 and '929 patents (*i.e.*, is not a MobileSearch system) and thus does not render the claims obvious. *Id*. at ¶¶ 9, 11 and **Exh. 6,** Response to Office Action, dated September 21, 2005.

That the examiner chose to cite another product (the Model 101 Van) rather than the Mobile CargoSearch truck, and did not raise the on-sale bar (despite having before him L-3's summary judgment briefs and related materials) is significant. As seen above, L-3 has argued that the PTO's consideration of the Contract in relation to the '929 reissue patent is relevant to this Court's consideration of the '623 patent. Indeed, the two patents are related – they share the same specifications and build from the same original application. Thus, when the PTO examiner reviewed the Contract in relation to the '929 patent, he had before him the same technical drawings on which L-3 relies to support is on-sale bar argument. The Court relied on those same drawings when it concluded that claims of the '623 were invalid due to their "derivative relationship" with the Contract. Memorandum of Decision at 6. The PTO examiner viewed the same drawings and concluded the opposite. The PTO's view of the same evidence is entitled to deference. *American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1359 (Fed. Cir. 1984) (PTO examiner is presumed to have done his job properly and is presumed to have the view of one of ordinary skill in the art). [2]

---

[2] AS&E has now filed a response to the PTO's non-final office action and anticipates a positive result. *See* Petuchowski Decl. at ¶ 12. AS&E will keep the Court posted as to the PTO's reaction. Allowance of the '929 reissue claims will cast further doubt on the summary judgment ruling.

5

As argued in the next section, one of ordinary skill in the art would not view the drawings as anticipating the claims at issue. Certainly the PTO examiner saw it that way. Respectfully, the Court erred when it substituted its view of the drawings and its reading of the patent for that of a scientist or engineer in the x-ray inspection industry.

## II.    THE COURT IMPROPERLY SHIFTED THE BURDENS OF PROOF

As argued below, reconsideration will allow the Court to address two instances in which L-3 was relieved of its burden of proof. First, L-3 has the burden of proving invalidity by clear and convincing evidence sufficient to overcome the presumption of validity. *Poly-America, L.P. v. GSE Lining Technology, Inc.,* 383 F.3d 1303, 1308 (Fed. Cir 2004) (no on-sale bar because plaintiff failed to provide clear and convincing evidence to overcome presumption that defendant's patent is valid). But it appears from the Memorandum of Decision that the Court focused on, and tested the sufficiency of, AS&E's evidence, not L-3's evidence. That is not the standard under Rule 56 when the moving party bears the burden of proof. Rather, the moving party bearing the burden of proof must satisfy an even "more stringent standard." *Moore's Federal Practice 3rd,* § 56.13[1] at 141*; see also National Presto Indus. Inc. v. West Bend Co.*, 76 F.3d 1185, 1189 (Fed. Cir. 1996) (heightened scrutiny applied to party seeking summary judgment of invalidity). L-3's evidence was not sufficient, however.

Second, L-3 has the burden of proving the two prongs of the test for declaratory judgment jurisdiction. Specifically, L-3 must provide evidence of (1) an explicit threat or other action by AS&E giving rise to a reasonable apprehension of suit and (2) present activity that could constitute infringement of the patents in suit. *Cygnus Therapeutics Systems v. ALZA Corp.*, 92 F.3d 1153, 1159 (Fed. Cir. 1996). But again, this Court appears to have examined AS&E's

evidence rather than L-3's lack of evidence to satisfy either one of the two prongs. Both of these issues are addressed in more detail below.

> A. **THE COURT IMPROPERLY PROVIDED ITS OWN INTERPRETATION OF THE CONTRACT WHEN L-3 FAILED TO PROVIDE EVIDENCE TO CONTRADICT DR. CALLERAME'S TESTIMONY**

To rebut L-3's argument that the Contract discloses a prior art sale of a Mobile CargoSearch truck, AS&E offered the testimony of Dr. Callerame. Dr. Callerame is an AS&E scientist who, at his deposition, was asked how one of ordinary skill in the art would read the patent and the disclosures in the Contract. Dr. Callerame pointed out several differences between the '623 patent claims and the drawings in the Contract. Dr. Callerame also testified that the mobile x-ray inspection system was not yet ready for patenting as of the critical date. *See* **Exh. A** to AS&E's Opposition to L-3's Motion for Partial Summary Judgment [Court Docket No. 66] at 170. L-3, however, failed to offer the testimony of a technical witness to the contrary. No L-3 witness testified as to a one-to-one correspondence between the disclosure of the Contract and each and every limitation of the claims at issue.

The Court apparently declined to give credence to Dr. Callerame's testimony, and that is grounds for reconsideration. *See Overhead Door Corp. v. Chamberlain Group, Inc.*, 194 F.3d 1261, 1269-70 (Fed. Cir. 1999) (vacating summary judgment because overlooked testimony of technical expert created issues of fact); *Casas Office Machines, Inc. v. Mita Copystar America, Inc.*, 42 F.3d 668, 681-682 (1st Cir. 1994) (district court exceeded its authority when it improperly weighed or disregarded expert testimony).

The Court may not simply reject testimony on how a scientist or engineer from the x-ray inspection industry, like Dr. Callerame, would read the patent. Patents are addressed to practitioners in the art and must be viewed through their eyes. *Pitney Bowes, Inc. v.*

7

*Hewlett-Packard Co.*, 182 F.3d 1298, 1309 (Fed. Cir. 1999) ("a patent is both a technical and a legal document. While a judge is well equipped to interpret the legal aspects of the document, he or she must also interpret the technical aspects of the document, and indeed its overall meaning, from the vantage point of one skilled in the art."). Here, the Court granted summary judgment even though L-3 failed to produce clear and convincing evidence that the Contract anticipates the '623 patent. L-3 failed to provide a witness, one of ordinary skill in the art, to contradict Dr. Callerame's testimony that the Contract does not anticipate the '623 patent.

For instance, Dr. Callerame testified that the Contract did not show that the x-ray inspection system was configured for the radiation beam to "traverse" the object being inspected, as all of the claims-at-issue require. *See* **Exh. A** to AS&E's Opposition to L-3's Motion for Partial Summary Judgment [Court Docket No. 66] at 243-44. L-3 provided no evidence to contradict Dr. Callerame's testimony. Indeed, L-3 provided no witness at all and no claim chart showing a one-to-one correspondence between the Mobile CargoSearch truck that was allegedly on sale and each and every limitation of the thirty-six claims at issue.

When L-3 failed to provide evidence to contradict Dr. Callerame, the Court, *sua sponte*, provided a contrary interpretation of the Mobile CargoSearch system disclosed in the Contract and concluded that the Contract anticipates the '623 patent. L-3 provided no evidence upon which the Court could conclude that the differences between the Contract and the specifications of the '623 patent identified by Dr. Callerame "hardly undermine the derivative relationship between the Mobile CargoSearch and the '623 patent," as the Court found. Memorandum of Decision at p. 6.[3]

---

[3] Of course there is a "derivative relationship" between the Mobile CargoSearch truck that was the subject of the Army Contract and the '623 patent. That point is irrelevant, however. That

A Court may not superimpose its own ideas about the merits of evidence or the likely outcome of a dispute when ruling on a motion for summary judgment. *Federal Refinance Co., Inc. v. Klock,* 352 F.3d 16, 31 (1st Cir. 2003). Whether AS&E's evidence "undermines" the evidence presented by L-3 is not a proper consideration for the Court when ruling on summary judgment. Such determinations must be left for the jury to determine. *Greenburg v. Puerto Rico Maritime Shipping Auth.,* 835 F.2d 932, 937 (1st Cir.1987) (when the evidence conflicts, "the ultimate arbiter of the persuasiveness of the proof must be the factfinder, not the lawgiver"); *see also Eastman Kodak Co. v. Imaging Technical Servs., Inc.*, 504 U.S. 451, 456 (1992) (on summary judgment, the non-moving party's version of the facts is presumed correct).

### B. THE COURT SHIFTED THE BURDEN OF PROOF FROM L-3 TO AS&E WHEN RULING ON AS&E'S CHALLENGE TO DECLARATORY JUDGMENT JURISDICTION

There is a fundamental problem in L-3's declaratory judgment action. Certain claims of the '623 patent are directed to mobile x-ray inspection systems with so-called backscatter imaging.[4] The Contract at the heart of L-3's on-sale bar argument discloses a backscatter system. Accordingly, L-3 did not seek to invalidate those claims of the '623 patent (*e.g.*, Claim 8) that require transmission detection. Indeed, L-3 admits in its summary judgment brief (at footnote 2), that it is seeking to invalidate only those claims that call for backscatter detection.

---

there is a derivative relationship does not mean that the original truck anticipates (*i.e.*, discloses each and every limitation of) all thirty-six claims at issue. The Court, however, did not address the required one-to-one correspondence necessary to find anticipation under § 102(b) and thus made no findings to support the ruling.

[4] X-rays directed at an object to be scanned can do one of three things: pass through, get absorbed, or scatter. A system that detects an image created by x-rays that pass through the object is called a "transmission" system. A simply chest x-ray at the doctor's office is an example of transmission detection. A system that detects the x-rays scattered back towards the x-ray source is known as a backscatter system. Backscatter detection is use for detecting organic materials, such as contraband drugs or explosives.

But, as far as AS&E knows, L-3's mobile x-ray inspection systems do not employ backscatter imaging. They employ transmission imaging only. Thus, AS&E could <u>not</u> have accused L-3 of infringing those claims that require backscatter imaging.

The problem is that the Court based its ruling that there is declaratory judgment jurisdiction on L-3's unsupported and conclusory statement of counsel that L-3 at one time made a backscatter product. Specifically, this Court stated that "Plaintiff [*i.e.*, L-3] disputes this assertion [that it produces no backscatter system] and notes that defendant [AS&E] has not acknowledged any such constraint in its threats to sue for infringement. <u>Because defendant offers no evidence to support its allegations, its argument fails</u>." Memorandum of Decision at 7 (emphasis added).

It was not for AS&E to offer evidence, however, because L-3 bears the burden of proving the two prongs necessary to maintain declaratory judgment jurisdiction. In any event, AS&E provided ample evidence that L-3's mobile x-ray inspection systems are transmission only. *See, e.g.*, **Exh. H** to Appendix of Exhibits In Support of AS&E's Opposition To L-3's Motion For Partial Summary Judgment [Court Docket No. 67], Technical Specification for L-3's mobile inspection system model CX-450M ("The CX-450M sets itself apart from other mobile systems by producing a superior <u>transmission</u> image"). Thus, the Court was mistaken to find that AS&E provided "no evidence to support its allegation" that L-3 has failed to carry its burden on jurisdiction. The Court apparently overlooked that evidence.

To find a dispute, the Court apparently relied on the unsupported statement in L-3's summary judgment brief that "L-3 did, in the past, make a product that included scatter imaging." L-3's Reply Memorandum in Support of Its Motion for Partial Summary Judgment [Court Docket No. 117] at 14. That is the only reference to a possible backscatter product. But

10

L-3 provided no witness to attest to this alleged fact. Nor did it provide documents or other evidence of this allegation. Indeed, L-3 did not even list this alleged fact in a Rule 56.1 statement, as it was required to do. Accordingly, there can be no dispute.

The Court apparently credited L-3's conclusory assertion that it once made a backscatter product and, in doing so, inappropriately shifted the burden of proving declaratory judgment jurisdiction from L-3 to AS&E. That is, the Court tested the sufficiency of AS&E's evidence (and overlooked it) rather than the sufficiency of L-3's unsupported statement.

L-3's statement is insufficient for three reasons. First, as a matter of law, a conclusory statement of counsel, unsupported by an exhibit or witness declaration, cannot be considered on summary judgment. *Federal Refinance Co. v. Klock*, 352 F.3d 16, 31 (Fed.Cir. 2003).

Second, the conclusory statement is rather vague. All it says is that, at one time, L-3 made a product with scatter imaging. But when did L-3 make that product? Was it during the life of the patents or long before the patents even issued (when, by definition, there can be no infringement)? And what kind of product? Was it a MobileSearch-like truck (complete with the claimed boom, beam stop, and other limitations of the claims) or was it some other product, *e.g.*, a stationary product that would not in any event infringe the patents? L-3 does not say.

Third, there can be no summary judgment if the allegation is unsupported by a numbered paragraph marshalling the evidence. Local Rule 56.1. Here, L-3 failed to submit a LR 56.1 statement to this effect.[5]

---

[5] The claims implicated in L-3's motion that require some form of scatter imaging are Claims 7, 9, 30, 32 and 48. Of course, to the extent that L-3 contends that the independent claims (1, 19, and 42-45) require backscatter imaging, then, for the same reason, there can be no declaratory judgment jurisdiction for them and for all of their dependent claims.

## III. ALTERNATIVELY, THE COURT SHOULD ENTER FINAL JUDGMENT UNDER RULE 54(b) AND STAY THESE PROCEEDINGS PENDING APPEAL

So that it can appeal a summary judgment ruling, a litigant may ask a court to make its partial summary judgment order a "final judgment" under Rule 54(b). *Digital Privacy, Inc. v. RSA Security, Inc.,* 199 F.Supp.2d 457, 459 (E.D.Vir. 2002) (certifying the grant of partial summary judgment as a "final order" and staying proceedings on remaining claims until appeal is concluded). District court certification of a judgment pursuant to Rule 54(b) must satisfy three criteria. *In Spiegel v. Trustees of Tufts College*, 843 F.2d 38 (1st Cir.1988). First, the judgment must have the "requisite aspects of finality." *Id*. at 43. Second, the district court must have made its decision to certify a final judgment while viewing all claims and parties in perspective. *See Id*. Third, the district court must make an "assessment of the equities" regarding any justifiable reasons to delay entry of a final judgment. *Spiegel*, 843 F.2d at 43.

All three criteria for Rule 54(b) certification are met here. First, the Court's ruling has the requisite finality for Rule 54(b) certification because the Court invalidated 36 claims of AS&E's '623 patent. Reconsideration notwithstanding, no matter what else happens through trial, those 36 claims of the '623 patent will be invalid at the end of these proceedings. Thus, the Court's ruling is final as to those claims.

Second, immediate certification of the Court's judgment will not prejudice L-3's ability to press its remaining claims. If, however, the Court refuses to certify the invalidity judgment, AS&E will be prejudiced in its ability to defend itself vigorously against L-3's inequitable conduct claims. As the Court has noted, a central question in L-3's inequitable conduct counts is whether AS&E submitted the Contract to the examiner of the '623 application. *See* Memorandum of Decision at 8. So long as the Contract remains "invalidating prior art," as the Court has held, then a jury will be more likely to suspect that AS&E intentionally withheld the

12

Contract from the USPTO during the examination of the patents in suit.  If the proceedings are stayed and AS&E is allowed to take an immediate appeal of the Court's ruling, however, AS&E will have the opportunity to proceed with this litigation free from that cloud of suspicion.

Finally, the equities weigh heavily in favor of immediate certification.  Immediate certification and a swift appeal will remove doubts concerning AS&E's patent rights more quickly than any other course of action.  The Court's ruling has created a "zone of uncertainty" around the patents for AS&E's family of backscatter inspection systems.  Immediate appeal will remove that uncertainty.  Thus, it will allow AS&E and others to better allocate their research dollars and make more informed market decisions.  Thus, there is no just reason to delay entry of final judgment under Rule 54(b), and stay these proceedings, while AS&E appeals the Court's ruling to the Federal Circuit.

## IV.   A STAY IN THE PROCEEDINGS WILL SAVE TIME AND MONEY

Courts stay proceedings while an appeal is taken from an interlocutory order granting partial summary judgment when a stay will prevent duplicative proceedings and preserve the resource of the parties and the Court.  *Digital Privacy, Inc. v. RSA Security, Inc.*, 199 F.Supp.2d 457, 460 (E.D.Va. 2002) (finding a stay appropriate to preserve judicial resources during appeal). *See also Dababnah v. West Virginia Board of Medicine*, 57 F.Supp.2d 355, 356 (S.D.W.Va. 1999) (staying all discovery while an appeal is taken on interlocutory order).

AS&E seeks a stay in these proceedings because it is in everyone's interest to have one trial.  A stay will prevent the waste that will result from the piecemeal trial of the parties' claims and guarantee that, if the Federal Circuit reverses the summary judgment ruling, it will do so before the trial of the parties' remaining issues.  Without a stay, the parties and the Court face the

regrettable prospect of multiple trials. Thus, a stay will likely preserve the resources of the court and the parties.

## CONCLUSION

Accordingly, and for the reasons set forth above, AS&E's motion for reconsideration should be granted and the Court's ruling on summary judgment vacated. In the alternative, this Court should enter final judgment under Rule 54(b) and stay further proceedings pending appeal.

Dated:  October 7, 2005                              AMERICAN SCIENCE AND
                                                     ENGINEERING, INC.

                                                     *By its attorneys*,


                                                     /s/ Erik P. Belt
                                                     Erik Paul Belt, BBO # 558620
                                                     John F. Ward, BBO # 646689
                                                     BROMBERG & SUNSTEIN LLP
                                                     125 Summer Street
                                                     Boston, Massachusetts 02110
                                                     Tel:  (617) 443-9292
                                                     Facsimile:  (617) 443-0004
                                                     ebelt@bronsum.com


01945/00511 434217.1