IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| L-3 COMMUNICATIONS SECURITY AND DETECTION SYSTEMS CORPORATION DELAWARE,<br><br>        Plaintiff,<br>v.<br>AMERICAN SCIENCE & ENGINEERING, INC.,<br><br>        Defendant. | CIVIL ACTION NO. 04-10339-RWZ |

## L-3'S OPPOSITION TO AS&E'S MOTION TO DISMISS

The Court should deny AS&E's motion to dismiss. The parties to this case have been engaged in patent disputes for at least seven years. It is time to finally resolve this matter.

**I.     BACKGROUND**

Defendant, American Science & Engineering, Inc. ( "AS&E"), owns a family of closely-related patents directed to its so-called MobileSearch technology. Plaintiff, L-3 Communications Security and Detection Systems, Inc. ("L-3"), makes and sells products that AS&E has repeatedly accused of infringing its family of patents. Indeed, since 1998, AS&E has either commenced or by its threats forced L-3 and its predecessors into three separate lawsuits, all of them relating to technology used in truck-mounted mobile X-ray inspection systems. AS&E's threats regarding its MobileSearch family of patents have never been limited to particular claims of particular patents, nor have they been directed to specific machines or technologies manufactured by L-3.

In February 2004, L-3 brought this most recent action to clear the air for L-3's future sales of mobile X-ray systems. L-3 seeks, among other things, a declaratory judgment that U.S. Patent No. 6,292,533, entitled "Mobile X-Ray Inspection System for Large Objects," issued

May 15, 2001 ("the '533 patent"), and U.S. Patent No. 5,903,623, also entitled "Mobile X-Ray Inspection System for Large Objects," issued May 11, 1999 ("the '623 patent"), are invalid.

The '623 patent includes fifty-seven claims. In March 2005, L-3 moved for summary judgment with respect to thirty-six of those claims. (D.I. 61). On September 16, 2005, the Court held that those claims were invalid due to the "on-sale bar" of 35 U.S.C. § 102(b). (D.I. 88). The Court found that every limitation from those thirty-six claims was embodied in a product AS&E sold to the United States Army in October 1994, several months before the critical date of February 12, 1995.

Those claims covered a mobile device for inspecting cargo with radiation, where the detection could be performed with a backscatter or sidescatter detector like that used in the product sold to the Army. The remaining twenty-one claims in the '623 patent, and the twelve claims of the '533 patent, differ from the prior art Mobile CargoSearch system primarily in that they require use of a transmission or forward scatter detector, in addition to, or in lieu of, a backscatter or sidescatter detector.

On November 16, 2005, L-3 moved for summary judgment of invalidity on the remaining claims of the patents-in-suit.[1] (D.I. 93-96). In that motion, L-3 argued that those of ordinary skill in the art used transmission or forward scatter detectors well before the critical date of these patents, and that numerous references, when combined with the prior art sale of the Mobile CargoSearch system to the Government, would have rendered all of the remaining claims obvious.

---

[1] AS&E mischaracterizes the sequence of events on the day L-3 filed its motion for summary judgment. (AS&E Memo. at 9.) L-3's litigation counsel, Robert M. Abrahamsen, was attending a lunch meeting from 12pm-1pm on November 16. AS&E's counsel, Erik P. Belt, left a message for Mr. Abrahamsen at 12:11pm on that day. L-3 filed its motion for summary judgment shortly before 12:43pm. Mr. Abrahamsen did not receive Mr. Belt's voicemail until after 1pm, well after the motion had been filed. AS&E's insinuation that L-3 somehow filed its motion in bad faith is improper.

AS&E's opposition to L-3's motion for summary judgment was due on November 30. Instead of responding to L-3's motion, AS&E filed the instant motion to dismiss. (D.I. 98-99). In that motion, AS&E reiterated its argument that the Court has no jurisdiction. E.g., D.I. 5; D.I. 66 at 11-12; D.I. 89; D.I. 90 at 9-11. The Court had repeatedly rejected that argument. See 5/19/04 Order; D.I. 88; 10/28/05 Order.

Apparently fearing that the patents-in-suit will be completely invalidated, AS&E is now seeking to escape from this lawsuit while still preserving its ability to threaten L-3 in the future with the same patents that are at issue here. By limiting its covenant not to sue to three specific products, AS&E will continue to wield its "Damoclean threat with a sheathed sword," Arrowhead Industrial Water, Inc. v. Ecolochem, Inc., 846 F.2d 731, 735 (Fed. Cir. 1988), over L-3's business activities. AS&E should either respond to L-3's motion for summary judgment of invalidity, or give L-3 an unconditional covenant not to sue on the patents-in-suit.

## II.    ARGUMENT

It is well established that a declaratory judgment action requires an "actual controversy." 28 U.S.C. § 2201. "Because we test the presence *vel non* of an actual controversy by reference to the facts of each case, generally applicable rules are few." Super Sack Manufacturing Corporation v. Chase Packaging Corporation, 57 F.3d 1054, 1058 (Fed. Cir. 1995). In this case, the critical facts are that (1) the parties have been embroiled in patent litigation for at least seven years; (2) AS&E has repeatedly threatened to sue L-3 on its family of patents directed to mobile X-ray cargo inspection systems, and has followed through on those threats; (3) L-3 has made various mobile X-ray cargo inspection systems in the past and may do so again in the future; and (4) AS&E has never limited its threats to particular products. If AS&E genuinely wants to lift the cloud that has hung over L-3's business activities for years, it must provide a covenant that

mirrors the threats it has made.[2] AS&E needs to covenant unconditionally that it will not sue L-3 again on the patents-in-suit.

### A.      AS&E's Past Litigation and Threats to Sue.

AS&E's current motion to dismiss must be considered in light of its long history of threatening to sue L-3 and its predecessors and actually suing L-3's predecessors. These threats were never limited to the transmission-only claims of its patents. The following details were covered at length in L-3's opposition (D.I. 7) to AS&E's first motion to dismiss (D.I. 4, 5). The facts can be found in the Declarations of Kirk Teska (D.I.8) and Mark Syrnick (D.I. 9), and exhibits to those declarations. In the interest of brevity, the specific citations to those declarations are not repeated below.

AS&E asserted the oldest patent in the MobileSearch family, United States Patent No. 5,764,683, against L-3's predecessor company in 1998 ("the 1998 Case"). In August 2001, counsel for L-3's predecessor sent a letter to AS&E's outside counsel proposing terms of a settlement. AS&E rejected the offer in October 2001, and made clear that it intended to enforce its entire family of MobileSearch patents against L-3's predecessor's products, <u>regardless</u> of whether such products employed backscatter imaging, transmission imaging, or both.

In another letter dated December 2001, AS&E offered to settle the two outstanding lawsuits against L-3's predecessor if it would agree to (1) covenant not to make, use, or sell any inspection system using backscatter technology, and (2) agree to a royalty-bearing non-exclusive license to AS&E's "suite" of MobileSearch patents for any transmission detection based

---

[2] AS&E puts great emphasis on L-3's earlier settlement offer of a more limited <u>Super Sack</u> statement. L-3's willingness to settle the case on certain terms, however, is irrelevant to the question of whether there remains a live controversy. L-3 has now expended considerable resources on this lawsuit, and intends to reach a resolution that will completely dispel the uncertainty over its business plans. What L-3 might have accepted before incurring the cost, time, and risk of this litigation need not be what it would accept now for a settlement, particular in the absence of an order for AS&E to pay L-3's attorneys fees.

products.  AS&E thus threatened to continue to litigate against L-3's predecessor on all types of products.

In June 2002, L-3 came under its current ownership.  The 1998 Case was still pending at that time, and AS&E immediately renewed its threats of litigation.  In October 2002 AS&E's counsel suggested that the '533 patent would be added to the suit imminently with respect to L-3's ongoing sales of mobile X-ray inspection systems.  After receiving that threat, L-3 served discovery requests on AS&E, asking it to identify any products accused of infringing the '683, '511, or '533 patents.  As the deadline for responding to those discovery requests approached, AS&E filed a motion to adopt a modified scheduling order that indicated its "present intention" to add the '533 patent to the complaint in that case.

In April 2003, the date of a status hearing in the then-pending case, L-3's Vice President and General Counsel had a discussion with AS&E's General Counsel.  During that conversation, AS&E's counsel told L-3's counsel that AS&E had "**a lot more patents**" it could assert against L-3, and that L-3 should "come around soon" and pay AS&E "a sum of money."  These statements were intended to, and did, communicate a threat that AS&E would assert additional patents, including those at issue here, from its MobileSearch family.

Later in the spring of 2003, L-3's counsel had several more conversations with AS&E's counsel.  During those conversations, AS&E's counsel again demanded that L-3 agree to (1) consent to not make, used or sell, any inspection systems using scatter technology, (2) pay AS&E royalties for a non-exclusive license to what AS&E called the "suite" of MobileSearch patents, and (3) acknowledge the validity of AS&E's patents.

During the summer of 2003, AS&E and L-3 continued to engage in settlement discussions.  In those discussions, AS&E expressly demanded payment from L-3 for its alleged

infringement of the "suite" or "family" of MobileSearch patents (which includes the '533 and '623 patents at issue in this action). AS&E further demanded that L-3 acknowledge the validity of those patents. L-3 refused, and sought assurance that it would not be sued under any of the remaining MobileSearch patents that were being held over its head. AS&E declined to provide any such assurance, and instead quite to the contrary continued to express its belief that L-3 was infringing the patents. Again, AS&E's demands were not limited to particular products.

In October 2003, L-3 proposed to settle the then-pending case with AS&E. The proposal was that AS&E grant L-3 a license on all of the patents filed as continuations of the '683 patent. AS&E rejected the proposal, stating that it would only settle certain claims for **past** damages that arose under the '533 patent. AS&E also refused to grant **any** prospective license to, or give any other assurance that L-3 would not be sued on any of the family of MobileSearch patents. AS&E specifically noted that its settlement proposal would not preclude future litigation.

Because AS&E consistently refused to covenant not to sue under its MobileSearch family of patents, a cloud remained over L-3's ability to invest in and make other decisions regarding its operations in this field of security technology. L-3 was thus forced to file the instant suit to finally resolve this uncertainty. AS&E's current attempt to reserve a future threat of litigation against L-3 would thus undermine the goal of finally resolving the parties' differences.

### B.   The Covenant Not To Sue Must Not Be Conditional.

The facts of this case are on point with <u>GFI, Inc. v. Franklin Industries et al</u>, 27 F. Supp. 2d 686 (N.D. Miss. 1998). In that case, the plaintiff argued that its covenant not to sue on a patent divested the court of jurisdiction to consider counterclaims relating to invalidity of that patent. The covenant in question stated that the plaintiff would "unconditionally agree not to sue these defendants for infringement as to any claim of the '213 patent based upon the products previously or currently manufactured and sold by them." <u>Id.</u> at 691. The court held

that, "[a]lthough the Plaintiff's covenant meets a number of the requirements under Super Sack, it is insufficient to divest this court of jurisdiction because at least two of the defendants, as evidenced by affidavits, plan to make a sofa that may later be said to infringe the claims of the '213 patent." Id. at 692. The court consequently denied the plaintiff's motion to dismiss the invalidity counterclaims. Id.

After the court denied the motion to dismiss, the plaintiff provided the defendant with a revised Super Sack statement. That covenant not to sue read as follows:

> GFI unconditionally agrees not to sue these defendants (or their distributors or customers) for infringement as to any claims of the '213 patent based upon the products previously, currently, **or in the future** manufactured or sold (to those distributors or customers) by these defendants.

GFI, Inc. v. Franklin Industries et al, 55 F. Supp. 2d 565, 567 (N.D. Miss. 1999) (emphasis supplied). The plaintiff further clarified that "its promise 'was intended to make clear that GFI will not sue [the Defendants] on the '213 patent **under any circumstances**.'" Id. (emphasis supplied). Noting that the plaintiff's former promise had been "too narrow," the court found that the revised covenant was sufficiently broad to divest it of jurisdiction over the matter, and dismissed the counterclaims for invalidity. Id.

As in the GFI cases, the accused infringer here has plans to make potentially infringing systems in the future. The covenant it has offered is "too narrow" to divest this Court of jurisdiction, since a reasonable apprehension of suit on these systems will remain. Because all of the claims of the patents-in-suit are actually invalid (see D.I. 93-97), this dispute would be best resolved by addressing the merits of L-3's motion for summary judgment. Alternatively, AS&E could provide a covenant like the one accepted by the court in GFI, and simply promise not to sue L-3 on the patents-in-suit "under any circumstances."

967518.2                                        - 7 -

### C. AS&E's Covenant Omits Several Models of Truck-Mounted X-ray Inspection Systems.

AS&E purported to provide a list of L-3's mobile x-ray inspection systems on page 4 of its Stipulation and Covenant Not To Sue. (D.I. 99 Ex. A). This list comprises only three models of L-3's mobile X-ray inspection systems: the CX-450M, the CX-2500M, and the CX-3800M. AS&E omitted, however, several systems that L-3 identified as among its mobile X-ray inspection systems in its Responses to AS&E's First Set of Interrogatories. At a minimum, AS&E's covenant not to sue must also include the MTXR, the MTXR-LUV, the MOBIX, and the CX-450M with backscatter, as well as any system not patentably distinct from any of those systems. As discussed above, however, to eliminate the live controversy in this case, AS&E should provide a <u>Super Sack</u> statement like that approved by the court in <u>GFI</u>, namely an unconditional covenant not to sue on the patents-in-suit.

### D. The Court Also Retains Jurisdiction to Decide L-3's Inequitable Conduct Claims.

It would also be inappropriate to dismiss the instant suit because the Court has not ruled on L-3's inequitable conduct claims. The Federal Circuit recently clarified that jurisdiction over a claim for unenforceability due to inequitable conduct is determined separately from the question of a reasonable apprehension of suit.

In <u>Fort James Corporation v. Solo Cup Company</u>, 412 F.3d 1340 (Fed. Cir. 2005), the panel held that a patentee's <u>Super Sack</u> covenant did **not** divest the district court of jurisdiction to hear an accused infringer's claim seeking a declaratory judgment of unenforceability because the covenant came after a finding that the defendant had not infringed the asserted claims. <u>Id.</u> at 1348. The Federal Circuit reasoned that whereas the typical covenant "obviated any reasonable apprehension that the declaratory judgment plaintiff might have of being held liable for its acts of infringement," the <u>Fort James</u> patentee's covenant had no effect on the infringement claim

because the non-infringement finding had already resolved the issue. The Federal Circuit accordingly remanded the case to the district court to resolve the declaratory judgment claims of unenforceability and for attorney's fees.

Similarly, in this case, the Court has already issued an opinion granting summary judgment finding some of the claims of the patents-in-suit invalid, and has before it another motion that would invalidate the remaining claims. Under the reasoning of Fort James, because the Court has already ruled on a significant issue in the case, it is now too late for AS&E to use a Super Sack statement to avoid the issues of unenforceability and attorneys fees. The Court thus retains jurisdiction regardless of AS&E's covenant.

### III. CONCLUSION

For the above-stated reasons, AS&E's motion to dismiss should be denied, and the Court should order AS&E to respond to L-3's motion for summary judgment instanter.

Respectfully submitted,

L-3 COMMUNICATIONS SECURITY
AND DETECTION SYSTEMS, INC.,

By its attorneys,

December 14, 2005

_____/s/ James J. Foster_____
James J. Foster, BBO # 553285
Michael A. Albert, BBO # 558566
Robert M. Abrahamsen, BBO # 636635
Adam J. Kessel, BBO # 661211
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, Massachusetts 02210
Tel.: 617.646.8000
Fax: 617.646.8646
malbert@wolfgreenfield.com