# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| L-3 COMMUNICATIONS SECURITY AND DETECTION SYSTEMS CORPORATION DELAWARE<br><br>Plaintiff and Counter-defendant<br><br>v.<br><br>AMERICAN SCIENCE & ENGINEERING, INC.<br><br>Defendant and Counterclaimant | Civil Action No. 04-10339-RWZ |

**AS&E's [PROPOSED] REPLY IN FURTHER SUPPORT OF
ITS MOTION TO DISMISS FOR LACK OF JURISDICTION, FOR ATTORNEYS'
FEES, AND TO STAY ALL PROCEEDINGS**

In L-3's opposition to AS&E's motion to dismiss, L-3 concedes, in effect, that a so-called *Super Sack* statement (*i.e.*, a covenant not to sue) divests this Court of jurisdiction over L-3's declaratory judgment claims. AS&E has signed such a covenant. That should end the matter. But under its strategy to keep this litigation alive simply to force its far smaller competitor, AS&E, to spend money pointlessly, L-3 quibbles with the wording of AS&E's covenant. In so doing, L-3 is really trying to get more than it deserves or that this Court has jurisdiction to grant.

In other words, L-3 will do anything to avoid an end to this litigation simply to (a) negotiate a better deal for itself and (b) to irritate its competitor. In particular, L-3 wants rights to more AS&E patents than are at issue in this case and a free license for more products than L-3 believes were accused of infringement in the first place. This Court should not suffer L-3 to misuse the declaratory judgment process in this way. See *Waters Corp. v. Hewlett-Packard Co.*, 999 F. Supp. 167, 173-74 (D. Mass. 1998) (Gorton, J.) (dismissing declaratory judgment action

"rather than reward [declaratory judgment plaintiff's] use of a judicial remedy to obtain a more favorable bargaining position in its negotiations with [the patentee]").

AS&E assured L-3 and this Court at the start of this case, back in March 2004, that AS&E was not interested in a fight. Indeed, AS&E had just settled the previous litigation with L-3 (the so-called *EG&G* case) by signing a *Super Sack* statement in February 2004 regarding two other AS&E patents. A week later, L-3 sued for declaratory judgments simply to force a quiescent patent owner, AS&E, to defend its patents in unnecessary litigation. Discovery, however, has shown that there is no rational business reason for this fight.

As argued below, L-3's challenge to the effectiveness of AS&E's covenant is really just a pretext to force AS&E to continue the fight, however pointless it might be. L-3's challenge is to the form of the covenant over its substance. In substance, however, AS&E's covenant effectively ends this matter.

### A.  AS&E's Covenant Broadly and Unconditionally Protects L-3

Contrary to L-3's argument, AS&E's covenant not to sue is not too narrow. AS&E's covenant broadly protects L-3 against (1) future litigation as to (2) all allegedly accused products and against (3) both patents-in-suit.

#### 1.  AS&E's Covenant Protects L-3's Future Acts

L-3 concedes that the facts of this case are "on point" with *GFI, Inc. v. Franklin Industries*. See L-3's opposition brief [D.N. # 101] at 6. *GFI* is a case in which L-3's trial counsel, Wolf Greenfield & Sacks, represented a patentee seeking to dismiss counterclaims seeking declaratory judgments that the patent-in-suit is invalid, unenforceable, and not infringed. The *GFI* court dismissed the declaratory judgment claims for lack of Article III jurisdiction after the patentee submitted a *Super Sack* statement promising not to sue the defendants "for

infringement as to any claims of the '213 patent based <u>upon the products previously, currently, or in the future manufactured or sold</u> (to those distributors or customers) by these defendants." *GFI, Inc. v. Franklin Industries*, 55 F. Supp.2d 565, 567 (N.D. Miss. 1999) (emphasis added).

That covenant, effective to divest the *GFI* court of jurisdiction, is essentially the same as the one that AS&E executed. In its covenant, AS&E agrees not to sue L-3 for any infringement "arising out of <u>any past, present, or future</u> manufacture, use, sale, offer for sale, or important of any accused product . . ." See Exhibit A to *AS&E's Memorandum in Support of Its Motion to Dismiss for Lack of Jurisdiction, for Attorneys' Fees, and to Stay All Proceedings* [D.N. 99].[1]

AS&E's covenant also complies with the leading case, S*uper Sack Mfg. Corp. v. Chase Pkg. Corp.*, 57 F.3d 1054 (Fed. Cir. 1995). In *Super Sack*, the patentee promised "not to sue Chase for infringement as to any claim of the patents-in-suit based upon the products currently manufactured and sold by Chase." *Id.* at 1056. The Federal Circuit held that this promise divested the district court of jurisdiction, *id.* at 1059-1060, even though the accused infringer feared suit against potential future acts. But the Federal Circuit held that the "residual possibility of a future infringement suit based on Chase's future acts is simply too speculative a basis for jurisdiction over Chase's counterclaim for declaratory judgment of invalidity." *Id.* at 1060.

AS&E has done one better than the *Super Sack* promise, agreeing not to sue for L-3's "<u>future</u> manufacture, use, sale, offer for sale, or importation" of the accused products. Accordingly, L-3 has no real complaint. Instead, to keep this trumped-up litigation alive, L-3 has mislead this Court as to the holding of *Super Sack* by claiming that the law somehow

---

[1] The *GFI* court also held that the covenant not only divested the court of its Article III jurisdiction over the declaratory judgment action but also <u>automatically</u> required vacatur of the court's earlier ruling invalidating four claims of the patent-in-suit. 55 F. Supp.2d at 567-68. L-3 admits that GFI is "on point." Accordingly, this Court must likewise vacate its summary judgment ruling vacating certain claims of AS&E's '623 patent.

3

requires covenants as to products that L-3 may, someday, develop in the future. In *Super Sack*, however, the Federal Circuit made clear that a covenant effective to remove jurisdiction need not extend to such speculative products. *Id.* at 1059-60.[2]

### 2. AS&E's Covenant Covers All Allegedly Accused Products

The covenant faithfully lists all of the potentially infringing products that L-3 has identified in its interrogatory answers and that discovery has otherwise revealed to be the only mobile x-ray inspection systems that L-3 has actually made and sold--namely, the CX-450M, the CX-2500M, and the CX-3800M. L-3 quibbles that AS&E omitted from the list of covered products the MTXR, MTXR-LUV, and MOBIX. But these are not different products. They are merely earlier or alternative names for the products now known as CX-450M and CX-2500M. Indeed, in its complaint, L-3 admits that the allegedly accused products include the "so-called 'MOBIX' systems, [which] are currently offered for sale by L-3 under the CX-450M and CX-2500M model numbers." Complaint at ¶ 14 (emphasis added)  Same product, different name. Moreover, L-3's current website (attached as Exhibit 1) lists only the CX-3800M as an offered product. The designations MTXR and MOBIX are no longer used. Furthermore, in discovery, L-3's has identified only the "CX" designated products as having been sold since L-3's inception in June 2002.

---

[2] If L-3 really believes, as it appears to argue, that AS&E's covenant is somehow ineffective because it omits the word "unconditionally," then AS&E can amend its covenant to read, *e.g.*, "AS&E *unconditionally* agrees not to make any claim . . ." But L-3's quibble is simply one of form over. In substance, the existing covenant accomplishes the same goal. The word "unconditionally" is superfluous.

Accordingly, L-3's quibbles further demonstrate that it is reaching for any means to keep this litigation alive (*i.e.*, by unfairly faulting the covenant for omitting phantom products) rather than submit to a covenant that protects L-3 against future threats of litigation.

Additionally, L-3 cannot bring into this litigation mobile x-ray inspection systems that employ backscatter. <u>First</u>, L-3 admitted during discovery that it does not make such backscatter systems and has no plans to do so. Accordingly, under *Super Sack*, such products are too speculative to be included in an effective covenant not to sue. <u>Second</u>, L-3 admits that the "cloud" of threatened litigation hanging over its business can be lifted by a covenant "that mirrors the threats that it [AS&E] has made." L-3's opposition brief [D.N. 101] at 3-4. As seen in AS&E's initial brief [D.N. 99], however, L-3 filed this declaratory judgment action solely to quiet alleged threats against its transmission-only systems. Indeed, L-3 admits that the remaining claims-in-suit (*i.e.*, the claims that survive this Court's summary judgment ruling) do not require backscatter detection but rather are directed to transmission or forward scatter detection. *See* L-3's opposition brief [D.N. 101] at 2. <u>Third</u>, AS&E has already released L-3 from liability for the one or two backscatter systems that L-3's predecessor, PerkinElmer/EG&G, may have made long before the two patents-in-suit issued. Thus, those long-ago backscatter systems would not infringe in any event.

### 3.    The Covenant Includes All Necessary Patents

AS&E's covenant not to sue includes both patents-in-suit: namely, the '533 and '623 patents. L-3 now seeks to include more patents, one of which is still in reissue proceedings (thanks to L-3) and has not even issued yet. But L-3 named only the '533 and '623 patents in its complaint for declaratory judgment and did not allege that it feared suit under any other patents. AS&E has already covenanted not to sue L-3 for infringement of two other patents--the '683 and

'511 patents. Thus, this Court has no jurisdiction over other patents. Again, L-3 insists on including these other patents simply to irritate AS&E or to force it to continue pointless litigation.

### B.   The Covenant Divests this Court of Jurisdiction Over All Claims

Finally, AS&E's covenant divests this Court of all claims, including the inequitable conduct claims. In *Super Sack*, the covenant divested the court of jurisdiction to here all claims, including the inequitable conduct claims. *Super Sack*, 57 F.3d at 1058. The *GFI* court followed that holding and also dismissed all claims, including the unenforceability (*i.e.*, inequitable conduct) claims. To the extent that L-3 wants to continue litigating the inequitable conduct claims, it is just a pretext to force AS&E to continue spending money on pointless litigation.

*Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340 (Fed. Cir. 2005), on which L-3 relies, does not exempt the inequitable conduct claims from dismissal here. In *Fort James*, the Federal Circuit distinguished *Super Sack* based on the "unique procedural posture" of the *Fort James* case. 412 F.3d at 1348. Specifically, unlike *Super Sack*, *GFI*, and this case, the *Fort James* case was bifurcated and the infringement claims were tried to a jury before the patentee covenanted not to sue. The *Fort James* jury found that the patent was not infringed, and the patentee covenanted not to sue only after that verdict. Accordingly, the post-verdict covenant not to sue was moot. 412 F.3d at 1348 ("the Post-Verdict Covenant had no effect on Fort James's claim for infringement, because that controversy had already been resolved by the jury's verdict").

In this case, this Court has not resolved the infringement claims. There has been no trial. There has been no final judgment. The Court's summary judgment ruling of invalidity is interlocutory and thus not the subject of a final judgment. *See GFI*, 55 F. Supp.2d at 568 n.2 (noting that invalidity ruling was not final under Fed. R. Civ. P. 54(a) because, like this case, the

ruling resolved fewer than all of the claims). Accordingly, even after the summary judgment ruling, several claims of the '623 patent and all claims of the '533 patent survive for adjudication. Thus, AS&E's covenant is effective now and moots the controversy.

In any event, this Court should still decline jurisdiction over the inequitable conduct claims, as it has the discretion to do. *See EMC Corp. v. Norand Corp.*, 89 F.3d 807, 810 (Fed. Cir. 1996) ("Even if there is an actual controversy, the district court is not required to exercise declaratory judgment jurisdiction, but has discretion to decline that jurisdiction"). In exercising its discretion, this Court should consider AS&E's good faith and its practical approach to resolving this conflict. Specifically, AS&E settled one litigation with L-3 in February 2004. In March 2004, AS&E sought dismissal of the current litigation, emphasizing that it had no desire to sue L-3 and had not threatened imminent suit. Nothing that AS&E has learned in discovery has changed AS&E's position. AS&E's present covenant shows that AS&E means what it says.

## CONCLUSION

For all of the foregoing reasons, AS&E respectfully requests that this Court dismiss all claims and counterclaims in this case.

Dated:  December 20, 2005

AMERICAN SCIENCE AND
ENGINEERING, INC.

*By its attorneys*,

/s/ Erik P. Belt
Erik Paul Belt, BBO # 558620
John F. Ward, BBO# 646689
BROMBERG & SUNSTEIN LLP
125 Summer Street
Boston, Massachusetts 02110
Tel:  (617) 443-9292
Facsimile:  (617) 443-0004
ebelt@bromsun.com

01945/00511 453969.1

# EXHIBIT 1



**L-3 communications**
**Security & Detection Systems**

- home
- about us
- our products
- news & events
- contact us
- customer service

**With more than 18,000 systems deployed worldwide, we are the worlds' leading supplier of security screening systems.**

## Cargo & Mobile Systems

### CX-3800G
The L-3 CX-3800G is a re-locatable gantry style cargo inspection system providing fine image quality and penetration. The CX-3800 very flexible, capable of cargo X-ray inspection of trucks, ISO intermodal shipping containers, vans, automobiles and ULD air car containers.
PDF Spec Sheet: view          Download Abobe Acrobat here

### CX-3800M
The L-3 CX-3800M provides the finest quality image and greatest penetration available today in a road legal mobile cargo X-ray inspection system. The CX-3800M is fully self-contained and capab being driven on roadways to and from inspection locations with its scanning equipment securely stowed.

### CX-450PDV
The L-3 CX-450P DV is a dual view (two X-ray sources), highthroughput, pallet X-ray system capable of scanning oversized items. These include pallets, oversized parcels, crates and air carg containers. Applications include airports, ports, warehouses, custo facilities, and other areas where there is a need for screening large items. The two views are at 90° angles relative to one another, providing additional insight and interrogation into suspicious cargo beyond that of a single view.

### CX-450P
The L-3 CX-450P is a high-throughput, pallet X-ray system capable scanning oversized bulk items. These include pallets, oversized pa crates and air cargo containers. Applications include airports, ports warehouses, customs facilities, and other areas where there is a n for screening large items.

### CX-160V
The Linescan AutoVan is a completely self-contained mobile X-ray security screening system designed for use at various locations wh temporary high security is required.

### CX-160P
The CX-160P is ideal for inspecting large boxed, crated or palletize items. With a tunnel opening of 1.5 m (59") wide by 1.65 m (65") and a 160 KeV X-ray tube, the CX-160P is able to generate a best class image with the ability to penetrate more than 27 mm (1") of steel.

### LS 231 Towcart
The LS-231 Towcart is a self-contained mobile X-ray security scree system. The LS-231 Towcart can accommodate large luggage, par and boxes typical of checked baggage at an airport. This mobile sy is particularly well suited for airports, customs facilities, dockyards

*other remote locations where X-ray security screening is required.*

**L-3 Security & Detection Systems - Headquarters**
10 Commerce Way, Woburn, Massachusetts 01801
Tel: 781.939.3800, Fax: 781.939.3996